UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | No. 3:15-CR-37 |
| | ) | Judge Campbell |
| BENJAMIN BRADLEY | ) | |
| Defendant. | ) | |

## RENEWED MOTION FOR ISSUANCE OF SUBPOENA DUCES TECUM

Comes now the Defendant in the above-captioned cause and renews and expands his request for the court to issue *subpoenas duces tecum.* Defendant previously requested a *subpoena* for Ms. Pamela O'Neal's mental health records held in the possession of Dr. Madhu Mendiratta MD (Docket No. 579). Ms. O'Neal's counsel responded that Ms. O'Neal "is not currently under the care of any mental health professional, nor does she suffer from any mental health disability. Dr. Mendiratta is Ms. O'Neal's primary care physician and has no mental records regarding Ms. O'Neal" (Docket No. 626). The Court denied Mr. Bradley's motion but indicated that he was "free to renew his request for records if additional information comes to light indicating that such records exist . . ." (Docket No. 641).

Additional information has come to light. Three days after Mr. Bradley filed his original motion, AUSA VanDevender provided additional discovery related to Mr. O'Neal and other co-defendants who might be called to testify. One of these documents is a DEA 6 form documenting the search of Ms. O'Neal's residence on March 12, 2015 by law enforcement. Among other items, the agents seized the following:

1. Two empty pill bottles with an Oxycodone prescription label and prescribed to Pamela O'Neal.

2. Miscellaneous Cigna Medicare Documents addressed to Pamela O'Neal (Marked as Non-Drug Exhibit N-126).

3. An orange prescription bottle with a partially torn label (Marked as Exhibit 37 and placed in envelope ES000095343). The laboratory report "Exhibit Details" indicates that 110 pills were received inside a "Plastic Bottle." The laboratory report determined this to be 110 oxycodone pills.

4. An orange prescription bottle with the name "Pamela O'Neal" on the label. (Marked as Exhibit 39 and placed in SSEE M000095339). The exhibit was received at the laboratory but it performed no analysis "as per TFO Kevin Krieb."

5. An orange prescription bottle with the name "Pamela O Neal" on the label. (Marked as exhibit 41 and placed inside SSEE M000095337). The laboratory report "Exhibit Details" indicates that 28 pills were received inside a "Plastic Bottle." The pills were identified as Zolpidem. Zolpidem is a sedative, also called a hypnotic. It affects chemicals in the brain that may be unbalanced in people with sleep problems (insomnia). Side effects include confusion and hallucinations. Taking oxycodone with zolpiden at the same time may increase side effects that include confusion, difficulty concentrating, impaired thinking, and motor coordination. https://www.drugs.com/drug-interactions/ambien-with-oxycodone-2333-1544-1770-0.html

6. Two orange prescription bottles with the name "Pamela O'Neal" on the label and pills inside of a clear plastic bag. (Marked as exhibit 42 and sealed in SSEE

M000002076). Although the agents described this as a pill bottle, the laboratory report indicates that exhibit 42 contained 14 Fentanyl transdermal patches.

7. An orange prescription bottle containing pills with "Pamela O'Neal" marked on the label. (Marked as Exhibit 44 but no SSEE indicated). No analysis was performed by the laboratory "as per TFO Kevin Krieb."

8. An orange pill bottle containing pills with the name "Pamela O'Neal" on the label. (Marked as Exhibit 46 but no SSEE indicated). The laboratory report "Exhibit Details" indicates that 46 pills were received inside a "Plastic Bottle." The pills were identified as Trazodone Hydrochloride. Trazodone Hydrochloride is **Trazodone** is an antidepressant medicine. It affects chemicals in the brain that may be unbalanced in people with depression. Side effects may include general confusion, confusion about identity, place, and time, and decreased coordination. https://www.drugs.com/sfx/trazodone-side-effects.html.

The side effects of Trazodone, Oxycontin, Zolpidem, and Fentanyl increase if the drugs are taken in combinations or beyond the recommended dosages. https://www.drugs.com/interactions-check.php?drug_list=1770-0,2228-0,2333-1544,1074-12916

In sum, agents found and logged into evidence at least 9 different prescription drug bottles. All but exhibit 37 were marked as having been prescribed to Pamela O'Neal. Exhibit 37 was described only has having a "partially torn label." Of these nine bottles, three were for oxycodone, one contained Zolpidem, one contained Fentanyl, one contained Trazodone and the contents of three were not analyzed.

