UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| v. | ) | No. 3:15-00037-2 |
| | ) | JUDGE TRAUGER |
| | ) | |
| BENJAMIN EDWARD HENRY BRADLEY | ) | |

**RESPONSE TO GOVERNMENT'S MOTIONS FOR ORDERS OF FORFEITURE**

Defendant Benjamin Bradley respectfully submits this response to the government's motions for orders of forfeiture and the arguments contained in the government's memorandums in support thereof. To clarify the issue before this Court, and for the sake of efficiency, Mr. Bradley notes that this response only raises two objections to the government's proposed forfeiture order: (1) the proposed order of forfeiture as it relates to the real property commonly known as 45669 Harmony Lane, Belleville, MI 48111 (the "Residence"); and (2) the entry of a $1,000,000 money judgment to the extent that such a judgment would be *in addition* to the forfeiture of any other enumerated assets.[1] The Residence is the current home of Mr. Bradley's wife, Kareema Hawkins, and their children, and the government has admitted through its own witnesses that the Residence is owned by Ms. Hawkins. As discussed below, the government has introduced no evidence indicating that this modestly priced home represents the proceeds of Mr. Bradley's offense, and the property is not subject to forfeiture as "substitute assets."

---

[1] In so focusing his arguments, Mr. Bradley does not concede that the other specifically enumerated property is rightfully subject to forfeiture, but he does not object to such forfeiture.

Additionally, the government's request for a money judgment should be read to be limited to $1,000,000 in total, jointly and severally against Mr. Bradley and Mr. Buchanan, including the value of any real or personal property forfeited, because the government has failed to submit sufficient evidence to justify any other interpretation.

I.   BACKGROUND

  A.   Procedural background

On March 11, 2015, the government indicted Mr. Bradley and others on several counts related to a drug conspiracy. (D.E.3, Indictment.) The indictment contained two forfeiture allegations. **Forfeiture Allegation One** alleged that, upon conviction and jointly and severally with the other defendants, (1) Mr. Bradley shall forfeit any property representing the direct or indirect proceeds of the indicted drug offense (Count I), in accordance with 21 U.S.C. § 853(a)(1); (2) Mr. Bradley shall forfeit any property used to commit the indicted drug offense, in accordance with § 853(a)(2); and (3) any substitute property in the event that the above property cannot be located, in accordance with § 853(p). **Forfeiture Allegation Two** alleged that, upon conviction and jointly and severally with the other defendants, (1) Mr. Bradley shall forfeit any property involved in, traceable to, or representing the proceeds of the money laundering offense (Count II), in accordance with 18 U.S.C. § 982(a)(1); and (2) any substitute property in the event that the above property cannot be located, in accordance with 18 U.S.C. § 953(p).

On June 6, 2016, Mr. Bradley entered a guilty plea to Counts I and II of the indictment (the drug count and the money laundering count). (D.E.478, Order Accepting Plea Pet., PageID#1402.) Mr. Bradley pleaded "open," and the plea agreement did not address matters related to forfeiture. (*Id.*)

2

In a bill of particulars filed on August 17, 2015, the government specifically enumerated a group of items subject to forfeiture that included cash and luxury watches, but that did not include the Residence. (D.E.279, First Bill of Particulars, PageID#858-861.)

In a second bill of particulars filed in May 2016, the government added yet another group of property to Forfeiture Allegations One and Two, this time including The Residence. (D.E.432, Second Bill of Particulars, PageID#1295.)

On January 31, 2017, only a day before the sentencing hearing in this case, the government simultaneously filed (1) a motion for a *preliminary* order of forfeiture and associated memorandum of law (D.E.858 & 859), and (2) a motion for an order of forfeiture in the value of at least $1,000,000 and associated memorandum of law (D.E.861 & 862). In the motion for a money judgment, the government represented to the Court that "at least $1,000,000 United States currency is approximately the amount of proceeds obtained directly or indirectly from the violations." (D.E.862, PageID#2805.)

At the sentencing hearing the next day, the government candidly admitted that "[w]e were, I think it's fair to say, a little bit tardy in getting our forfeiture filing." (D.E.919, Sentencing Tr., VanDevender, PageID#3157.) Accordingly, the government proposed a two-step solution: first, the government would "introduce whatever factual proof [it] ha[d] on forfeiture during [the sentencing] hearing"; second, the Court would withhold judgment on the forfeiture matter and give Mr. Bradley an opportunity to respond at a later date. (*Id.*)

### B. Evidence regarding forfeiture adduced at sentencing

After agreeing to introduce all factual evidence regarding the forfeiture allegations at the sentencing, the government in fact introduced very little such evidence. However, the evidence

3

that the government did choose to introduce regarding the Residence was highly significant, as was the evidence the government chose not to introduce.

