**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:15-cr-00037-2** |
| | ) | **Judge Aleta A. Trauger** |
| **BENJAMIN EDWARD HENRY** | ) | |
| **BRADLEY** | ) | |

## MEMORANDUM

Before the court are the United States' Motion for Entry of a Preliminary Order of Forfeiture (Doc. No. 858) and Motion for an Order of Forfeiture of at Least a $1,000,000 United States Currency Money Judgment (Doc. No. 861). The defendant has now responded to both motions. (Doc. No. 958.) The United States filed a Reply, and the defendant, a Sur-reply. (Doc. Nos. 986, 996.) For the reasons set forth herein, the United States' motions will be granted.

## I.      Background

On March 3, 2015, the United States filed a two-count Indictment against the defendant, charging him with conspiracy to possess with intent to distribute and conspiracy to distribute Schedule II controlled substances, in violation of 21 U.S.C. §§ 841(a)(1) and 846 (Count One) and money laundering in violation of 18 U.S.C. § 1956 (Count Two). (Doc. No. 3.) The Indictment also contained forfeiture allegations, giving notice that, upon conviction, the defendants would be jointly and severally responsible for forfeiting to the United States any "property constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of" the conspiracy to distribute drugs, "including but not limited to a money judgment in an amount to be determined, representing the gross drug proceeds obtained as a result of such offense," and "any property used, or intended to be used, . . . to commit, or to facilitate the

commission of, such violation," pursuant to 21 U.S.C. § 853(a)(1) and (2). (Doc. No. 3, at 5.) The Indictment further provided for the forfeiture of any real or personal property involved in the conspiracy to commit money laundering or traceable to such property, "including but not limited to the proceeds of the violation and including but not limited to a money judgment in an amount to be determined" (Doc. No. 3, at 7), and for the forfeiture of substitute property in accordance with 21 U.S.C. § 853(p).

On August 17, 2015, the United States filed a Bill of Particulars for Forfeiture of Property that identified specific assets to be forfeited, including currency in the amount of $46,300 seized from 15540 Prevost Street, Detroit, Michigan, and approximately $78,300 seized from 45669 Harmony Lane, Belleville, Michigan. (Doc. No. 279.) On May 19, 2016, the United States filed a Bill of Particulars for Forfeiture of Real Property, giving notice that it sought the forfeiture of real property located at and commonly known as 14425 Curtis, 14427 Curtis, 16617 Leisure, and 15355 Ohio Street, in Detroit, Michigan, and 45669 Harmony Lane, Belleville, Michigan. (Doc. No. 432.)

The defendant, Benjamin Bradley, entered a guilty plea to both counts of the Indictment on June 8, 2016 (*see* Order accepting Plea Petition, Doc. No. 478), and, after several postponements, sentencing was scheduled for February 1, 2017 (Order, Doc. No. 784). The United States filed the forfeiture motions and accompanying memoranda on January 31, 2017, one day before the sentencing, making them, as the government acknowledged during the sentencing hearing, somewhat "tardy." (Doc. No. 919, at 5.) At the sentencing hearing, the government represented that it intended to introduce whatever factual proof it had on forfeiture and, specifically, that the evidence would "establish a nexus between the Subject Property and the crimes of conviction." (*Id.*)

In discussing the issue of forfeiture, the court recognized on the record that the applicable rule requires that, "[a]s soon as practical . . . after a plea of guilty . . . , the court must determine what property is subject to forfeiture." Fed. R. Crim. P. 32.2(b)(1)(A). (*See* Doc. No. 191, at 282.) The court also noted that, if forfeiture is contested, "at either party's request the Court is to conduct a hearing and the Court is to enter the preliminary order sufficiently in advance of sentencing to allow the parties to suggest revisions or modifications before the order becomes final as to the defendant." (Doc. No. 191, at 282 (referencing Fed. R. Crim. P. 32.2(b)(1)(A)).) Because the defendant had not had the opportunity to respond to the government's forfeiture motions, the court established a briefing schedule and stated that it would "rule on the papers" unless the defendant requested a hearing. (*Id.*) The motions have now been fully briefed and are ripe for review. The defendant has not requested a hearing, but he contends that the United States has failed to carry its burden of proof to support the forfeiture of the real property located at 45669 Harmony Lane, Belleville, Michigan.

## II.    Legal Standards

The criminal forfeiture statute provides that an individual convicted of a drug-related felony or money laundering (among other crimes) "shall forfeit to the United States . . . any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as a result of such violation," and any property used or intended to be used to commit or facilitate the commission of the crime of conviction. 21 U.S.C. § 853(a)(1) & (2). Courts construe § 853 liberally in order to effectuate its remedial purpose. *United States v. Darji*, 609 F. App'x 320, 332 (6th Cir. 2015) (citing 21 U.S.C. § 853(o)).

