IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

UNITED STATES OF AMERICA,      )
                               )
          Plaintiff,           )
                               )
vs.                            )  Case No.
                               )  3:15-cr-00037-2
BENJAMIN EDWARD HENRY          )
BRADLEY,                       )
                               )
          Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

BEFORE THE HONORABLE TODD J. CAMPBELL, DISTRICT JUDGE

TRANSCRIPT

OF

PROCEEDINGS

June 8, 2016

Plea Hearing

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:

        For the Government: Mr. Brent Hannafan
                            Asst. U.S. Attorney
                            110 Ninth Avenue S., Suite A961
                            Nashville, TN 37203

        For the Defendant:  Mr. James E. Mackler
                            Attorney at Law
                            150 Third Avenue S., Suite 1900
                            Nashville, TN 37201

PREPARED BY:
                    CATHY B. LEIGH, RDR, CRR
                        Court Reporter
                        126 Babb Drive
                      Joelton, TN 37080
                       (615) 512-7544

I N D E X

Page

BENJAMIN BRADLEY:
    Examination by the Court                    12

ANDREW GREEN:
    Direct Testimony                            21

1    The above-styled cause came on to be heard on June

2   8, 2016, before the Honorable Todd J. Campbell, District

3   Judge, when the following proceedings were had, to-wit:

4    THE COURT:  Good morning.  We're here in the case

5   of *United States versus Bradley*.  The purpose of this hearing

6   is to consider a petition to enter a plea of guilty.

7    I have a couple of questions about the petition,

8   at least the latest draft that was submitted to my office.

9   And you can correct me if I am wrong if it has been changed,

10   but as to paragraph 12 which defendant is offering to plead

11   guilty to Counts One and Two, Count Two is described as

12   laundering of monetary instruments.  And as I understand the

13   indictment, it is conspiracy to launder monetary instruments,

14   so it would appear that would need to be changed.

15    I have noticed the change in the supervised

16   release period for Count One and Count Two that seems

17   appropriate under Section 841 of Title 21 it would be not

18   less than three years.  And under Count Two, it would be not

19   more than three years since it is a Class C felony, so that

20   seems right to me.  But I want to get feedback from the

21   lawyers about that whether changes need to be made.

22    Also, just to be clear, my understanding of the

23   law is that if Mr. Bradley or anyone else pleads guilty to

24   the indictment, they are waiving their right to challenge the

25   denial of the motion to suppress before the Court of Appeals.

1  So I want to make sure that there is no misunderstanding.

2  There often is a misunderstanding about that.  I want to make

3  sure that there is not in this case.

4          Mr. Hannafan.

5          MR. HANNAFAN:  Yes, Your Honor.  I have noted some

6  changes Your Honor was talking about on the plea petition.  I

7  think it also should note paragraph 12, it is actually 21

8  U.S.C. Section 841(a)(1) and 846.

9          THE COURT:  That's correct, because it is a

10  conspiracy count.  The object of the conspiracy is 841.

11          MR. HANNAFAN:  Yes.

12          THE COURT:  But it is a conspiracy count.  I did

13  not see that citation.  Thank you.

14          MR. HANNAFAN:  Then the same thing with respect to

15  the next line, guilty as to Count Two, conspiracy to launder

16  monetary instruments should be 1956(h), which is the

17  conspiracy charge.

18          THE COURT:  As I understand it, both are

19  conspiracy counts.  The object of the conspiracy is the

20  citation that at least in my version.

21          MR. HANNAFAN:  Yes.

22          THE COURT:  Are you satisfied with the supervised

23  release period?

