No. 3:15-cr-00037-2

IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

_____

UNITED STATES OF AMERICA,

*Plaintiff,*

**vs.**

BENJAMIN BRADLEY,

*Defendant.*

_____

**DEFENDANT'S MOTION TO DISMISS THE FORFEITURE
ALLEGATIONS OF THE INDICTMENT AND DENY THE
GOVERNMENT'S REQUEST FOR A MONEY JUDGMENT**

_____

Defendant Benjamin Bradley, through undersigned counsel, moves this

Court to (1) dismiss Forfeiture Allegations One and Two from the Indictment and

(2) deny the government's request for a money judgment, for the reasons set forth

in the accompanying memorandum of law.


Respectfully submitted,

*/s/ Melissa Salinas*
MELISSA SALINAS, Esq. (MI-P69388)
University of Michigan Law School
Federal Appellate Litigation Clinic
363 Legal Research Building
801 Monroe Street

Ann Arbor, Michigan 48109-1215
Ph: 734.763.4319
salinasm@umich.edu

DAVID B. SMITH, Esq. (VA-25930)
David B. Smith, PLLC
108 North Alfred St.
Alexandria, VA 22314
Ph: 703.548.8911
dbs@davidbsmithpllc.com

ROBERT L. PARRIS, Esq. (TN-19847)
8 South 3rd Street
Memphis, TN 38103
Ph: 901.299.1479
rlp@robertparrisattorney.com

*Counsel for Benjamin Bradley*

## CERTIFICATE OF SERVICE

I hereby certify this motion was filed on January 11, 2019, using the Court's

ECF system, which will send notice of this filing to all counsel of record indicated

on the electronic receipt.

/s/ Melissa Salinas
Melissa Salinas (MI-P69388)
University of Michigan Law School
Federal Appellate Litigation Clinic

No. 3:15-cr-00037-2

IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

---

UNITED STATES OF AMERICA,

*Plaintiff*,

**vs.**

BENJAMIN BRADLEY,

*Defendant.*

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS THE FORFEITURE ALLEGATIONS OF THE INDICTMENT AND DENY THE GOVERNMENT'S REQUEST FOR A MONEY JUDGMENT**

---

For the reasons set forth below, Benjamin Bradley respectfully requests that this Court dismiss the forfeiture allegations in the Indictment and deny the government's request for a money judgment.

## INTRODUCTION

The Indictment's forfeiture allegations ask this Court to exercise power it does not have. The Sixth Amendment anchors the authority for determining whether a defendant is subject to criminal punishment outside of the judiciary. Although courts may engage in factfinding at sentencing to select a punishment within the

range provided for by statute, they may not alter the "legally prescribed range" of punishment. *Alleyne v. United States*, 570 U.S. 99, 115 (2013). Thus, courts cannot impose punishments not authorized by a jury verdict's findings or a defendant's admissions. The forfeiture allegations lack that factual foundation here. Bradley therefore requests that the Court dismiss those allegations from the Indictment.

This motion asks the Court to determine whether criminal forfeiture penalties are included within the Sixth Amendment's broad restraints on judicial power. The Court of Appeals remanded this case for the consideration of that issue after the Supreme Court's clarification in *Southern Union Co. v. United States* that the Sixth Amendment applies not only to incarceration but also to monetary forms of criminal punishment—in particular, criminal fines. 567 U.S. 343, 346 (2012). *Southern Union*, the Supreme Court's related Sixth Amendment case law, and centuries of historical practice in England and the American colonies compel this Court to hold that the Sixth Amendment applies to criminal forfeitures.

Bradley did not admit the Indictment's forfeiture allegations. He pleaded guilty to violating two conspiracy statutes. That plea empowered this Court to impose the substantial term of imprisonment prescribed by those statutes. But that plea provides neither the authorization nor the factual predicates necessary for criminal forfeiture. By continuing to prosecute these forfeiture allegations, the

2

government asks this Court to make the requisite factual determinations itself. The Sixth Amendment requires the Court to decline that invitation.

Additionally, Bradley moves the Court to deny the government's request for a personal money judgment. The Court of Appeals vacated this Court's prior forfeiture order, which contained a $1,000,000 personal money judgment against Bradley, because the order's imposition of joint and several liability was not permitted by 21 U.S.C. § 853. Likewise, § 853 does not authorize personal money judgments in lieu of forfeitures of specific pieces of tainted property. Bradley therefore asks the Court to deny any repeated attempt to seek a personal money judgment against him on remand.

## PROCEDURAL HISTORY

Bradley was indicted in March 2015 for his involvement in an operation that illegally sold prescription pain medicine. (R. 3, Indictment, PageID# 7.) The indictment charged him with: (1) conspiracy to possess and distribute controlled substances in violation of 21 U.S.C. §§ 841(a) and 846; and (2) conspiracy to engage in money laundering in violation of 18 U.S.C. § 1956. (*Id.*) Bradley pleaded guilty to those two violations, and this Court sentenced him to seventeen years in prison. (R. 919, Sentencing Tr., PageID# 3432.)

