No. 3:15-cr-00037-2
IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

_____

UNITED STATES OF AMERICA,
         *Plaintiff*,

vs.

BENJAMIN BRADLEY,
         *Defendant.*

_____

## BENJAMIN BRADLEY'S REPLY TO THE GOVERNMENT'S OPPOSITION TO MOTION TO DISMISS FORFEITURE ALLEGATIONS AND DENY A MONEY JUDGMENT

_____

Benjamin Bradley respectfully submits this reply to the government's response in opposition to his motion to dismiss the forfeiture allegations and deny a money judgment.

Bradley's motion asks the Court to honor two recent Supreme Court decisions: *Southern Union Co. v. United States*, 567 U.S. 343 (2012), and *Honeycutt v. United States*, _ U.S. _, 137 S. Ct. 1626, 1632–33 (2017). The government's response sidesteps those decisions. It focuses on case law predating both *Southern Union* and *Honeycutt* (*see* Gov't Resp. at 12–17, 26) and argues Bradley has somehow waived his right to assert these claims in a newly remanded proceeding. (*Id.* at 22, 25.) What the government neglects to do, however, is explain how this

Court can impose criminal penalties that are authorized neither by Bradley's guilty plea nor (with respect to the money judgment) the relevant statutes. The Court therefore should grant Bradley's motion.

## DISCUSSION

The Court should dismiss the Indictment's forfeiture allegations because they seek a penalty that this Court cannot grant. The Sixth Amendment denies the judiciary the power to use its own factfinding to alter the range of penalties to which a defendant is exposed. *Alleyne v. United States*, 570 U.S. 99, 114–15 (2013). The government argues forfeiture penalties are exempt from this foundational rule. (Gov't Resp. at 12–22.) The Supreme Court made clear, however, that the Sixth Amendment has "never distinguished one form of punishment from another." *Southern Union*, 567 U.S. at 350. Bradley asks the Court to follow *Southern Union*'s mandate and dismiss the Indictment's forfeiture allegations.

Additionally, the Court should deny the government a money judgment against Bradley because there is no statutory basis for that penalty. *See* 21 U.S.C. § 853. *Honeycutt* admonished courts to refrain from going beyond the bounds of the forfeiture statutes when crafting forfeiture penalties. 137 S. Ct. at 1632–33. The government failed to identify any textual authorization for money judgments in the relevant statutes. (*See* Gov't Br. at 25–28.) The Court therefore should follow *Honeycutt* and deny the government a money judgment here.

## I. The Court should dismiss the forfeiture allegations

The Sixth Amendment prohibits judicial imposition of criminal punishments that have not been authorized by a jury's verdict or a defendant's admissions. *Blakely v. Washington*, 542 U.S. 296, 306 (2004). Courts are therefore prohibited from engaging in factfinding that alters the "legally prescribed range" of punishment. *Alleyne*, 570 U.S. at 115. After lower courts repeatedly carved out exceptions to this principle, the Supreme Court emphatically stated that the Sixth Amendment protects defendants from all forms of criminal punishment. *Southern Union*, 567 U.S. at 350.

Here, the government's forfeiture allegations seek a criminal penalty that is not authorized by Bradley's guilty plea. The government argues this Court can nevertheless order forfeiture because it should disregard *Southern Union* in favor of prior nonbinding precedent. Alternatively, the government argues that Bradley has either somehow waived his Sixth Amendment rights regarding forfeiture or that any violation of his rights would be harmless error. These arguments lack merit.

### A. *Southern Union* requires the Sixth Amendment's application to all forms of criminal punishment, including forfeiture

*Southern Union* requires the Sixth Amendment's application to all forms of criminal punishment, including forfeiture. The government's arguments to the contrary ask this Court to apply dicta from *Libretti* or Sixth Circuit precedent predating *Southern Union*, with the aim of avoiding alleged practical difficulties.