The number and type of drugs prescribed to Ms. O'Neal belie the statement in her pleading that "she does not suffer from any mental health disability." Although she may not

currently be under the care of any mental health professional, she clearly was under such care at the time at issue.

In addition, the government should have in its possessions, nine drug bottles with nine drug labels, each indicating the name of the prescribing physician, dosage, and refills. The government should also have Cigna Medicare documents which would likely contain the names of treating physicians and diagnoses. None of this information has been provided to the defense. Ms. O'Neal's medical records would indicate whether her various physicians were aware of all of her prescriptions and advised her as to possible side effects. The records would indicate whether the dosages or interactions might have impaired her ability to remember or perceive events critical to this case. The records would further indicate exactly what symptoms and complaints prompted Ms. O'Neal to be issued this variety of prescriptions. In the alternative, if she lied to her providers in order to obtain certain prescriptions, this would be relevant to her credibility.

Defense counsel contacted AUSA VanDevender on October 13, 2016 to inquire about the above referenced prescription bottles with the hope of getting access to the evidence and learning the name of the prescribing physicians. Mr. VanDevender told defense counsel he contacted the case agents. He indicated that, according to the agents, the only prescription bottles in evidence were the bottles that had contained oxycodone prescribed by a Dr. Afzal Beemath. The agents told Mr. VanDevender that "they did not keep any bottles found at O'Neal's house if they appeared to be 'legitimate' prescriptions."

The fact that the oxycodone was prescribed by Dr. Beemath calls into question the statement in Ms. O'Neal's pleading that Dr. Mendiratta is her primary care physician.

It is very troubling that, on the one hand, law enforcement agents claim not to have possession of the prescription bottles containing Zolpidem, Fentanyl, or Trazodone yet the laboratory report indicates that these evidentiary items were received "in plastic bottles." These bottles should, therefore, be in the government's possession and the information contained thereon should be immediately provided to defense counsel.

It appears that Ms. O'Neal was taking a variety of kinds of medication, perhaps prescribed by a multitude of physicians for various conditions. The drugs in question could affect perception when taken alone, with an even greater impact when taken in combination. Her ability to perceive and recall is critical to Mr. Bradley's sentencing hearing as is her credibility and any history of deception such as lying to her doctors to obtain pills.

Defense counsel hereby renews and expands his previous request. Counsel for Mr. Bradley requests the court order the government to immediately disclose the names of all prescribing physicians listed on Ms. O'Neal's prescription pill bottles and in the Cigna Medicare records and that the Court issue subpoenas to these physicians to produce Ms. O'Neal's medical records. These physicians include Dr. Mediratta and Dr. Beemath and may also include the heretofore unknown physicians who prescribed the Trazadone, Fentanyl, and Zolpidem.

This is not a fishing expedition. As shown above, defense counsel has good reason to believe that Ms. O'Neal was being treated for depression, insomnia, anxiety, and chronic pain during the relevant time frame of this case. She was taking multiple prescription drugs. Defense counsel needs to know her underlying conditions, symptoms, prescribed dosages, and whether each doctor was aware of the prescriptions issued by the others. These factors would all have an impact on her credibility. Moreover, her response to Mr. Bradley's last request suggests that Ms. O'Neal is not inclined to be truthful about the nature or extent of her mental health treatment or

conditions. Effective cross-examination, therefore, will require access by defense counsel to her medical records. Even if Dr. Mediratta or Dr. Beemath did not provide mental health treatment, their records should contain Ms. O'Neal's medical and mental health history and list her other treating physicians.

Respectfully submitted,

/s/ James E. Mackler
James E. Mackler (BPR #024855)
FROST BROWN TODD LLC
150 3RD Avenue South, Suite 1900
Nashville, TN 37201
(615) 251-5569 (phone)
(615) 251-5551 (facsimile)
jmackler@fbtlaw.com

## CERTIFICATE OF SERVICE

I certify that I electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to the following, this 14th day of October, 2016:

Cecil VanDevender
Assistant United States Attorney
110 9th Ave. So.
Suite A-961
Nashville, TN 37203

                                                                                                      /s/ James E. Mackler

0132236.0629976   4851-2526-2907v1