Notably, despite having listed the Residence in two forfeiture allegations that requested forfeiture of property that was either used in the commission of the offenses or the proceeds of such offenses, the government introduced no evidence that the Residence fell into either category.

Equally notable is that the government itself took pains to introduce evidence that the Residence is *not owned* by Mr. Bradley. Rather, it is owned by Mr. Bradley's wife, Kareema Harris. (*Id.*, DeSantis, PageID#3353-54.) Special Agent William DeSantis testified that the property had been transferred to Ms. Harris via quitclaim deed on April 23, 2015, approximately six weeks after the filing of the indictment in this case. (*Id.*) Agent DeSantis testified that this information was gathered "as part of the forfeiture process." (*Id.* PageID#3353.) At the hearing, Mr. Bradley introduced evidence regarding the low purchase price of the home, leading the Court to remark that he got a "pretty good deal." (*Id.*, Mackler, PageID#3336-37.) The government introduced no additional evidence regarding the current fair market value of the property, how or why it was transferred, whether it was transferred for value, or any other information regarding that property.

Finally, the government offered no cumulative estimate of the value of ill-gotten gains received from the criminal conduct, nor did it estimate what percentage of such conduct was attributable to Mr. Bradley, or what property it had already recovered or expected to be able to recover from Mr. Buchanan, one of the co-defendants with whom Mr. Bradley is jointly and severally liable. It did not introduce the fair market value of all of the property allegedly subject

4

to forfeiture, or compare that to the $1,000,000 money judgment that it had requested from the Court.

## II. ARGUMENT AND CITATION TO AUTHORITIES

What burden must the government meet before taking the home away from a woman and her children, none of whom have ever been accused of a crime? The byzantine law of forfeiture imposes numerous different burdens, but this much is clear: the government has met none of those various burdens. Rather, the government's incomplete record demonstrates that the Residence is not subject to forfeiture. Further, the government's proposed $1,000,000 money judgment should not be read as a blank check to allow it to sweep any and all property now or in the future into its forfeiture web.

Importantly, the factual record in this case is complete. In response to the Court's concern regarding the government's late filing of forfeiture motions in this case, the government represented to the Court that, at the sentencing hearing, it would "introduce whatever factual proof [it] ha[d] on forfeiture." (*Id.*, VanDevender, PageID#3157.) This was consistent with testimony adduced at sentencing by Agent DeSantis, who testified that the government had already conducted its "forfeiture process." (*Id.*, DeSantis, PageID#3553.) In other words, the government had conducted an investigation, was prepared to put on proof, and told the Court that it would present *all* such proof at the sentencing hearing. As discussed below, this evidence fails to demonstrate that the government is entitled to forfeiture of the residence.

### A. The Residence is not a "tainted" asset.

Through its indictment and subsequent second bill of particulars, the government has asserted that the Residence was either (1) the proceeds of Mr. Bradley's offense or used to

5

commit the offense, or (2) substitute property subject to forfeiture. The government must prove that property represents "proceeds" or was used in the commission of the offense by a preponderance of the evidence. *United States v. Smith*, 966 F.2d 1045, 1052 (6th Cir. 1992).

Here, there is no evidence that could satisfy this preponderance standard. The government has simply offered no connection between the Residence and Mr. Bradley's drug offense. It has not traced financial deposits or offered bank records, much less "connected the dots" between any money earned from drug transactions and the money used to pay for the home. It has not even demonstrated that Mr. Bradley would have been unable to pay for the property without drug money. Indeed, the only evidence before the Court was that the home was purchased for a modest sum of money and that Mr. Bradley had a good job as a CAT-Scan tech at a hospital.