Criminal forfeiture is part of a defendant's sentence, to be imposed as provided by statute. 21 U.S.C. § 853(a); *United States v. Hall*, 411 F.3d 651, 654 (6th Cir. 2005). If, as here,

the government "include[s] notice of the forfeiture in the indictment or information," and "the defendant is convicted of the offense giving rise to the forfeiture, the court shall order the forfeiture of the property as part of the sentence in the criminal case," in accordance with the procedures set out in § 853. 28 U.S.C. § 2461(c). "The indictment . . . need not identify the property subject to forfeiture or specify the amount of any forfeiture money judgment that the government seeks." Fed. R. Crim. P. 32.2(a).

The criminal forfeiture statute creates a "rebuttable presumption" that any property of a defendant convicted of a felony drug offense or money laundering is subject to forfeiture, so long as the United States establishes by a preponderance of the evidence that the defendant acquired the property "during the period of the [criminal] violation", "or within a reasonable time after such period", and that "there was no likely source for such property other than" the offenses of conviction. 21 U.S.C. § 853(d).

Moreover, title to property subject to forfeiture vests in the United States "upon the commission of the act giving rise to forfeiture." 21 U.S.C. § 843(c). Consequently, if the defendant transfers the forfeitable property to a third person after commission of the offense, that property "may be the subject of a special verdict of forfeiture and thereafter shall be ordered forfeited to the United States, unless the transferee establishes in a hearing . . . that he is the bona fide purchaser for value of such property who at the time of purchase was reasonably without cause to believe that the property was subject to forfeiture." *Id.*

In the event that property subject to forfeiture under § 853(a) cannot be located or has been sold or transferred to a third party, "the court shall order the forfeiture of any other property of the defendant, up to the value of any property" that has been sold or transferred or cannot be located. *Id.* § 843(p)(2).

Finally, to protect the interests of third parties, the United States must publish notice of any order of forfeiture and of its intent to dispose of the property. Thereafter, "[a]ny person, other than the defendant, asserting a legal interest in property which has been ordered forfeited to the United States pursuant to this section may . . . petition the court for a hearing to adjudicate the validity of his alleged interest in the property." *Id.* § 843(n)(2). If the third-party petitioner is able to establish at the hearing that he or she had a valid and superior legal interest in the property "at the time of the commission of the acts which gave rise to the forfeiture of the property" and that "renders the order of forfeiture invalid in whole or in part," or that he or she is "a bona fide purchaser for value of the right, title, or interest in the property and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture under this section," then the court shall amend the order of forfeiture accordingly. *Id.* § 843(n)(6).

Procedurally, as noted above, the court is without authority to enter a judgment of forfeiture unless the indictment or information contains notice to the defendant that the government intends to seek forfeiture. Fed. R. Crim. P. 32.2(a). Assuming that that requirement has been met, the next step, typically, is to enter a preliminary order of forfeiture. The determination of whether a preliminary order should enter is to be made "as soon as practical" after a jury verdict or plea of guilty, based on "whether the government has established the required nexus between the property and the offense." Fed. R. Crim. P. 32.2(b)(1)(A). That determination "may be based on evidence already in the record . . . and on any additional evidence or information . . . accepted by the court as relevant and reliable." Fed. R. Crim. P. 32.2(b)(1)(B). If either party so requests, the court is to conduct a hearing after the verdict or plea.

"If the court finds that property is subject to forfeiture, it must promptly enter a

preliminary order of forfeiture setting forth the amount of any money judgment, directing the forfeiture of specific property, and directing the forfeiture of any substitute property if the government has met the statutory criteria." Fed. R. Crim. P. 32.2(b)(2)(A). Unless "impractical," the order is to be entered "sufficiently in advance of sentencing to allow the parties to suggest revisions or modifications before the order becomes final as to the defendant under Rule 32(b)(4)." Fed. R. Crim. P. 32.2(b)(2)(B). Further, "[t]he court must enter the order without regard to any third party's interest in the property. Determining whether a third party has such an interest must be deferred until any third party files a claim in an ancillary proceeding under Rule 32.2(c)." Fed. R. Crim. P. 32.2(b)(2)(A).