24          MR. HANNAFAN:  Yes.  I emailed counsel about that.

25  I think there is with respect to on page 2, I just noticed I

```
 1   had emailed counsel about this I guess just this morning that
 2   the penalty as to Count Two, the fine is up to $500,000,
 3   twice the amount of the value of the property involved in the
 4   transaction.  That is typo.  It says after $500,000 or twice,
 5   it says, or twice twice.
 6              THE COURT:  Now that I am looking at page 2 where
 7   it says as to Count Two, it describes the wrong charge.  It
 8   is the object rather than the conspiracy.
 9              MR. HANNAFAN:  I have noted that on here, and I
10   have initialed the proposed changes, Your Honor.
11              THE COURT:  After you make those typographical
12   corrections, if you'd let Mr. Mackler look at it and see if
13   he is satisfied.
14              MR. HANNAFAN:  Yes, Your Honor.  And then the
15   Court's other question was whether by entering an open plea
16   the defendant is waiving his right to appeal denial of the
17   motion to suppress.
18              THE COURT:  Correct.
19              MR. HANNAFAN:  Yes.  I agree.
20              Is there anything else, Your Honor?
21              THE COURT:  No.  I am just I have had a constant
22   stream of 2255s over that issue petitions on, and I want to
23   avoid that inevitability.
24              MR. HANNAFAN:  My understanding is that is the
25   law.
```

                    THE COURT:  That's the law.

                    MR. HANNAFAN:  If you plead open.

                    THE COURT:  That doesn't mean I don't have a
docket full of it, but that's the law.

                    MR. HANNAFAN:  Doesn't stop the 2255s, as I am
well aware in dealing with those as well, Your Honor.  But,
no, I agree that is the law; by pleading open, the defendant
waives the right to appeal the denial of the motion to
suppress.

                    Your Honor.

                    THE COURT:  Yes, sir.

                    MR. HANNAFAN:  One other thing before I forget.
There also there are a number of forfeiture allegations
against the defendant both with respect to Count One and
Count Two, and there were some bills of particulars that were
filed subsequent to the indictment.  And I just wanted to, I
guess, remind the Court, make sure the Court is aware that
we'll have to proceed on those between now and sentencing.

                    THE COURT:  Well, I was going to mention that the
plea of guilty would be to Counts One and two, but the
indictment also mentions a Forfeiture Allegation One and
Forfeiture Allegation Two --

                    MR. HANNAFAN:  Yes.

                    THE COURT:  -- that Mr. Bradley is named in.  It
is something that would result from a plea of guilty of

1   Counts One and Counts Two would be the forfeiture.  The
2   allegation is not something, as I understand it, that he
3   would need to plead guilty to, but he needs to be aware that
4   of course that that's the natural result.
5           MR. HANNAFAN:  Yes, Your Honor.  I was just
6   bringing to the Court and counsel's attention as a reminder.
7           THE COURT:  Mr. Mackler.
8           MR. MACKLER:  Judge, in regard to those forfeiture
9   allegations, that is not -- that wasn't my understanding
10  necessarily.  Obviously, Mr. Bradley is acknowledging
11  agreement he committed the crimes here but not that the
12  property seized is necessarily directed in the way required
13  for forfeiture.  In fact, he would contest some of the direct
14  forfeiture allegations.
15          THE COURT:  Well, you certainly can contest them,
16  but the result, as I understand, of pleading to Counts One
17  and Two would be that there is a possibility of forfeiture of
18  named and unnamed property in these forfeiture allegations.
19          MR. MACKLER:  Judge, I guess I understand there is
20  that possibility.  Maybe I don't fully understand the degree
21  of that possibility.  If it is a foregone conclusion, it is a
22  necessary consequence of the plea, then I am going to need to
23  take some more time to discuss this with my client.  That
24  wasn't my understanding and certainly not his.
25          THE COURT:  Well, let's let Mr. Hannafan respond

1  to that.

2        MR. HANNAFAN:  Your Honor, under 32.2 it talks

3  about how -- well, the short answer is this.  Is that by

4  pleading guilty, there are now the United States can now

5  proceed on its forfeiture allegations as alleged in the

6  indictment.  And there is to be, you know, the question of

7  what exactly is forfeited and how much money or property is a

8  question to be determined later, not to be determined today.

9  And by pleading guilty the defendant is not admitting as to

10 any specific amount or specific property.  But the property

11 and amounts as alleged in the indictment is now subject to

12 forfeiture.

13        THE COURT:  That's my understanding is that Mr.

14 Mackler would still be able to contest the property that

15 would be subject to forfeiture, but the forfeiture allegation

16 would be operative at that point of pleading guilty.

17        MR. HANNAFAN:  Yes.

18        THE COURT:  Okay.

19        Mr. Mackler, are we -- do we have a

20 misunderstanding?

21        MR. MACKLER:  I don't believe we do, although I

22 may need to make sure my client fully understands that.  My

23 understanding is exactly that he is pleading guilty.  He

24 understands that certainly makes the forfeiture issue ripe,

25 but he intends to contest the amount and items to be

1   forfeited.