The Indictment also included two forfeiture allegations. (R. 3, Indictment, PageID# 11–14.) Those allegations seek forfeiture of Bradley's real and personal

property under 21 U.S.C. § 853(a)(1) and (2) and 18 U.S.C. § 982(a)(1), which prescribe mandatory forfeiture penalties against persons who acquired or used property in connection with certain crimes. (*Id.*) Specifically, § 853(a)(1) requires forfeiture of all property "constituting, or derived from, any proceeds" of a convicted controlled substance distribution offense, while § 853(a)(2) requires forfeiture of any property "used, or intended to be used," to facilitate that same offense. Likewise, § 982(a)(1) requires forfeiture of any property "involved in" a convicted money laundering offense.

Bradley did not admit that any of his property is forfeitable. He expressly excluded the forfeiture allegations from his guilty plea and made clear throughout his plea hearing that he disputed the government's contention that certain property was acquired with illicit proceeds. (R. 1027, Plea Hearing Tr., PageID# 4009, 4013.) Nevertheless, on the eve of Bradley's sentencing hearing, the government moved for a preliminary order forfeiting Bradley's real property and some of his personal property. (R. 858, Mtn. for Forfeiture, PageID# 2751–53.) At the same time, the government also moved for a $1,000,000 money judgment against Bradley, purportedly pursuant to 21 U.S.C. § 853(p), to facilitate the seizure of substitute property if the specifically identified parcels and pieces of property subject to §

4

853(a) and § 982(a)(1) could not be seized.[1]  (R. 861, Mtn. for Money Judg., PageID# 2795–96.)

Bradley vigorously contested the government's motion.  While he did not concede that any of his property was subject to forfeiture, he concentrated his defense on protecting his family home, located at 45669 Harmony Lane, where his wife and children resided.  (R. 958, Response to Mtn. for Forfeiture, PageID# 3714.)  Bradley noted that, at sentencing, the government failed to offer any evidence whatsoever connecting his Harmony Lane property to illegal activity or illicit proceeds.  (*Id.* at PageID# 3719.)  In contrast, he provided his own evidence of a substantial income from his job as a medical technician and records from a real estate database showing that the home was purchased for a modest price.  (*Id.*)

The government—realizing its failure to establish that the Harmony Lane property was forfeitable—then sought permission to produce additional evidence.  (R. 965, Mtn. for Leave to Reply, PageID# 3756.)  After receiving permission to try again, the government submitted an affidavit from a police officer, summarizing a purported conversation with a third party who alleged that Bradley acquired the

---

[1] Section 853(p) does not authorize the issuance of a money judgment. Rather, it authorizes the forfeiture of specific substitute property if the conditions of § 853(p)(1) are met.  Even if money judgments are properly authorized in some circumstances, they are not authorized for the purpose asserted by the government in this case, and the government's reliance on § 853(p) here is highly unusual if not unprecedented.

Harmony Lane property from him during the period of the conspiracy. (R. 986, Gov't Reply, PageID# 3818–21.) Relying on that affidavit, this Court then found that Bradley acquired the Harmony Lane property during his illegal activity, thereby triggering a rebuttable presumption under § 853(d) that the property is forfeitable. (R. 1004, Memorandum, PageID# 3892–93.) The Court held that Bradley failed to rebut that presumption and therefore granted an order of forfeiture.

On appeal, Bradley raised several challenges to the Court's forfeiture order. Two are relevant here.[2] First, he argued the Court's imposition of joint and several liability violated recent Supreme Court precedent interpreting § 853 to require individualized liability. (Ex. A, Appellant's Opening Br., at 27.) Second, he argued the Sixth Amendment denied this Court the power to impose criminal forfeiture absent a supporting admission or verdict. *Id.* at 11. The Court of Appeals agreed that § 853 does not permit joint and several liability, vacating this Court's forfeiture order and remanding for another full forfeiture proceeding. *United States v. Bradley*, 897 F.3d 779, 784 (6th Cir. 2018).

---

[2] Bradley also argued that the Court's procedures, particularly its decision to grant the government an additional opportunity to make its case after failing to do so at sentencing, violated his due process rights and Federal Rule of Criminal Procedure 32.2. (Ex. A, Appellant's Opening Br., at 20–26.)

The Court of Appeals then provided instructions for addressing Bradley's Sixth Amendment argument on remand:

> That is an unanswered question in this circuit. It prompts these questions: Does the Supreme Court's extension of *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2012), to fines in *Southern Union Co. v. United States*, 567 U.S. 343, 350 (2012), apply to criminal forfeitures? Is the Court's statement in *Libretti v. United States*, 516 U.S. 29, 48– 49 (1995), that the Sixth Amendment does not provide a right to a jury trial over criminal forfeiture necessary to the disposition of that case? Do any of our precedents bear on the question? What do historical practices tell us about the original understanding of the judge's and jury's factfinding roles in criminal forfeiture proceedings? The parties may wish to address these questions on remand.

*Bradley*, 897 F.3d at 784. Thus, the Court of Appeals squarely placed the Sixth Amendment's applicability to criminal forfeiture before this Court. This motion followed.