3

(Gov't Resp. at 12–22.) These arguments sidestep *Southern Union*'s mandate that courts cannot use judicially found facts to expand the authorized range of punishment. This Court should reject the government's arguments and hold that the Sixth Amendment applies to criminal forfeiture.

> i) *Libretti does not prevent this Court from following Southern Union*

*Libretti* did not reach the Sixth Amendment issue raised by Bradley's motion. There, the Supreme Court addressed the procedural requirements necessary for a defendant's written stipulation that he had forfeited his assets to the government to constitute a valid waiver of the jury right for forfeiture provided by former Federal Rule of Criminal Procedure 31(e). 516 U.S. at 31–32. Here, in contrast, Bradley expressly denied the forfeiture allegations, and he now argues this Court cannot order forfeiture precisely because there is no stipulation, admission, or jury verdict providing the requisite factual findings. (*See* Motion at 2.) *Libretti* did not—and indeed could not—decide the question raised here.

The government nevertheless attempts to apply *Libretti* as a shield against *Southern Union* based on a portion of the majority opinion that states, "the right to a jury verdict on forfeitability does not fall within the Sixth Amendment's constitutional protection." (*See id.* (quoting *Libretti*, 516 U.S. at 49).) But the cited language from *Libretti* is dicta. The Supreme Court has long defined an opinion's holding—as opposed to its dicta—as the analysis necessary to the result. *See, e.g.*,

4

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 572–73 (1993) (Souter, J., concurring) (noting that "a rule of law unnecessary to the outcome of a case" is likely dicta); *N.L.R.B. v. Int'l Bhd. of Elec. Workers, Local 340*, 481 U.S. 573, 591–92 n.15 (1987) (classifying a prior decision's assertion as dicta because "[t]his statement was unnecessary to the disposition of [that case]"); *Kastigar v. United States*, 406 U.S. 441, 454–55 (1972) ("The broad language in [a prior case] relied upon by petitioners was unnecessary to the Court's decision, and cannot be considered binding authority.").

*Libretti*'s Sixth Amendment discussion was not necessary to the outcome of that case. As the government concedes, the question before the Court was whether the defendant validly waived his statutory right to a jury determination of forfeiture by stipulating to the forfeitability of his property within his plea agreement. (*See* Gov't Resp. at 12). The defendant argued former Federal Rule of Criminal Procedure 11(c) required the court to provide "specific advice" concerning his right to a jury determination on forfeiture, rendering his waiver in the absence of that advice insufficient. *Libretti*, 516 U.S. at 48. The Court rejected this argument. *Id.* at 49–50. The absence of a Sixth Amendment right to a jury determination on forfeiture was not necessary to conclude that former Rule 11(c) did not require specific advice for a waiver of that right to be valid. The government's argument to the contrary grossly oversimplifies both criminal procedure and constitutional law.

5

First, as the Supreme Court noted in that same paragraph, former Rule 11(c) only required specific advice for waivers of "*certain* constitutional rights." *Libretti*, 516 U.S. at 50 (emphasis added). Second, the conduct required for waiver of a constitutional right varies enormously depending on the discrete right at issue—even among rights enshrined within the same constitutional amendment. *Cf. Montejo v. Louisiana*, 556 U.S. 778, 795 (2009) (holding that the Sixth Amendment right to counsel is waived unless expressly invoked). Thus, *Libretti*'s holding that a defendant validly waived his right to a jury determination on forfeiture certainly did not depend on the jury right lacking a constitutional foundation.

Justice Souter's concurrence makes these points explicit. He concurs in the judgment yet refuses to join the majority's discussion of the Sixth Amendment because waiver of the Sixth Amendment jury right for forfeiture, if it existed, would "be satisfied by the court's obligatory advice . . . of the right to a jury trial generally." *Libretti*, 516 U.S. at 52 (Souter, J., concurring). *Libretti*'s Sixth Amendment discussion was clearly not necessary to the result and is therefore dicta.