### B. The Residence is not "property of the defendant."

Although forfeiture is a powerful tool, the Sixth Circuit has recognized that "it only entitles the government to forfeiture of a convicted defendant's interests and nothing more." *United States v. O'Dell*, 247 F.3d 655, 680 (6th Cir. 2001). The question of what interest, if any, Mr. Bradley had in the Residence is fundamentally one of "state property law." *Id.* at 680. When an asset is not subject to forfeiture due to its tainted status, the Court may still order forfeiture of substitute property under 21 U.S.C. § 853(p)(1), so long as that substitute property is "property of the defendant." § 853(p)(2). In this case, the only evidence before the Court demonstrates that the residence is not property of the defendant—rather, it is owned by Kareema Harris. (D.E.919, Sentencing Tr., DeSantis, PageID#3553-54.) And while ordinarily the interests of third parties who may have some partial property interest are raised in ancillary proceedings, *see United*

6

*States v. Erpenbeck*, 682 F.3d 472, 480 (6th Cir. 2012) (addressing a bankruptcy trustee's interests), this is the unusual case where the government has taken pains to introduce evidence that the Residence is solely owned by a third party.

What is also plain is that the government itself has no property interest in the Residence. Although the government's property interest in *tainted* property—property directly associated with or derived from criminal wrongdoing—vests "upon the commission of the act giving rise to [its] forfeiture," § 853(c), the same is not true of substitute property. Rather, the government's interest in substitute property does not arise until "(1) after the defendant's conviction and (2) the court determines that [any tainted] property is out of the government's reach for a reason enumerated in [the statute]." *Erpenbeck*, 682 F.3d at 478. Accordingly, the Sixth Circuit recognizes that there is no "relation back" doctrine as to substitute property—only tainted property. *Id.* at 477. In short, because the government has no evidence suggesting that the Residence is tainted property (and never has had any such evidence), any government interest in the property arose only after Mr. Bradley's conviction. The government itself introduced evidence at sentencing that Mr. Bradley had no property interest whatsoever at the time of his conviction.

Although the above discussion plainly demonstrates that the Residence is not "property of the defendant" that is subject to forfeiture as "substitute property," Mr. Bradley anticipates that the government may assert that the transfer from Mr. Bradley to his wife was a fraudulent conveyance. Although Mr. Bradley does not concede that such an argument can be used with regard to assets that are demonstrably not owned by the defendant in the current procedural posture, any such argument must fail on the merits as well. The governing law in this case is the

7

Michigan Uniform Voidable Transactions Act, Mich. Comp. Laws § 566.31-566.45. Section 566.34(1)(a), the statute most relevant here, makes certain transfers "voidable as to a creditor" when such a transfer was made "with actual intent to hinder, delay, or defraud any creditor of the debtor." Again, without conceding that the government was a valid creditor of Mr. Bradley, the government has still not proved such "actual intent." Michigan law makes clear that the burden is on the person seeking to set aside the transfer, and the "actual intent" must be proven by clear and convincing evidence. *In re Piccinini*, 439 B.R. 100, 106 (E.D. Mich. 2010) (discussing Michigan law); *see also Dean v. Torrence*, 299 Mich. 24, 35 (1941) (same). Although courts are free to consider certain "badges" of fraud in determining whether a conveyance was made with the intent to defraud, those badges "are not conclusive evidence, but may be strong or weak depending upon their nature and number occurring in the same case." *Coleman-Nichols v. Tixon Corp.*, 203 Mich. App. 645, 660 (1994).

Here, the government has failed to offer "clear and convincing evidence" of an actual intent to defraud. It has shown that Mr. Bradley conveyed the Residence to his wife at a time when he was under indictment. And that's it. Although it recognized that the sentencing hearing was its opportunity to put forward its evidence regarding forfeiture, it did not even produce the deed of conveyance, nor did it offer evidence that, for example, the conveyance was made without consideration—the most typical "badge" of fraud. This was despite the admission that it had already conducted its investigation into the Residence as "part of the forfeiture process." (D.E.919, Sentencing Tr., DeSantis, PageID#3553.) The Court heard evidence weighing against an intent to defraud as well. For example, the Court heard ample evidence that Mr. Bradley was a loving and devoted father, which could indicate that he sold the property to his wife in order to

8

provide continuity to his children and ensure that they remained in the same school zone when he went to prison. Based on the record before the Court, we simply do not know.

Again, the government is attempting to deprive a woman and her children of their home. The government had the opportunity to present evidence supporting its theory that the Residence was a "tainted" asset, and it could not. The government had the opportunity to present evidence that the Residence was "property of the defendant," and it could not. The government had the opportunity to present evidence that the Residence was fraudulently conveyed, and it could not. Mr. Bradley asks that the Court enter an order declaring that the Residence is not subject to forfeiture.