## III.    Discussion

In its first motion, the United States generally seeks a "Preliminary Order of Forfeiture" of the defendant's interest in the same currency and real property identified in the Bills of Particulars. In the second, the government specifies that it seeks "an Order of Forfeiture consisting of at least $1,000,000 United States currency Money Judgment" against the defendant. In his response, the defendant raises only two objections. First, he seeks clarification that entry of the $1,000,000 money judgment is not *in addition to* the forfeiture of other enumerated assets and does not constitute "double dipping." (Doc. No. 958, at 9.) Second, he objects to the forfeiture of the real property commonly known as 45669 Harmony Lane, Belleville, Michigan, on the basis that (1) it is the current residence of the defendant's wife and children; (2) the government has introduced no evidence that this home represents the proceeds of the defendant's offenses; and (3) the government concedes that the property is not owned by the defendant.

### A.    The Money Judgment

The defendant asserts that the government's proposed Order of Forfeiture Consisting of a

Money Judgment is "potentially ambiguous in numerous ways" and seeks clarification of several

points:

> (1) Is the money judgment offset by the value of the assets that the government
> claims to be "tainted" property, or is it separate? (2) Is the money judgment offset
> by the value of the assets that the government claims to be substitute property? (3)
> Given that the government has represented in its indictment that all codefendants
> are jointly and severally liable for any forfeiture award, are Mr. Bradley and Mr.
> Buchanan (whom counsel believes to be the only remaining defendants subject to
> forfeiture awards) equally liable for this award? (And if not, is that a fatal
> variance with the indictment?) (4) Is the value of this money judgment subject to
> offset by the value of any personal or real property of Mr. Buchanan, whether
> such property is "tainted" or "substitute" property?

(Doc. No. 958, at 9–10.)

In response to the defendant's concerns, the United States asserts that the proposed Order

of Forfeiture expressly "provides for a limit of $1,000,000 and for the government to amend the

Order of Forfeiture to reflect any substitute property forfeited." (Doc. No. 986, at 2.) The

government characterizes its proposed order of forfeiture as "provid[ing] that the Money

Judgment is joint and several with any other coconspirators" against whom a similar money

judgment is entered.[1] The United States also represents that, "after entry of the Order of

Forfeiture, the value of the net proceeds of any specific property of Bradley or a similar situated

coconspirator that is forfeited to the government will reduce Bradley's money judgment." (Doc.

No. 986, at 2.)

Contrary to the government's representation, the United States' proposed order of

forfeiture does not expressly provide for a limit of $1,000,000. Rather, it provides for forfeiture

of money "in the amount of *at least* $1,000,000 United States currency." (Doc. No. 861-1

---

[1] The other co-defendants against whom orders of forfeiture have been entered are
Donald Buchanan, whose Judgment specifies the forfeiture of two Rolex watches identified in
the Preliminary Order of Forfeiture (Doc. Nos. 900, 945), and Andrew Bradley Froome, whose
Judgment provided for the forfeiture of a firearm and $43,244 in currency (Doc. No. 378).

(emphasis added).) In addition, the proposed Order is ambiguous with regard to whether the Money Judgment is in addition to or incorporates the value of certain real property and other assets the forfeiture of which the government seeks or has already obtained.

The government's response, however, appears to concede that the value of any "tainted" assets, substitute property, and real property seized or recovered from the defendant and any co-conspirators, including Donald Buchanan, should be applied toward the Money Judgment. (*See* Doc. No. 986, at 2 ("Thus, after entry of the Order of Forfeiture, the value of the net proceeds of any specific property of Bradley or a similarly situated coconspirator that is forfeited to the government will act to reduce Bradley's money judgment.").) The court will therefore grant the motion for entry of an order of forfeiture in the amount of up to, but not more than, $1,000,000, specifying that the value of any other assets forfeited to or seized by the government shall be applied toward satisfaction of the Money Judgment.

## B.      Forfeiture of Real Property

Although the United States seeks the forfeiture of five specific parcels of real property, the defendant disputes only the forfeiture of the parcel located at 45669 Harmony Lane (the "Property"). He argues that (1) the United States presented no evidence at the sentencing hearing to satisfy its burden of proving that Property is "tainted"—that is, that it was purchased from the proceeds of the crimes of conviction or used to commit the offense; and (2) the Property does not qualify as substitute property subject to forfeiture either, because it is not "property of the defendant" as required by 21 U.S.C. § 853(p)(2).

### (i)      *Whether the Property Qualifies as Tainted*

As set forth above, any property derived from the proceeds of the crimes of conviction or used to commit or facilitate the commission of those crimes is subject to forfeiture. 21 U.S.C. §

853(a)(1) & (2). Section 853 creates a rebuttable presumption that any property owned by the defendant is subject to forfeiture, but only if the government proves by a preponderance of the evidence that "(1) such property was acquired . . . during the period of the violation of this subchapter . . . or within a reasonable time after such period; and (2) there was no likely source for such property other than the violation of this subchapter or subchapter II of this chapter." 21 U.S.C.A. § 853(d).