2           THE COURT:  Bear with me just a second.  I will

3   give you a break in a minute, but as to Forfeiture Allegation

4   One, it alleges forfeiture of any property derived from the

5   proceeds of the drug activity, specifically Section 846,

6   Title 21.  And that could be including a money judgment in

7   the amount to be determined.  And it goes on in summary says

8   if that property can't be located, the United States could

9   attempt to prove substitute property to be forfeited.

10          On count Forfeiture Allegation Two, it alleges in

11  substance that any property traceable to the conspiracy to

12  commit money laundering could be forfeited.  If that property

13  can't be located, the government could seek forfeiture of

14  substitute property.

15          So the specific property to be forfeited is not,

16  for instance, a house, car; it is proceeds or substitute

17  assets of proceeds.

18              Is that a fair summary, Mr. Hannafan?

19          MR. HANNAFAN:  Yes.  Although, Your Honor, the

20  United States did file in subsequent pleadings just giving

21  notice of specific pieces of property and specific amounts of

22  money and some other personal items such as watches that the

23  United States would be seeking to forfeit.  But it is our

24  burden to prove that either these are proceeds of or were

25  involved in the crimes to which the defendant has pleaded

1  guilty.

2          THE COURT:  Are you making reference to the bill

3  of particulars?

4          MR. HANNAFAN:  Yes.  Docket Number 279.  And there

5  is a second one at 432.

6          THE COURT:  And describe the property again that's

7  in the bill of particulars.

8          MR. HANNAFAN:  In the first one, it lists a number

9  of amounts of currency that have been seized, seven amounts

10 of currency.

11         It also lists personal items, five different

12 items, various watches.

13         THE COURT:  And those are items that the

14 government intends to seek forfeiture of?

15         MR. HANNAFAN:  Yes.  And then in the second bill

16 of particulars, it was a notice with respect to real

17 property, and it alleged five different pieces of real

18 property.

19         THE COURT:  And the government's position is that

20 those are proceeds of either the conspiracy to violate the

21 drug statute or conspiracy to money laundering essentially?

22         MR. HANNAFAN:  Yes.

23         THE COURT:  Okay.

24         Mr. Mackler.

25         MR. MACKLER:  I think, Judge, we are all on the

same page in that sense Mr. Bradley denies or will deny that
those particular items are proceeds of the drug conspiracy or
the money laundering conspiracy.  Not to get into too much
detail now, but he was gainfully employed.  He had other
sources of income.  So when the time comes, the burden, as
Mr. Hannafan correctly stated, will be on them to demonstrate
that connection.  And that will be presumably a contested
hearing.  I just want to make sure my client understands and
there is no misunderstanding here that he is certainly not
admitting to that connection by entering his plea of guilty
here today.

THE COURT:  It is my understanding that he can
contest that those are items of property that are proceeds of
illegal conduct.  And the government's position is they are,
and yours apparently is they are not.  That's not what we're
here about today, but I want to make sure that Mr. Bradley
understands if he pleads guilty to Counts One and Two,
whether certain property would be forfeited will be
determined at another time but that the forfeiture
allegation, in your words, becomes ripe as a result of the
plea of guilty.  Whether there is any of his property that
would be forfeited is yet to be determined.

MR. MACKLER:  That's my understanding.  I believe
that's Mr. Bradley's understanding as well.

THE COURT:  Would you like a break to talk with

1  him?

2          MR. MACKLER:  Let me double check.

3          No, he understands.

4          THE COURT:  Okay.

5          All right then, if Mr. Bradley would if he wants

6  to proceed would sign the petition and initial any changes

7  and have the lawyers sign, and we'll talk about it.

8          All right.  If Mr. Bradley and Mr. Mackler would

9  come up to the podium, we'll talk about this.

10         Mr. Bradley, before the Court can accept a plea of

11 guilty, it must be determined that it is being done

12 knowingly, intelligently, and voluntarily.  In order to do

13 that, I need to ask you some questions.  The questions will

14 be under oath.  It is very important to tell the truth.  If

15 you don't tell the truth, you could be prosecuted for perjury

16 or false statement.