## ARGUMENT

### I. The Sixth Amendment Bars this Court from Making Factual Findings to Support a Criminal Forfeiture Order

The Court should dismiss the Indictment's forfeiture allegations because the penalty sought by those allegations cannot be granted. The Sixth Amendment's jury trial right is a fundamental restraint on judicial power. *Blakely v. Washington*, 542 U.S. 296, 306 (2004). Courts cannot impose punishments not authorized by a jury verdict's findings or a defendant's admissions. *Id.* To protect this principle in an age of graduated sentencing schemes that require factfinding at sentencing, the Supreme Court adopted a prohibition on any judicial factfinding that alters the

7

"legally prescribed range" of punishment authorized by a jury verdict or guilty plea. *Alleyne*, 570 U.S. at 115. It has applied this rule to invalidate sentencing procedures under which judicial factfinding altered minimum penalties, *id.* at 117, maximum penalties, *Apprendi*, 530 U.S. at 497, and mandatory penalties, *United States v. Booker*, 543 U.S. 220, 249–50 (2005).

The Sixth Circuit's order of remand now requires the Court to decide whether mandatory criminal forfeiture penalties are somehow exempt from the Sixth Amendment's restraints on judicial factfinding. The Supreme Court gave clear guidance in *Southern Union* that the answer is no. 567 U.S. at 346. Historical evidence further demonstrates that an exemption for forfeiture penalties would be contrary to the Sixth Amendment's original meaning. This Court should therefore accept the broad scope of the Sixth Amendment's jury trial right articulated in *Southern Union* and the clear implication of that decision for criminal forfeitures.

**A.** ***Southern Union* instructs courts to apply the Sixth Amendment to all forms of criminal punishment**

In *Southern Union*, the Supreme Court clarified that the Sixth Amendment's factfinding restraints apply equally to corporeal and monetary punishments**.** *Southern Union*, 567 U.S. at 346. There, a jury convicted a corporation of violating an environmental statute that carried a criminal fine of $50,000 per day of noncompliance. *Id.* at 346. But the jury did not specify the duration of the corporation's violation. *Id.* Instead, the court made that finding itself, imposing a

8

fine premised on 762 days of noncompliance.  *Id.*  The Supreme Court reversed, holding that the district court exceeded its authority by imposing a criminal penalty dependent on facts not contained in the jury's verdict.  *Id.* at 352.

Continued prosecution of the forfeiture allegations asks this Court to commit the same error as the district court in *Southern Union*.  The forfeiture statutes, 21 U.S.C. § 853(a)(1) and (2) and 18 U.S.C. § 982(a)(1), authorize forfeiture penalties only upon an array of factual findings related to the origins and use of Bradley's property.  Section 853(a)(1) requires a finding that Bradley's property "constitut[es], or [is] derived from, any proceeds" of his controlled substance distribution offense; § 853(a)(2) requires a finding that Bradley "used, or intended to [] use[]," certain property to facilitate that same offense; § 982(a)(1) requires a finding that such property was "involved in" his money laundering offense.  Bradley has never admitted any of those facts.  The Court lacks the power to find them itself.

*Southern Union* provides clear guidance for the Sixth Amendment's applicability to criminal forfeiture.  *See* 567 U.S. at 350.  There, the Supreme Court flatly rejected the First Circuit's refusal to apply the Sixth Amendment to monetary punishments as a "dramatic departure from precedent."  *Southern Union*, 567 U.S. at 360.  The Sixth Amendment's core concern, the Supreme Court noted, is to reserve to the jury the determination of facts that warrant additional punishment under a specific statute.  *Id.* at 349.  In applying that principle, the Supreme Court

9

emphasized that it had "never distinguished one form of punishment from another." *Id.* at 350. "Instead, [its] decisions *broadly prohibit* judicial factfinding that increases maximum *criminal sentences*, *penalties*, or *punishments*—terms that each undeniably embrace fines." *Id.* (citations and internal quotation marks omitted) (emphasis added).

The Court should follow those instructions here. Forfeiture has long been considered a form of criminal punishment. *See Libretti*, 516 U.S. at 42 ("Forfeiture, as we have said, is a part of the sentence."). And criminal forfeiture and criminal fines have been treated equally for purposes of constitutional analysis. *See Alexander v. United States*, 509 U.S. 544, 558 (1993) (stating criminal forfeiture "is clearly a form of monetary punishment no different, for Eighth Amendment purposes, from a traditional fine"). Indeed, at oral argument in *Southern Union*, Deputy Solicitor General Michael Dreeben argued against extending Sixth Amendment protections to criminal fines because it would logically require an extension to criminal forfeiture as well. Oral Argument Tr. at 37, *Southern Union*, 567 U.S. 343 (2012) (No. 11-94). The Supreme Court therefore contemplated the issue here in *Southern Union*. Further recognizing this fact, Justices Gorsuch and Sotomayor recently described a Ninth Circuit holding that the Sixth Amendment does not apply to restitution—a similar form of monetary criminal punishment—as "doubtful" in light of *Southern Union* and other recent case law. *Hester v. United*

10

*States*, No. 17-9082, 2019 WL 113622, at *1 (U.S. 2019) (Gorsuch, J., dissenting

from the denial of certiorari). *Southern Union* therefore directs this Court to refrain

from unilaterally imposing the forfeiture penalties sought by the indictment.