Moreover, the foundation underpinning *Libretti*'s Sixth Amendment dicta is obsolete. The Supreme Court decided *Libretti* prior to its adoption of the modern Sixth Amendment framework in *Apprendi v. New Jersey*, 530 U.S. 466 (2000). Notably, the case *Libretti* cites for its Sixth Amendment conclusion—*McMillan v. Pennsylvania*, 477 U.S. 79 (1986)—was abrogated by this framework. *See Alleyne*,

6

570 U.S. at 121 (Sotomayor, J., concurring) (noting that *McMillan* had been overruled). The government asks the Court to choose between *Southern Union* and *Libretti*. Fortunately, that choice is clear: this Court should follow *Southern Union* and dismiss the Indictment's forfeiture allegations.

ii) *The Sixth Circuit has not addressed this question*

The government concedes that the Sixth Circuit "has not yet directly addressed *Southern Union*'s applicability to criminal forfeiture." (Gov't Resp. at 15.) The panel opinion declares this an open question and suggests that *Southern Union* now requires courts to revisit the Sixth Amendment's application to criminal forfeiture. *United States v. Bradley*, 897 F.3d 779, 784 (6th Cir. 2018).

Rather than directly engage the open question set forth in the panel opinion on the merits, the government applies obsolete analysis from Sixth Circuit decisions predating *Southern Union*.[1] First, the government cites those decisions' characterization of forfeiture as a "form of indeterminate sentencing." (Gov't Resp. at 14.) Second, it relies on that characterization to argue that the Sixth Circuit's prior case law remains binding on this Court because it is not inconsistent with *Southern Union*. (Gov't Resp. at 15.) Both elements of that argument lack foundation and ignore that the panel itself called this question open. *See Bradley*, 897 F.3d at 785.

---

[1] Specifically, the government relies on *United States v. Corrado*, 227 F.3d 543 (6th Cir. 2000), *United States v. Hall*, 411 F.3d 651 (6th Cir. 2005), and *United States v. McAuliffe*, 490 F.3d 526 (6th Cir. 2007).

7

Forfeiture is not an indeterminate sentencing scheme. It is a mandatory penalty applicable whenever the relevant facts are found. *United States v. Monsanto*, 491 U.S. 600, 607 (1989). The government's suggestion that the forfeiture statutes lack a "statutory maximum" because those statutes prescribe a precise penalty rather than a range of penalties is illogical. (*See* Gov't Resp. at 14.) Justice Gorsuch recently highlighted the fallacy of this position, noting that it "misunderstands the teachings of our cases." *Hester v. United States*, _ U.S. _, 139 S. Ct. 509, 509–11 (2019) (Gorsuch, J., dissenting from the denial of certiorari). He elaborated, "We've used the term 'statutory maximum' to refer to the harshest sentence the law allows a court to impose based on facts a jury has found or the defendant has admitted." *Id.* Here, until Bradley admits (or a jury finds) the facts necessary to subject his property to forfeiture, the maximum penalty authorized by law is zero. *See id.*

Moreover, if forfeiture is an "indeterminate" penalty, *Southern Union* has rendered that distinction immaterial. *See* 567 U.S. at 347. The statute at issue in *Southern Union* prescribed a fine of up to "$50,000 for each day of violation." *Id.* (quoting 42 U.S.C. § 6928(d)). Likewise, 21 U.S.C. § 853(a) provides for forfeiture of, *inter alia*, "any . . . property used, or intended to be used, in any manner or part to commit" certain crimes. The maximum penalty authorized by either statute is a function of discrete factual findings. Richard E. Finneran & Steven K. Luther, *Criminal Forfeiture and the Sixth Amendment: The Role of the Jury at Common*

8
Case 3:15-cr-00037 Document 1134 Filed 03/07/19 Page 8 of 17 PageID #: 4572

*Law*, 35 Cardozo L. Rev. 1, 19–20 (2013) ("Although it is true that criminal forfeiture is indeterminate in that it lacks a defined numerical maximum, the same could have been said of the fine in *Southern Union*."). *Southern Union* therefore is fundamentally inconsistent with the reasoning in *Corrado*, *Hall*, and *McAuliffe*. Those decisions neither require nor permit this Court to ignore *Southern Union*.