### C. The Court should clarify any order for a money judgment.

The government has requested "the entry of an Order of Forfeiture consisting of a personal Money Judgment against Defendant Benjamin Bradley in the amount of at least $1,000,000 United States currency as to the Indictment in this matter." (D.E.862, Forfeiture Mot., at 5.) In support of that judgment, the government has represented to the Court that "at least $1,000,000 United States currency is approximately the amount of proceeds obtained directly or indirectly from the violations." (*Id.* at 4.)

Although Mr. Bradley does not object to the government's estimate of the extent of the proceeds of the offense, the government's requested order is potentially ambiguous in numerous ways. Undersigned counsel notes that such financial awards are often subject to "double dipping" concerns, and they can saddle the defendant with a lifetime of debt after prison that has little relationship to his offense. Counsel notes several concerns: (1) Is the money judgment offset by the value of the assets that the government claims to be "tainted" property, or is it

9

separate? (2) Is the money judgment offset by the value of the assets that the government claims to be substitute property? (3) Given that the government has represented in its indictment that all codefendants are jointly and severally liable for any forfeiture award, are Mr. Bradley and Mr. Buchanan (whom counsel believes to be the only remaining defendants subject to forfeiture awards) equally liable for this award? (And if not, is that a fatal variance with the indictment?) (4) Is the value of this money judgment subject to offset by the value of any personal or real property of Mr. Buchanan, whether such property is "tainted" or "substitute" property?

Mr. Bradley notes several reasons for the above concerns. At sentencing, the government did not provide a cumulative accounting of all the proceeds it believed Mr. Bradley had received from the criminal enterprise. It presented some evidence from which the Court could determine that certain parcels of real property were "tainted" property, but it did not offer a final accounting of precisely what real property it claimed was tainted and what real property it claimed was substitute property. Likewise, although it presented evidence of certain personal property, including watches and shoes, it did not present any proof demonstrating that those were "tainted" property (other than the inference that Mr. Bradley could not otherwise afford multiple Rolexes), and thus it appears that the government may wish to claim those as substitute property. (Presumably, if those items *were* purchased with the proceeds of drug dealing, then they would offset any money judgment based on an estimated amount of such proceeds.) Despite the fact that its own indictment claims that the forfeiture allegations are between Mr. Bradley and Mr. Buchanan, the government has presented no accounting of how much of the alleged million dollars proceed is attributable to each individual, nor any accounting of the value of the real or personal property of each individual that might apply against those proceeds.

10

Again, the government told the Court that it was going to use the sentencing hearing to present whatever evidence it had on this subject, and it turns out that evidence was minimal. Mr. Buchanan submits that the way to cure this is *not* to give the government what effectively amounts to a blank check to take all of his real and personal property now (i.e., the tainted and/or substitute property), and any real or personal property he may own in the future (i.e., in satisfaction of an *additional* money judgment). Instead, the Court should clarify that the government's $1,000,000 estimate represents the total forfeiture liability in this case between Mr. Bradley and Mr. Buchanan, and is subject to offset by any real or personal property subject to forfeiture in this case. Mr. Bradley submits that this is the only equitable way to address the government's minimal factual record.

## III. CONCLUSION

The government has not done the work that it would need to do in order for this Court to enter an order depriving a woman and her children of their home. Likewise, it has asked for a seven-figure money judgment against Mr. Bradley without engaging in sufficient accounting to demonstrate precisely what property and individuals are subject to that judgment. This Court should enter an order (1) specifically exempting the Residence from the assets to be forfeited, and (2) clarifying the scope of the government's proposed money judgment.

Respectfully submitted,

/s/ *Ronald C. Small*
RONALD C. SMALL
Assistant Federal Public Defender
810 Broadway, Suite 200
Nashville, Tennessee 37203
615-736-5047

JAMES E. MACKLER (BPR #024855)
Attorney at Law
Frost Brown Todd LLC (Nashville)
150 3rd Avenue South
Suite 1900
Nashville, Tennessee 37201
615-251-5550
Email: jmackler@fbtlaw.com

Attorneys for Benjamin Edward Henry Bradley

**CERTIFICATE OF SERVICE**

 I hereby certify that on April 14, 2017, I electronically filed the foregoing Response to Government's Motions for Orders of Forfeiture with the U.S. District Court Clerk by using the CM/ECF system, which will send a Notice of Electronic Filing to the following: Cecil W. VanDevender, Brent A. Hannafan, and Debra Teufel Phillips, Assistant United States Attorneys, 110 Ninth Avenue South, Suite A961, Nashville, TN 37203.

/s/ *Ronald C. Small*
RONALD C. SMALL