At the sentencing hearing, the United States represented that it would offer "whatever factual proof [it] ha[d] on forfeiture during this hearing." (Doc. No. 919, at 5.) In fact, the evidence presented at the sentencing hearing concerning the Property was very limited. IRS Special Agent William DeSantis testified that, during the course of the conspiracy, the defendant had a job earning approximately $55,000 per year. (Doc. No. 919, at 199.) Although DeSantis presented evidence regarding when each of the other properties subject to forfeiture was purchased and for how much, he had no information regarding when the defendant acquired the Property at 45669 Harmony Lane or how much he paid for it. (*See id.* at 201 ("Now, we did a title search . . . , and they could never find a recorded deed that transferred the ownership to Mr. Bradley himself.").) Instead, the title search yielded a recorded deed conveying the property from the defendant to his wife, Kareema Hawkins, on April 23, 2015, approximately six weeks after the defendant's arrest. (*Id.*)

In short, the government presented no evidence at the sentencing hearing from which the court could conclude either that the Property was acquired during the course of the criminal conspiracy or that there was no likely source for funds to purchase the property other than the defendant's criminal activity. 21 U.S.C.A. § 853(d). Moreover, the United States offered no evidence suggesting that the Property was purchased using funds derived from the defendant's

criminal activity or that the Property itself was used to commit or facilitate the commission of that crime is subject to forfeiture. 21 U.S.C. § 853(a).[2] The United States therefore failed to establish at the sentencing hearing that the Property is subject to forfeiture under § 853(a).

In response to the defendant's argument in that regard, the United States has submitted the Affidavit of DeSantis, in which he attests that further investigation, apparently conducted after the sentencing hearing, led him to the previous owner of the Property, Krikor Holding Company, and the owner of Krikor Holding Company, Majid Krikor. Although Majid Krikor was unable to find a deed reflecting this conveyance, Krikor allegedly told DeSantis that the defendant purchased the Property from him in early 2014 for approximately $105,000 in gold coins and scrap gold. (Doc. No. 986-1 ¶ 2.b.) Also attached to DeSantis's Affidavit are a Quitclaim Deed showing the conveyance of the Property from Wayne County, Michigan to Krikor Holding LLC on October 18, 2012 at a tax sale for $87,499 (Doc. No. 986-2), and a print-out from the website of the Treasurer for Wayne County, Michigan, showing that the defendant, Benjamin Bradley, was listed as the Taxpayer for the Property in 2014. (Doc. No. 986-3.)

The defendant objects to this evidence, and particularly to DeSantis's report regarding what Krikor told him, on the basis that it consists of inadmissible hearsay. (Doc. No. 996, at 3 (citing *United States v. $64, 595.00 in U.S. Currency*, No. 5:13-CV-265-REW, 2014 WL 5432119 (E.D. Ky. Oct. 27, 2014), and *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 508–10 (5th Cir. 2008)).) The precedent upon which the defendant relies, however, establishes only that hearsay may be inadmissible in proceedings under the Civil Asset Forfeiture

---

[2] At the time of sentencing, the only evidence in the record of a connection between the Property and the drug conspiracy was that $78,300 in cash and several Rolex watches were found at the Property in the course of a search conducted on or around the time of the defendant's arrest. The United States made no attempt to argue that this evidence *per se* is sufficient to establish the requisite nexus between the Property and the crime to justify forfeiture.

Reform Act of 2000 (CAFRA), 18 U.S.C. § 983.