17         Would you raise your right hand please, sir.

18                          BENJAMIN BRADLEY

19 was called, and being first duly sworn, was examined and

20 testified as follows:

21 EXAMINATION BY THE COURT:

22 Q.   Mr. Bradley, I am going to be asking you a number of

23 questions.  If at any time you feel confused or you don't

24 understand, let me know, and I will clarify.

25         I am going to begin by going over what you have

1 been charged with and what the government would have to prove
2 to a jury beyond a reasonable doubt in order for you to be
3 convicted.
4          And then I will have a number of questions
5 thereafter.
6          Starting with the indictment, to summarize it says
7 on Count One beginning on a date unknown to the grand jury
8 but not later than in or about November 2012 and continuing
9 thereafter until on or about March 11, 2015 in the Middle
10 District of Tennessee, you, along with 17 other people,
11 conspired to unlawfully, knowingly, and intentionally possess
12 with intent to distribute and to distribute controlled
13 substances, including Oxycodone and Oxymorphone, both
14 Schedule II controlled substances, in violation of Title 21,
15 United States Code, Section 841(a)(1), all in violation of
16 Title 21, United States Code, Section 846.
17          For you to be convicted of that, the government
18 would have to prove to a jury, first of all, the elements of
19 a conspiracy.  And I need to inform you a conspiracy is a
20 crime of two or more persons to conspire or agree to commit a
21 drug crime even if they never actually achieve their goal.
22 It is a kind of criminal partnership.  And the government
23 would have to prove first that two or more persons conspired
24 or agreed to the object of the conspiracy, which in this
25 instance is a violation of Title 21, Section 841, regarding

1  Oxycodone and Oxymorphone.

2        And secondly, that you knowingly and voluntarily

3  joined the conspiracy.

4        Now, the object of the conspiracy is Section 841,

5  which is possession of a controlled substance with intent to

6  distribute.  And the elements of that offense are that a

7  defendant knowingly or intentionally possessed the controlled

8  substance set out in the indictment.  And here again it is

9  Oxycodone and Oxymorphone.

10        And second, you intended to distribute those

11  controlled substances.

12        Now, on Count Two, it alleges also a conspiracy.

13  It reads that the grand jury further charges beginning on a

14  date unknown to the grand jury but not later than in or about

15  November 2012 and continuing thereafter until on or about

16  March 11, 2015 in the Middle District of Tennessee that you

17  and two others conspired to violate 18 U.S.C. Section 1956,

18  to wit, knowingly conducting and attempting to conduct

19  financial transactions affecting interstate commerce and

20  foreign commerce which involved the proceeds of specified

21  unlawful activity.  That is, the unlawful distribution of

22  Schedule II controlled substances with the intent to promote

23  the carrying on of said unlawful specified unlawful activity,

24  that is, the distribution of Schedule II controlled

25  substances while conducting and attempting to conduct

financial transactions knew that the property involved in the transactions, financial transactions represented the proceeds of some form of unlawful activity, in violation of Section 1956(a)(1)(A)(i) of Title 18 and alleges that this conspiracy is all in violation of Section 1956(h) of Title 18.

There are also two forfeiture allegations against you which we have been discussing in your presence in the indictment.

In order for you to be convicted of Count Two, I have told you what the elements of conspiracy are, and here the object of the conspiracy is a violation of Section 1956(a)(1)(A)(i), which deals with conduct of financial transactions, essentially being involved in money laundering activities.

And the elements of the object of the conspiracy are that you knowingly conducted or attempted to conduct a financial transaction.

That the financial transaction involved property that represented the proceeds of specified unlawful activity. And here it would be unlawful distribution of Schedule II controlled substances.

And third, that you knew that the property involved in the financial transaction represented proceeds of the unlawful activity.

And fourth, that you had the intent to promote or

1  carrying on of the specified unlawful activity, specifically

2  distribution of Schedule II controlled substances.  And as

3  alleged in the indictment, it deals with Oxycodone and

4  Oxymorphone.

5          So I go through all of this detail with you to ask

6  you this question.  Do you feel like you understand the

7  nature, the meaning, and the cause of the charge against

8  you?

9  A.    Yes, sir.

10  Q.    Have you told Mr. Mackler everything you know about the

11  facts on which the charges are based?