### B.   The Supreme Court's historical approach to Sixth Amendment analysis shows that criminal forfeitures, like criminal fines, are within the scope of the *Aprrendi* principle

The Court should follow the Supreme Court's instructions to apply the Sixth

Amendment's jury trial right as it existed at common law. The Sixth Amendment's

scope is a function of historical practice at common law. *See Oregon v. Ice*, 555

U.S. 160, 170 (2009) ("[T]he scope of the constitutional jury right must be informed

by the historical role of the jury at common law."). Indeed, in *Southern Union*, the

Supreme Court engaged in a lengthy and thorough analysis of common law jury

practice relating to criminal fines. *Southern Union*, 567 U.S. at 352–58. Here, the

historical record is even clearer that juries both at common law and throughout most

of American history decided issues of forfeiture.

Eighteenth-century courts in both England and the American colonies

reserved forfeiture determinations for the jury. David B. Smith, Prosecution and

Defense of Forfeiture Cases, § 14.03A, 14-56.2 (2018). For example, Sir Matthew

Hale's History of the Pleas of the Crown states, "[t]he usage was always upon . . . a

conviction of felony by the petit jury . . . to charge the inquest or jury to enquire,

what goods and chattels he hath, and where they are . . . ." Matthew Hale, History

of the Pleas of the Crown 362 (1778 ed). A model jury instruction from the Crown Circuit Companion confirms this point: "If they say Guilty, then the clerk asks them, What lands or tenements, goods or chattles, he (the prisoner) had at the time of the felony committed, or any time since?" Thomas Dogherty, The Crown Circuit Companion 21–22 (1799) (emphasis in original).

This practice carried over into the American colonies. In colonial New York, for example, juries frequently wielded their power to nullify government attempts to raise revenue through forfeitures, "almost invariably reporting no lands, tenements, or chattels upon conviction." *See* Julius Goebel & T. Raymond Naughton, Law Enforcement in Colonial New York 713 (1944). States also maintained this practice following the Constitution's ratification. In 1852, Justice Benjamin Curtis, sitting by designation on a circuit court, concluded that the Rhode Island constitution guaranteed property owners a jury trial in criminal forfeiture prosecutions. *See Greene v. Briggs*, 10 F. Cas. 1135, 1142 (C.C.D. R.I. 1852).

Modern criminal procedure even enshrined the common law jury right for forfeiture prosecutions until 2000. *See* Former Fed. R. Crim. P. 31(e) (repealed 2000).[3] Former Rule 31(e) of the Federal Rules of Criminal Procedure required a special verdict in forfeiture prosecutions "as to the extent of the interest or property

---

[3] Indeed, Rule 32.2 still partially embodies this principle today by requiring the government to include forfeiture allegations in the indictment. Fed. R. Crim. Pro. 32.2(a).

subject to forfeiture." Congress believed this jury trial right was constitutionally required; and it also believed the government had to prove the facts supporting criminal forfeiture beyond a reasonable doubt, as the legislative history of the modern criminal forfeiture statutes shows. *See United States v. Pelullo*, 14 F.3d 881, 903–06 (3d Cir. 1994) (citing S. Rep. No. 98-225, 98th Cong., 2d Sess. 193 (1983), reprinted in 1984 U.S.C.C.A.N. 3182, 3392, and H. Rep. No. 845, 98th Cong., 2d Sess. 18, 38 (1984)); *United States v. Elgersma*, 929 F.2d 1538, 1547–48 (11th Cir. 1991), *rev'd in part*, 971 F.2d 690 (11th Cir. 1992) (en banc); Senate Staff Report on S. 1931, Civil Asset Reform Act 14 (2000)(government's burden in a criminal forfeiture is beyond a reasonable doubt). Absent a knowing waiver of that jury trial right, a court could not enter an order of forfeiture against a defendant. *See United States v. Ham*, 58 F.3d 78 (4th Cir. 1995).

In 1998, however, the Department of Justice urged the Advisory Committee on Criminal Rules to replace former Rule 31(e) with current Rule 32.2. That rule severely limits a defendant's jury rights on issues of forfeiture. Now, when the government seeks forfeiture of specific property, a defendant may only "request" a jury determination in "case[s] tried before a jury," effectively denying this right to defendants who plead guilty to the underlying offense. Fed. R. Crim. P. 32.2 Moreover, when the government seeks a so-called "personal money judgment" in lieu of specific property, the jury right is foreclosed altogether. *Id.*

Rule 32.2 became law two years later, in 2000. Thus, after routinely abiding by the Sixth Amendment in criminal forfeiture proceedings for more than 200 years, American courts began accepting a government invitation to stray beyond their constitutionally imposed restraints. This Court should follow the Supreme Court's guidance and return to the Sixth Amendment's traditional application here.