>  iii) *The government's practical concerns are overstated and fail to recognize existing problems*

The government's final effort to evade *Southern Union* is to chronicle a series of hardships that would befall the government if the Court holds in Bradley's favor. (Gov't Resp. at 18–22.) To be clear, the government's so-called "practical problems" are irrelevant to the merits of Bradley's Sixth Amendment rights. The Supreme Court rejected these exact concerns in *Southern Union*. 567 U.S. at 360. "For even if [the government's] predictions are accurate, the rule the Government espouses is unconstitutional. That should be the end of the matter." *Id.* (internal quotations and citation omitted).

In any event, the government grossly overstates those practical consequences and conveniently ignores the burdens created by the existing forfeiture system. The government is fully capable of identifying the specific property for which it intends to seek forfeiture in an indictment. While the government now contends such a task would be insurmountable, two facts undermine that claim. (*See* Gov't Resp. at 18–21.) First, former Rule 7(c)(2) required indictments to identify the property subject

9

to forfeiture until that rule's repeal in 2000. The government has decades of experience listing items targeted for forfeiture in indictments. Second, in most cases—including this one—the government is required to file a bill of particulars, listing each of the items sought for forfeiture, shortly after the indictment. The government would suffer only a minor inconvenience if forced to include that exact same information in the indictment.

Moreover, the government does not need to plead forfeiture allegations with absolute precision. The government routinely relies on general descriptions of dates and events when alleging criminal activity in an indictment. The same could be done for forfeiture allegations. Here, the Sixth Amendment's application will not restrain the government's ability to pursue forfeiture any more than it prevents the government from prosecuting any other criminal offense.

Finally, the government has alternative mechanisms for seizing forfeitable property discovered after the indictment. First, the government can simply rely on the immensely powerful tool of civil asset forfeiture. *See* 18 U.S.C. § 981. The Department of Justice, in fact, already collects over 87% of all forfeited property through civil asset forfeiture. Dick M. Carpenter II et al., Inst. for Justice, *Policing for Profit: the Abuse of Civil Asset Forfeiture* 5 (2d ed. 2015).[2] Second, the

---

[2] Ironically, property owners receive significantly greater procedural protections, including the right to a jury trial, in civil asset forfeiture proceedings than in criminal asset forfeiture proceedings. *See* David B. Smith, *A Comparison of Federal Civil*

10
Case 3:15-cr-00037 Document 1134 Filed 03/07/19 Page 10 of 17 PageID #: 4574

government can always file a superseding indictment. The idea that any forfeitable property not identifiable at the time of the indictment will be immune from forfeiture if the Court rules in Bradley's favor is simply incorrect.

### B. Bradley did not waive his right to a jury determination on forfeiture

The Sixth Circuit's remand order specifically asks this Court to consider the Sixth Amendment issue now raised by Bradley's motion. *Bradley*, 897 F.3d at 784. Yet the government again seeks to dodge *Southern Union* by arguing Bradley has somehow waived his right to assert this claim. (*See* Gov't Resp. at 22–24.) The government's arguments, however, distort both the scope of Bradley's guilty plea and the nature of the claims raised in his motion. (*See id.*)

First, Bradley's guilty plea—in which he admitted violating two conspiracy statutes—does not waive his jury rights for the two forfeiture statutes at issue here. Bradley expressly excluded the forfeiture allegations from his guilty plea. (R. 1027, Plea Hearing Tr., PageID# 4009.) Contrary to the government's suggestion, the record does not show that Bradley pled guilty with the "understanding" that he was also waiving his right to have a jury decide the issue of forfeiture. (*See* Gov't Resp. at 22.) The government notably does not provide a record citation for this claim.