This court is not persuaded that the standards applicable under CAFRA—particularly CAFRA proceedings at the summary judgment stage—have any bearing in the context of criminal forfeiture. Those courts holding that hearsay may not be considered in ruling on a motion for summary judgment in the CAFRA context have determined that, because the proceeding is strictly civil, ordinary Rule 56 standards and the Federal Rules of Evidence apply. *See, e.g.*, *$92,203.00 in U.S. Currency*, 537 F.3d at 508–10. Conversely, the Federal Rules of Evidence generally do not apply to sentencing proceedings, Fed. R. Civ. P. 1101(d)(3), and the Supreme Court has recognized criminal forfeiture as "an element of the sentence imposed following conviction." *Libretti v. United States*, 516 U.S 29, 38 (1995). Moreover, the procedural rules governing criminal forfeiture proceedings expressly provide that the court may consider "evidence already in the record, including any written plea agreement, and . . . any additional evidence or information submitted by the parties and accepted by the court as relevant and reliable." Fed. R. Crim. P. 32.2(b)(1)(B). Consequently, those courts to consider the question have uniformly concluded that hearsay is admissible to establish the elements of § 853(d). *See, e.g.*, *United States v. Jafari*, 85 F. Supp. 3d 679, 684–85 (W.D.N.Y. 2015) (holding that "the traditional rules of evidence do not apply [to criminal forfeiture proceedings], and courts may consider hearsay and other inadmissible evidence so long as it is sufficiently reliable" (citing Fed. R. Evid. 1101(d)(3)), *aff'd*, 663 F. App'x 18 (2d Cir. 2016); *United States v. Evanson*, No. 2:05CR00805 TC, 2008 WL 3107332, at *2 (D. Utah Aug. 4, 2008) ("Because criminal forfeiture is viewed as part of the sentencing process, hearsay is admissible." (citing *Libretti*, 516 U.S. at 38–39); *United States v. Ivanchukov*, 405 F. Supp. 2d 708, 709 n.1 (E.D. Va. 2005) (noting that "the traditional rules of evidence do not apply in determining issues related to

criminal forfeiture" (citing *United States v. Higgs*, 353 F.3d 281, 324 (4th Cir. 2003))).

Although the United States clearly was dilatory in waiting until the submission of its Reply brief to present evidence of the nexus between the Property and the drug-distribution and money-laundering crimes to which the defendant pleaded guilty, the court will not exclude that evidence. The defendant has had the opportunity to respond to the government's evidence, which he did by filing a sur-reply. He also had the opportunity to request a hearing but has not done so.

The court finds that Agent DeSantis's testimony about what Krikor told him about the purchase of the Property, though hearsay, is both relevant and reliable, particularly insofar as it is coupled with documentary evidence showing when and for what price Krikor purchased the property and that the defendant was listed as the taxpayer on the property for the year 2014 by the records of the Treasurer for Wayne County, Michigan. The Indictment, to which the defendant pleaded guilty, alleges that the drug conspiracy began in 2012 and continued until March 11, 2015. (Doc. No. 3.) In other words, reliable evidence shows that the defendant acquired the property while the drug-distribution and money-laundering conspiracies were in full swing. Moreover, the property was purchased by Krikor at a tax sale for $87,499 in October 2012 and its value in May 2017 is estimated to be $400,000. (Doc. No. 986-9.) That evidence substantiates Krikor's statement that he sold the Property to the defendant in early 2014 for approximately $100,000. Even disregarding Krikor's statement that the Property was purchased primarily with gold coins and scrap gold, the fact that the defendant, who earned a salary of $55,000, paid cash to purchase the Property for $100,000 at a time when the drug-distribution and money-laundering conspiracies were ongoing, constitutes strong circumstantial evidence that he purchased the house with proceeds from the criminal enterprise. The various officers' testimony at the sentencing hearing regarding the sums of cash cycling through the various bank

accounts implicated in the conspiracy around that time, as well as the fact that approximately $78,300 in cash was seized from the Property on the date of the defendant's arrest, constitutes additional circumstantial evidence that the Property was purchased with money derived from the criminal enterprise. Likewise, as the United States argued in support of its Motion for Preliminary Order, the location, manner of storage and packing of the currency sought for seizure constitutes evidence that the real property sought for forfeiture was either purchased with the use of commingled funds or with cash that was not obtained through legitimate activity. (Doc. No. 859, at 5.)

Based on all of this evidence, the court finds that the United States has carried its burden of establishing, by a preponderance of the evidence, the requisite nexus between the Property at 45669 Harmony Lane and the offenses to which the defendant has pleaded guilty. That is, the defendant acquired the Property while the drug distribution and money laundering conspiracies were ongoing, and there was no likely source for the funds to purchase the property other than his criminal activity, which gives rise to a presumption that the Property was purchased from proceeds the defendant obtained, directly or indirectly, from the crimes of conviction. 21 U.S.C. § 853(a) & (d). The defendant offered no evidence to rebut that presumption. The court will therefore overrule the defendant's objection to the forfeiture of the Property located at 45669 Harmony Lane.

### (ii) Substitute Property

Having determined that the Property is subject to forfeiture under § 853(a), the court has no need to address the parties' arguments regarding whether the Property is subject to forfeiture as substitute property under § 853(p). In any event, to the extent any third party contests the forfeiture of the Property, she may petition the court under the procedures outlined in § 853(n) to

adjudicate the validity of her interest in the Property.

**IV.     Conclusion**

Consistent with the discussion above, the court will grant the United States' motions. An appropriate Order of Forfeiture is filed herewith.

_____
ALETA A. TRAUGER
United States District Judge