12  A.    Yes, sir.

13  Q.    Have you and your lawyer talked about what the

14  government would have to prove for you to be found guilty of

15  Count One and Two?

16  A.    Yes.

17  Q.    Have you discussed any possible defenses that you might

18  have with your lawyer?

19  A.    Yes.

20  Q.    Are you satisfied with the lawyer?

21  A.    Yes.

22  Q.    I need to inform you about the maximum possible penalty

23  provided by law.  And as to Count One, it is not more than 20

24  years imprisonment, a fine of up to one million dollars, a

25  one hundred dollars special assessment, and a term of

supervised release of at least three years.

As to Count Two, not more than 20 years imprisonment, a fine of up to $500,000 or twice the amount of the value of the property involved in the transactions, one hundred dollars special assessment, and not more than three years supervised release.

Do you feel like you understand the maximum possible penalty?

A.    Yes.

Q.    Supervised release has a number of conditions.  If you violate the terms of your supervised release, it can be revoked, and you could be reincarcerated.

If you are able to pay a fine, you will be fined.

If anyone has lost money or property because of your conduct, you could be ordered to pay restitution.

There is a one hundred dollars special assessment per count.

And if you are not a United States citizen, you may be removed, denied citizenship, and denied readmission to the United States in the future.

Any questions so far?

A.    No, sir.

Q.    These are felony charges.  Conviction of a felony deprives you of the right to vote, you may not possess a firearm, and this could be counted as one of the necessary

1  prior convictions for being a career criminal.

2          If the Court accepts your plea of guilty, the

3  following process will apply.  A presentence report will be

4  prepared.  It will include an estimated advisory guideline

5  range.  You will have an opportunity to object to it.  The

6  government will have an opportunity to object.  And the Court

7  will determine the advisory guideline range at sentencing.

8          Also at sentencing, you will have a right to put

9  on evidence and to personally address the Court.

10          In the event you receive a sentence you are

11  disappointed with, you will not be allowed to withdraw your

12  plea of guilty simply because you have changed your mind.

13          Do you feel like you understand that?

14  A.    Yes, sir.

15  Q.    Are you presently on parole, probation, or supervised

16  release from any other offense in any other court?

17  A.    No, sir.

18  Q.    I want to go over your trial rights with you, make sure

19  you understand them and make sure you understand that you

20  don't have to plead guilty.  You have a right to plead not

21  guilty and persist in that plea.

22          You have a right to trial by jury at which you

23  will be accorded the presumption of innocence.

24          You have a right to be represented by counsel and

25  have court-appointed counsel at all stages of your case.

1          You have a right to confront and cross-examine
2    witnesses.
3          You have a right not to be compelled to
4    incriminate yourself.
5          You have a right to testify, present evidence, and
6    compel the attendance of witnesses.
7          And you have a right to require the government to
8    prove each element of each charge beyond a reasonable doubt
9    to a jury.
10         Do you understand that if you plead guilty, you
11   are waiving those trial rights?
12   A.   Yes.
13   Q.   Now, knowing all the penalties, now knowing basically
14   everything we have talked about so far, do you still want to
15   plead guilty?
16   A.   Yes.
17   Q.   I am going to go over a couple of points about your
18   petition.  In paragraph 12, it says you want to plead guilty
19   to Count One charging conspiracy to distribute a controlled
20   substance.  And Count Two, conspiracy to launder monetary
21   instruments.
22         And paragraph 13 says this plea is not a result of
23   a plea agreement.  I want to make sure you understand that
24   the government is not promising you anything in exchange for
25   your plea of guilty.  Do you feel like you understand that?

1  A.    Yes.

2  Q.    Has anybody forced you to plead guilty?

3  A.    No.

4  Q.    Has anybody put any pressure on you in any way to make

5  you plead guilty?

6  A.    No.

7  Q.    Has anybody promised you anything of benefit to entice

8  you or encourage you to plead guilty?