### C. *Libretti* does not prevent this Court from following *Southern Union* and applying the Sixth Amendment to criminal forfeiture

The other circuits that have declined to apply the Sixth Amendment's jury trial protections to criminal forfeiture in the wake of *Southern Union* have erroneously interpreted *Libretti*, 516 U.S. 29 as precluding that result. These circuits cite *Libretti* for the proposition that there is no constitutional right to a jury verdict in forfeiture proceedings. *See, e.g.*, *Unites States v. Phillips*, 704 F.3d 754, 769 (9th Cir. 2012); *United States v. Day*, 700 F.3d 713, 733 (4th Cir. 2012). In this case, however, the Court of Appeals acknowledged that the scope of *Libretti*'s holding is unclear, inviting this Court to address the issue on remand. *Bradley*, 897 F.3d at 784.

The facts of *Libretti* limit *Libretti*'s holding. There, the defendant admitted to the forfeitability of certain assets in his plea agreement. *Libretti*, 516 U.S. at 33–34. *Libretti* therefore did not need to address the question presented here because— unlike Bradley—the defendant in that case stipulated all of the facts necessary to authorize the imposition of forfeiture.

14

*Libretti* addressed only the procedural safeguards required for a defendant to validly waive his right to a jury determination of forfeiture. *Libretti*, 516 U.S. at 31–32. This narrow focus is illustrated by the lack of reference to the Sixth Amendment in the Supreme Court's formulation of the questions presented in that case:

> We must decide whether Federal Rule of Criminal Procedure 11(f) requires the District Court to determine whether a factual basis exists for a stipulated asset forfeiture embodied in a plea agreement, and whether the Federal Rule of Criminal Procedure 31(e) right to a special jury verdict on forfeiture can only be waived following specific advice from the district court as to the existence and scope of this right and an express, written waiver.

*Id.*

Instead, the other circuits rely on dicta from *Libretti* in which the Court suggested that the Sixth Amendment's jury trial right does not apply to forfeiture determinations. *See, e.g.*, *Phillips*, 704 F.3d at 769 (citing *Libretti*, 516 U.S. at 48–49). But the extraneous nature of that statement is confirmed by Justice Souter's concurring opinion, in which he joins the judgment but expressly notes that the majority's Sixth Amendment analysis was unnecessary to the outcome. *Id.* at 52 (Souter, J., concurring). Indeed, Justice Ginsburg also concurred in the judgment but did not join the portion of the majority opinion containing the Sixth Amendment dicta. *See id.* at 31.

The Supreme Court later abandoned the framework cited by *Libretti* for its Sixth Amendment dicta. *See Alleyne*, 570 U.S. at 106–08 (discussing the impact of

*Apprendi* on prior caselaw). In *Apprendi*, the Court adopted a new framework which prohibits judicial factfinding wherever it alters "the prescribed range of penalties to which a criminal defendant is exposed." 530 U.S. at 490 (citations omitted). The Supreme Court has applied that framework to more than a half-dozen criminal penalties, including the monetary penalty in *Southern Union*.[4] *Libretti*'s dicta is vastly outweighed by this expansive and more recent body of caselaw. The Court is therefore not bound by the dicta in *Libretti*, but should instead follow the clear guidance in *Southern Union*.

### D. Forfeiture is a mandatory criminal penalty for which *Booker* and *Alleyne* prohibit judicial factfinding

The Court should adhere to *Booker* and *Alleyne*'s prohibition against judicial factfinding that triggers a mandatory penalty. 543 U.S. at 222; 570 U.S. at 116. Other circuits have evaded these precedents by erroneously characterizing the

---

[4] *See, e.g.*, *Mathis v. United States*, 136 S. Ct. 2243, 2252 (2016) (interpreting the Armed Career Criminal Act to avoid an *Apprendi* violation); *Hurst v. Florida*, 136 S. Ct. 616, 621 (2016) (invalidating Florida's capital sentencing scheme under *Apprendi*); *Alleyne*, 570 U.S. at 116 (vacating a sentence where the district court applied a statute's prescribed mandatory minimum based on a fact not found by the jury); *Southern Union*, 567 U.S. at 346 (vacating a criminal fine where the district court applied a statutory minimum based on a fact not found by the jury); *Booker*, 543 U.S. at 222 (invalidating the mandatory application of the Federal Sentencing Guidelines); *Blakely*, 542 U.S. at 303–04 (vacating a sentence where the district court exceeded the maximum sentence authorized by the facts admitted in the defendant's guilty plea); *Ring v. Arizona*, 536 U.S. 584, 589 (2002) (invalidating Arizona's capital sentencing scheme under *Apprendi*); *Apprendi*, 530 U.S. at 490 (invalidating a New Jersey hate crime statute that authorized an increased maximum sentence based on judge-found facts).

forfeiture statutes as "open-ended" and "indeterminate" sentencing schemes. *United States v. Sigillito*, 759 F.3d 913, 935–36 (8th Cir. 2014) (citations and quotations omitted). *See also Phillips*, 704 at 770. But the forfeiture statutes—21 U.S.C. § 853 and 18 U.S.C. § 982(a)(1)—*require* a court to order forfeiture of property whenever facts are found sufficiently connecting that property to the underlying crime under the so-called "nexus" requirement. *See United States v. Monsanto*, 491 U.S. 600, 607 (1989) ("Congress could not have chosen stronger [language] to express its intent that forfeiture be mandatory in cases where [§ 853] applies."); *United States v. Hampton*, 732 F.3d 687, 691 (6th Cir. 2013) ("There can be no doubt . . . Congress intended that criminal forfeiture under [§ 982] be mandatory.").