---

*and Criminal Forfeiture Procedures: Which Provides More Protections for Property Owners?*, The Heritage Foundation (Jul. 30 2015), https://www.heritage.org/crime-and-justice/report/comparison-federal-civil-and-criminal-forfeiture-procedures-which-provides#_ftnref17.

(*See id.*)  Instead, Bradley consistently excluded forfeiture from his plea, and defense counsel merely opined that the forfeiture issue was made "ripe" by Bradley's plea. (R. 1027, Plea Hearing Tr., PageID# 4010.)  That statement is clearly insufficient to waive Bradley's Sixth Amendment rights.  *Cf. Libretti*, 516 U.S. at 33–34 (finding waiver where the defendant agreed to "transfer his right, title, and interest in all of his assets" to the government as part of his written plea agreement).

Second, Rule 12(c)(3) does not preclude Bradley from seeking dismissal.  The government's argument to the contrary is premised on an idea that Bradley is contesting the adequacy of the indictment.  (Gov't Resp. at 22–23.)  Rather, Bradley challenges this Court's power to impose a criminal penalty that is not factually supported by any underlying verdict, plea, or other admissions.  (*See* Motion at 6.)  Because the Court lacks the authority to order forfeiture without an admission or jury determination, Bradley asks the Court to dismiss the allegations.[3]

### C. Bradley's motion is not subject to harmless error review

Bradley's motion is before the Court for the first time in a newly remanded proceeding.  The government argues, however, that harmless error analysis should apply.  (Gov't Resp. at 23.)  But the government cites only examples of decisions

---

[3] Bradley believes the appropriate remedy is dismissal.  However, if the Court finds the Sixth Amendment applies to criminal forfeiture but does not believe dismissal is appropriate, it may wish to consider its ability to empanel a jury. Notably, the government has not requested the Court take that action.  Bradley takes no position on the permissibility of the Court empaneling a jury at this time.

12
Case 3:15-cr-00037   Document 1134   Filed 03/07/19   Page 12 of 17 PageID #: 4576

applying that standard of review on appeal. (*See id.*) The government provides no authority for the proposition that district courts should apply a deferential appellate standard of review in the first instance. (*See id.*) Here, the issue is open, and the forfeiture order was vacated. An error has not yet been committed. It would be wholly inappropriate for this Court to conclude that Bradley's Sixth Amendment rights prohibit forfeiture and nevertheless commit a deliberate error because it perceives that error to be harmless. As such, this Court should review Bradley's Sixth Amendment argument *de novo*, as instructed by the Court of Appeals. *Bradley*, 897 F.3d at 784.

## II. The Court should deny the government a money judgment

The forfeiture statutes do not authorize the imposition of personal money judgments in lieu of forfeitures of specific pieces of property. *See* 21 U.S.C. § 853; 18 U.S.C. § 982. Criminal penalties must be strictly construed. *See, e.g.*, *Honeycutt*, 137 S. Ct. at 1635 n.2; *Paroline v. United States*, 572 U.S. 434 (2014). Recently, the Supreme Court rebuked a widespread practice among lower courts of deviating from that principle in the context of criminal forfeiture. *Honeycutt*, 137 S. Ct. at 1634 ("There is no basis to read such an end run into the statute."). The Court should heed *Honeycutt*'s guidance here and deny the government a money judgment.

The government offers two responses. First, it contends Bradley waived his right to contest the money judgment by not raising the issue on his prior appeal.

(Gov't Resp. at 25.)  But the Sixth Circuit vacated this Court's "entire forfeiture order." *Bradley*, 897 F.3d at 785.  Thus, the government's reliance on *United States v. Adesida* is misplaced. 129 F.3d 846, 849–50 (6th Cir. 1997).  Here, Bradley does not challenge an existing order or judgment.  He is contesting the government's ability to obtain a new order against him.