9  A.    No.

10  Q.    Have you had any drugs or alcohol in the last 12 hours?

11  A.    No.

12  Q.    Are you taking any prescription medications?

13  A.    No.

14  Q.    Is your mind clear?

15  A.    Yes.

16  Q.    Do you know what you are doing?

17  A.    Yes.

18  Q.    Are you having any trouble understanding me?

19  A.    No.

20  Q.    Is your plea of guilty voluntary?

21  A.    Yes.

22  Q.    In a moment, I am going to ask you to be seated.  The

23  government is going to put on a statement of facts under oath

24  that it contends it could prove at trial.  I want you to

25  listen to what the government says about you.  To the extent

```
 1   the government goes into conduct that you disagree with, we
 2   will talk about it further.  Thank you.  You can be seated.
 3              (Witness excused.)
 4              THE COURT:  Mr. Hannafan.
 5              THE WITNESS:  Good morning, Your Honor.
 6              THE COURT:  Good morning.  Raise your right hand.
 7                         ANDREW GREEN
 8   was called, and being first duly sworn, was examined and
 9   testified as follows:
10              THE WITNESS:  Your Honor, if this case were to
11   proceed to trial, the United States would put on facts
12   establishing the following beyond a reasonable doubt.
13              With respect to Count One, beginning on a date
14   unknown to the grand jury but not later than in or about
15   November 2012 and continuing until about March 11, 2015, in
16   the Middle District of Tennessee and elsewhere, the
17   defendants charged in Count One did combine, conspire,
18   confederate, and agree with each other and with others known
19   and unknown to the grand jury to unlawfully, knowingly, and
20   intentionally possess with intent to distribute and to
21   distribute controlled substances, including Oxycodone and
22   Oxymorphone, both Schedule II controlled substances, in
23   violation of Title 21, United States Code, Section 841(a)(1),
24   all in violation of Title 21, United States Code, Section
25   846.
```

1             With respect to Count Two, beginning on a date

2    unknown to the grand jury but not later than in or about

3    November 2012, and continuing thereafter until on or about

4    March 11, 2015 in the Middle District of Tennessee and

5    elsewhere, the defendants charged in Count Two did knowingly

6    combine, conspire, and agree with each other and with other

7    persons known and unknown to the grand jury to commit

8    offenses against the United States, in violation of Title 18,

9    United States Code, Section 1956, to wit, knowingly

10   conducting and attempting to conduct financial transactions

11   affecting interstate and foreign commerce which involved the

12   proceeds of a specified unlawful activity, that is, the

13   unlawful distribution of Schedule II controlled substances

14   with the intent to promote the carrying on of the said

15   specified unlawful activity, that is, the distribution of

16   Schedule II controlled substances, and that while conducting

17   and attempting to conduct such financial transactions knew

18   that the property involved in the financial transactions

19   represented the proceeds of some form of unlawful activity,

20   in violation of Title 18, United States Code, Section

21   1956(a)(1)(A)(i), all in violation of Title 18, United States

22   Code, Section 1956(h).

23             The investigation into the conspiracy included the

24   interception of wire and electronic communications over nine

25   target telephones -- which will be referred to as Target

Telephones 1 through 9 -- between November 2014 and March
2015.  Defendant was the owner and user of Target Telephone
3, Target Telephone 7, Target Telephone 8, and Target
Telephone 9.  He was frequently intercepted over these phones
communicating in furtherance of drug trafficking and money
laundering conspiracies.  He was also intercepted over Target
Telephones 1, 2, and 6 communicating with Donald Buchanan and
Target Telephone 4 communicating with Jones in furtherance of
the drug trafficking and money laundering conspiracies.

       4.  Beginning no later than 2012, defendant
regularly distributed controlled substances, including
Oxycodone and Oxymorphone, either directly or indirectly to
others, including each of the co-defendants in this case.

       5.  Defendant typically collected prescription
pills from various sources in the Detroit area.  Then after
storing those pills in various locations, delivered them to
Donald Buchanan often by having coconspirators, including
Felicia Jones and Eric McEwen drive to meet Buchanan either
in the Cincinnati area or the Nashville area.