Forfeiture is anything but an indeterminate sentencing scheme. Courts have no discretion if the requisite factual predicates are present. The forfeiture statutes mandate that a defendant forfeit property found to be sufficiently connected to crime. The forfeiture statutes therefore impose exactly the sort of factually dependent mandatory penalty for which *Booker* and *Alleyne* prohibit judicial factfinding. *See Booker*, 543 U.S. at 244; *Alleyne*, 570 U.S. at 116. *See also* Wayne R. LaFave Et Al., Criminal Procedure §26.4(i) (4th ed.) (noting that "*Apprendi*'s logic" requires the Sixth Amendment's application to criminal forfeiture, and suggesting that lower courts will begin applying it as such after *Alleyne*).

The Sixth Amendment anchors the power to determine whether an accused is subject to a particular criminal punishment outside of the judiciary. *Blakely*, 542 U.S. at 306. *Apprendi* and its progeny exist to restrain courts from circumventing this separation of powers through judicial factfinding at sentencing. *Id.* And *Southern Union* emphasized that lower courts should give these core principles broad application. 567 U.S. at 350. Here, Bradley expressly denied the Indictment's forfeiture allegations and no jury was empaneled to find the requisite facts. It would be fundamentally inconsistent with *Southern Union*, *Alleyne*, and *Booker* to now order Bradley to forfeit property based on those allegations. The Court should therefore dismiss the Indictment's forfeiture allegations.

## II.    A Money Judgment Is Not Authorized by the Forfeiture Statute

Prior to remand, this Court granted the government's motion for a $1,000,000 Order of Forfeiture Consisting of a Money Judgment. The Sixth Circuit vacated that order in light of the Supreme Court's holding in *Honeycutt v. United States*, 137 S. Ct. 1626 (2017) that 21 U.S.C. § 853 does not authorize the imposition of joint and several liability. *Bradley*, 897 F.3d at 783–4. Likewise, the issuance of a money judgment has no basis in the statutory framework. This Court should deny the government's efforts to seek another money judgment here.

Like joint and several liability, forfeiture money judgments are another example of the judiciary improperly expanding the scope of an already harsh

criminal statute to make it easier for the government to confiscate the property of Americans who have committed a crime and to place them in perpetual debt to the government. The invention of the money judgment at the behest of prosecutors makes it much easier for the government to obtain a criminal forfeiture judgment. It does that in two ways. First, in combination with Fed. R. Crim. P. 32.2(e)(3), it illegally deprives the defendant of his right to have the jury find the facts necessary to support the forfeiture penalty. Second, it relieves the government of its normal and traditional burden to trace the criminal proceeds he obtains from the convicted criminal activity into a specific piece of property, such as a home or a bank account. It turns traditional forfeiture concepts on their head, substituting a penalty like a mandatory fine for a true forfeiture of specific "tainted" property. It thereby allows the government to make an "end run" around the traditional and statutory requirements for obtaining a criminal forfeiture. *Honeycutt*, 137 S. Ct. at 1634.

A consideration of the language, structure, history, and purpose of the criminal forfeiture statutes demonstrates that money judgments are not authorized.

### A. *Honeycutt*'s plain language analysis of the forfeiture statutes undercuts the dodgy "reasoning" supposedly justifying the invention of the money judgment by the courts

To establish a criminal forfeiture, like any other part of a sentence, the government must show its claim comes squarely within a statutory provision calling for that penalty. All criminal statutes must be strictly construed, including their

Case 3:15-cr-00037   Document 1125   Filed 01/11/19   Page 21 of 29 PageID #: 4450

penalty provisions. *Honeycutt*, 137 S. Ct. at 1635 (joint and several liability for criminal forfeiture is unlawful for lack of express statutory authorization); *Paroline v. United States*, 572 U.S. 434, 134 S. Ct. 1710 (2014) (restitution statute must be strictly construed); *Jones v. United States*, 526 U.S. 227, 233–34 (1999). "The role of this Court is to apply the statute as it is written—even if we think some other approach might 'accor[d] with good policy.'" *Burrage v. United States*, 571 U.S. 204, 134 S. Ct. 881, 892 (2014). *Accord, Flores-Figueroa v. United States*, 556 U.S. 646, 129 S. Ct. 1886, 1893 (2009) ("concerns about practical enforceability are insufficient to outweigh the clarity of the text"); *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 228, 128 S. Ct. 831 (2008). Unfortunately, these principles have been frequently ignored by the lower courts for many years.