Second, the government argues Section 853(p) authorizes a money judgment. (Gov't Resp. at 25–26.)  That section, however, states only that when a defendant has concealed or divested himself of tainted property, the government may seek forfeiture of "*any other property of the defendant*, up to value of the [unavailable] property."  21 U.S.C. § 853(p) (emphasis added).  Notably, Section 853(p) does not mention a money judgment but instead contemplates only a defendant's presently existing property.  The government instead relies on the phrase "up to the value of" to argue that the statute provides implicit authorization for a money judgment. (Gov't Resp. at 25.)  But that argument stretches the text too thin.  Given the strict construction required of criminal statutes, the Court should not read a penalty into the statute where it does not plainly exist.  *See Honeycutt*, 137 S. Ct. at 1635 n.2.

The Court must also consider the highly burdensome nature of money judgments in comparison to the traditional forfeiture penalties provided by the statute.  Money judgments hang over a defendant for life, interfering with his ability to rehabilitate himself and become a productive citizen again, and authorize the

government to confiscate any assets he later acquires—the very thing prohibited by the Excessive Fines Clause. *See Timbs v. Indiana*, _ U.S. _, No. 17-1091, 2019 U.S. LEXIS 1350, at *7–8 (Feb. 20, 2019) (citing 4 W. Blackstone, *Commentaries on the Laws of England* 372 (1769) ("[N]o man shall have a larger amercement imposed upon him, than his circumstances or personal estate will bear….").

The government's cited authority does not require this Court to hold that a money judgment is permitted. Nearly all of the cases cited by the government predate *Honeycutt*. (*See* Gov't Resp. at 26.) The two post-*Honeycutt* decisions cited by the government—*United States v. Elbeblawy*, 899 F.3d 925 (11th Cir. 2018), and *United States v. Ford*, 296 F. Supp. 3d 1251 (D. Or. 2017)—are not binding. Further, the reasoning of both *Elbeblawy* and *Ford* is unpersuasive. Both cases rely on the notion that forfeiture is an "in personam" punishment to conclude the forfeiture statutes must allow money judgments. But criminal forfeiture obviously operates as an *in personam* penalty with respect to substitute property. Bradley does not contest that fact. Instead, Bradley argues that the forfeiture statutes do not permit the government to seize future assets not presently in existence through a penal mechanism not mentioned within the statute.

## CONCLUSION

For the foregoing reasons, Bradley respectfully requests that the Court grant the pending motion, dismiss the forfeiture allegations in the indictment, and deny the government's request for a money judgment. In the alternative, if this Court does not dismiss the forfeiture allegations or empanel a jury, Bradley requests an evidentiary hearing to conduct the requisite factfinding.

Respectfully submitted,

*/s/ Melissa Salinas*
MELISSA SALINAS, Esq. (MI-P69388)
University of Michigan Law School
Federal Appellate Litigation Clinic
363 Legal Research Building
801 Monroe Street
Ann Arbor, Michigan 48109–1215
Ph: 734.763.4319
salinasm@umich.edu

DAVID B. SMITH, Esq. (VA-25930)
David B. Smith, PLLC
108 North Alfred Street
Alexandria, VA 22314
Ph: 703.548.8911
dbs@davidbsmithpllc.com

ROBERT L. PARRIS, Esq. (TN-19847)
8 South 3rd Street
Memphis, TN 38103
Ph: 901.299.1479
rlp@robertparrisattorney.com

*Counsel for Benjamin Bradley*

# CERTIFICATE OF SERVICE

I hereby certify this Reply was filed on March 7, 2019, using the Court's ECF system, which will send notice of this filing to all counsel of record indicated on the electronic receipt.

/s/ Melissa Salinas
Melissa Salinas (MI – P69388)
University of Michigan Law School
Federal Appellate Litigation Clinic