       6.  Defendant also worked with Buchanan, Jones,
and others to launder the proceeds of the drug-trafficking
activity and promote the ongoing criminal activity.  For
example, over the course of several years, Buchanan and
others, acting at his direction, made frequent cash deposits
into accounts owned or controlled by defendant.

```
 1              That concludes the proof.
 2              THE COURT:  Mr. Hannafan, any questions of the
 3    witness?
 4              MR. HANNAFAN:  No, Your Honor.
 5              THE COURT:  Mr. Mackler, any questions of the
 6    witness?
 7              MR. MACKLER:  No, sir.
 8              THE COURT:  Thank you.
 9              (Witness excused.)
10              THE COURT:  Mr. Bradley and Mr. Mackler, if you'd
11    come back up to the podium.
12              Mr. Bradley, did you hear the witness testify
13    about you?
14              THE DEFENDANT:  Yes, sir.
15              THE COURT:  Is what he said about you true and
16    correct?
17              MR. MACKLER:  Sir, there is one correction.
18              THE COURT:  Okay.
19              MR. MACKLER:  Mr. Bradley never delivered pills
20    to -- never used McEwen to deliver pills to Buchanan.
21              MR. HANNAFAN:  I am sorry, what?
22              THE COURT:  Let me see if I can summarize what I
23    heard.  Mr. Bradley takes the position that he never utilized
24    Mr. McEwen to deliver drugs to Mr. Buchanan.  Is that
25    correct?
```

1          THE DEFENDANT:  Yes.

2          THE COURT:  Mr. Hannafan, does that change the

3    perspective of the government on the elements of the

4    offense?

5          MR. HANNAFAN:  No.

6          THE COURT:  All right.  We'll consider that a

7    contested issue meaning that whether Mr. Bradley utilized Mr.

8    McEwen to deliver drugs to Mr. Buchanan.  But it doesn't

9    affect the conclusion that Mr. Bradley committed the elements

10   of the offenses in Count One and Count Two.

11         Is there anything else, Mr. Mackler, that is

12   contested?

13         MR. MACKLER:  One moment, Judge.

14         No, nothing else, Judge.

15         THE COURT:  Setting aside, Mr. Bradley, the

16   dispute about the utilization or nonutilization of Mr. McEwen

17   by you, are you offering to plead guilty to Counts One and

18   Two because you are in fact guilty as charged in the

19   indictment?

20         THE DEFENDANT:  Yes, Your Honor.

21         THE COURT:  The Court has concluded that Mr.

22   Bradley is competent.  He is not under the influence of drugs

23   or alcohol.  He understands the nature of the charge.  He

24   understands the maximum possible penalty for both Counts One

25   and Two.

1          He understands his constitutional rights.  He

2     understands there is no plea agreement in this case.  He's

3     offered to plead guilty knowingly, intelligently, and

4     voluntarily.

5          There is a factual basis for the plea of guilty,

6     notwithstanding that one disputed fact, and the plea of

7     guilty to Counts One and Two are accepted, and defendant is

8     adjudged guilty of the offenses in Counts One and Two.

9          I am going to sign the proposed order accepting

10    the plea of guilty.

11         And I need to set a sentencing date.  Is there any

12    objection to September 23rd at 10:30 a.m.?

13              MR. HANNAFAN:  No, Your Honor.

14              MR. MACKLER:  I am checking, Judge.

15              THE COURT:  Take your time.

16              MR. MACKLER:  No, Judge.  That's September 23rd is

17    fine.  What time did you say, sir?

18              THE COURT:  10:30.

19              MR. MACKLER:  10:30.  That's fine.

20              THE COURT:  So as I understand it, September 23rd

21    at 10:30 is acceptable.  In the event that a conflict

22    develops, you can file appropriate motion.  We'll find a

23    convenient time for all concerned.

24              So the sentencing is set for September 23rd at

25    10:30.  Anything else?

1          MR. HANNAFAN:  No, Your Honor.

2          MR. MACKLER:  No, Your Honor.

3          THE COURT:  Okay.  Thank you.

4          MR. HANNAFAN:  Thank you, Your Honor.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

REPORTER'S CERTIFICATE


I, Cathy B. Leigh, Court Reporter with offices at Joelton, Tennessee, do hereby certify:

That I reported on the Stenograph machine the proceedings held in open court on June 8, 2016, in the matter of UNITED STATES OF AMERICA vs. BENJAMIN EDWARD HENRY BRADLEY, Case No. 3:15-cr-00037-2; that said proceedings in connection with the hearing were reduced to typewritten form by me; and that the foregoing transcript (pages 1 through 28) is a true and accurate record of said proceedings.

This the 28th day of July, 2017.


/s/ Cathy B. Leigh
Cathy B. Leigh, RDR, CRR
Court Reporter