The judicial invention of the "money judgment" is a prime example of this usurpation of Congress' authority to legislate and the lower courts' disregard of long established principles of statutory construction. The approach of the lower courts is typified by two decisions reasoning that it is permissible to create a money judgment penalty out of whole cloth because "nothing in the applicable forfeiture 'statutes suggests that money judgments are *forbidden*.'" *United States v. Blackman*, 746 F.3d 137, 145 (4th Cir. 2014) (quoting *United States v. Day*, 524 F.3d 1361, 1377 (D.C. Cir. 2008)). The Sixth Circuit followed this reasoning in *Hampton*, 732 F.3d at 691–92. But, as discussed in greater detail below, *Honeycutt* has undermined that

Case 3:15-cr-00037   Document 1125   Filed 01/11/19   Page 22 of 29 PageID #: 4451

decision. 137 S. Ct. at 1633 (noting "Section 853(a)'s limitation of forfeiture to tainted property acquired or used by the defendant").

Although all of the circuit courts to address this question have ultimately permitted personal money judgments under § 853 (as they did with the joint and several liability issue prior to *Honeycutt*, with the exception of the D.C. Circuit), several district court judges and a couple of circuit court decisions held that money judgments are *not* authorized. *See United States v. Surgent*, 2009 U.S. Dist. LEXIS 72563, at *16–53 (E.D.N.Y. Aug. 17, 2009)(Gleeson, J.) (analysis with a biting critique of contrary circuit decisions); *United States v. Poulin*, 690 F. Supp. 2d 415, 429 (E.D. Va. 2010); *United States v. Croce*, 334 F. Supp. 2d 781 (E.D. Pa. 2004) (refusing to accept interpretation of term "forfeit" that would obliterate the distinctions between forfeitures and fines), *modified & adhered to on reconsideration*, 355 F. Supp. 2d 774 (2005)(Dalzell, J.), *rev'd*, 209 Fed. Appx. 208 (3d Cir. 2006); *United States v. Day*, 416 F. Supp. 2d 79, 89 n.10 (D.D.C. 2006) (Friedman, J.) (following *Croce*, which is the one decision that "squarely analyzes the issue"; holding that "a money judgment does not constitute 'property' that is subject to forfeiture under Section 981"), *rev'd*, 524 F.3d 1361, 1377–78 (D.C. Cir. 2008); *United States v. Reiner*, 397 F. Supp. 2d 101, 104 (D. Me. 2005).

But each district judge was reversed or subsequently overruled by the court of appeals for no persuasive reason. And the two early circuit court decisions holding

that money judgments are not authorized, *see United States v. Ripinsky*, 20 F.3d 359, 365 n.8 (9th Cir. 1994) (cases authorizing money judgments cannot be relied on after the enactment of § 853(p) in 1986); *United States v. Voigt*, 89 F.3d 1050, 1085–86 (3d Cir. 1996)(same), were later ignored by their own circuits despite the rule that one panel cannot overrule another's earlier decision.

Money judgments contradict *Honeycutt*'s teachings. *Honeycutt* strictly construed the "procedural" provisions of 21 U.S.C. § 853, which are incorporated by reference into almost all other criminal forfeiture statutes. Section 853(a) and (p) refer exclusively to forfeiture of "property" of the defendant, as defined in § 853(b). Subsection (b) encompasses all forms of real and personal property, tangible and intangible, but says nothing about the entry of a general "money judgment" against the defendant, sometimes referred to as a "personal money judgment" or PMJ.  A sum of money is a measurement of value; it is not a description of any "property" which is subject to forfeiture under § 853. In other words, a "money judgment for the sum of one million dollars" is something entirely different than "one million dollars in U.S. currency" seized from the trunk of the defendant's auto. Only the latter is a real forfeiture authorized by statute. The former is a judicial invention resembling a fine, designed to make it much easier for prosecutors to obtain enormous "forfeiture" orders even when the defendant has no property to forfeit.

*Honeycutt* said forfeiture is "limit[ed] to" specific categories of property described in the statute. 137 S. Ct. at 1632. "These provisions, by their terms, limit forfeiture under § 853 to tainted property . . . ." *Id*.

Because Bradley's case is a drug case, the substantive provision of § 853(a)(1) is also relevant. It limits forfeiture to "*property* constituting, or derived from, any proceeds the person obtained, directly or indirectly," from committing the drug crime. The government is authorized to take untainted substitute property only if it can make a showing, at or after sentencing, that one of the circumstances specified in § 853(p)(1) is present, but nothing in the statute allows it to obtain a "money judgment" and place a judgment lien against the defendant that shackles him in perpetual debt, hindering him from getting back on his feet and becoming a productive member of society after his release from prison. Moreover, a money judgment, by its nature, can be satisfied against any property of the defendant, including untainted property, thus contravening § 853's "limit[ation of] forfeiture to tainted property." 137 S. Ct. at 1631–32.

When Congress intends to authorize a "money judgment" in lieu of forfeiture of the defendant's interest in tainted property, it knows how to authorize that remedy. It has done so only once, in 31 U.S.C. § 5332(b)(4) ("personal money judgment" as an alternative penalty where forfeiture is not effective, in cases involving "bulk cash smuggling"). Nothing in § 853 authorizes a money judgment. Such differences in

23

wording between statutes addressing similar concerns are given significant weight when interpreting the statute lacking the provision. *See, e.g.*, *Lagos v. United States*, 138 S. Ct. 1684, 1689–90 (2018) (construing the MVRA); *Dean v. United States*, 137 S. Ct. 1170, 1177 (2017) (construing mandatory consecutive sentencing law).

**B.** **The cases permitting money judgments ignore another well-established canon of statutory construction**

"The comprehensive character of the remedial scheme expressly fashioned by Congress strongly evidences an intent not to authorize additional [judicially inferred] remedies." *Northwest Airlines, Inc. v. Transport Workers Union of America, AFL-CIO*, 451 U.S. 77, 93–94 (1981). *Accord Jett v. Dall. Indep. School Dist.*, 491 U.S. 701, 732 (1989); *Middlesex Cty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 15 (1981). "The presumption that a remedy was deliberately omitted from a statute is strongest when Congress has enacted a comprehensive legislative scheme including an integrated system of procedures for enforcement." *Northwest Airlines*, 451 U.S. at 97. *Accord Massachusetts Mutual Life Ins. Co. v. Russell*, 473 U.S. 134, 146–47 (1985); *Rodriguez v. Compass Shipping Co. Ltd.*, 451 U.S. 596, 614 (1981)("The comprehensive character of the procedures outlined . . . precludes the fashioning of an entirely new set of remedies to deal with an aspect of a problem that Congress explicitly addressed.").

Title 21 U.S.C. § 853 provides a comprehensive system of procedures for enforcement of the criminal forfeiture laws. Prior to 1986, the statute did not make

provision for the forfeiture of substitute assets when the tainted property was no longer available for forfeiture. The Eleventh Circuit invented the "money judgment" in 1985 to fill that perceived gap in § 853's coverage. *United States v. Conner*, 752 F.2d 566, 575–77 (11th Cir. 1985), *cert. denied*, *Taylor v. United States,* 474 U.S. 821 (1985). However, when the gap was filled by the enactment of § 853(p) in 1986, that should have ended the money judgment, invented in 1985. Instead, because the courts ignored the canons of statutory construction, the money judgment theory essentially negated the more limited substitute asset remedy Congress had created.

### C.    There is no need to invent a remedy like the money judgment to prevent defendants from avoiding liability for their ill-gotten gains

Some courts have expressed concern that the money judgment is necessary to prevent defendants from dissipating their criminal proceeds "and avoid[ing] liability for their ill-gotten gains." *United States v. Vampire Nation (Banks)*, 451 F.3d 189, 202 (3d Cir. 2006).  But that policy concern is not well-founded. First, the drug laws applicable to Bradley's case authorize enormous fines under 21 U.S.C. § 841(b)(1)(B) and (C).  "Congress established the large fines in § 848 in an effort to deprive big-time drug dealers of some of their enormous profits, which often cannot be traced directly to their crimes for forfeiture purposes." *Garrett v. United States*, 471 U.S. 773, 794 (1985).

Moreover, 18 U.S.C. § 3571(d) authorizes enormous "[a]lternative" fines for all federal crimes based on gain or loss. The defendant may be fined "not more than

25

the greater of twice the gross gain or twice the gross loss" under that statute. That is *twice* the amount of a proceeds money judgment invented by the courts. Prosecutors prefer criminal forfeiture only because it is mandatory whereas most fines are within the discretion of the court to impose.

The second way in which the dubious "policy" concern expressed in the case law is addressed is the substitute assets provision of § 853(p)—the remedy Congress devised in 1986. As explained above, the "money judgment" negates and renders superfluous the more limited substitute asset remedy Congress enacted.

## CONCLUSION

For the foregoing reasons, Bradley respectfully requests that the Court grant this motion, dismiss the forfeiture allegations in the indictment, and deny the government's request for a money judgment.

Respectfully submitted,

*/s/ Melissa Salinas*
MELISSA SALINAS, Esq. (MI-P69388)
University of Michigan Law School
Federal Appellate Litigation Clinic
363 Legal Research Building
801 Monroe Street
Ann Arbor, Michigan 48109-1215
Ph: 734.763.4319
salinasm@umich.edu

DAVID B. SMITH**,** Esq. (VA-25930)
David B. Smith, PLLC

108 North Alfred Street
Alexandria, VA 22314
Ph: 703.548.8911
dbs@davidbsmithpllc.com

ROBERT L. PARRIS, Esq. (TN-19847)
8 South 3rd Street
Memphis, TN 38103
Ph: 901.299.1479
rlp@robertparrisattorney.com

*Counsel for Benjamin Bradley*

## CERTIFICATE OF SERVICE

I hereby certify this Memorandum of Law in Support of Defendant's Motion to Dismiss the Forfeiture Allegations of the Indictment was filed on January 11, 2019, using the Court's ECF system, which will send notice of this filing to all counsel of record indicated on the electronic receipt.

/s/ Melissa Salinas
Melissa Salinas (MI–P69388)
University of Michigan Law School
Federal Appellate Litigation Clinic