**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:15-cr-0037-2** |
| | ) | **Judge Aleta A. Trauger** |
| | ) | |
| **BENJAMIN BRADLEY** | ) | |

**MEMORANDUM**

Before the court is Benjamin Bradley's Motion to Dismiss the Forfeiture Allegations of the Indictment and Deny the Government's Request for a Money Judgment. (Doc. No. 1125.) For the reasons set forth herein, the motion will be denied.

**I.      Procedural Background**

In March 2015, the United States filed a two-count Indictment charging eighteen members of a drug trafficking ring, including Benjamin Bradley, with conspiracy to possess with intent to distribute and conspiracy to distribute Schedule II controlled substances, in violation of 21 U.S.C. §§ 841(a)(1) and 846 (Count One), and money laundering in violation of 18 U.S.C. § 1956 (Count Two). (Doc. No. 3.) The Indictment also contained forfeiture allegations, giving notice that, upon conviction, the defendants would be jointly and severally responsible for forfeiting to the United States any "property constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of" the conspiracy to distribute drugs, "including but not limited to a money judgment in an amount to be determined, representing the gross drug proceeds obtained as a result of such offense," and "any property used, or intended to be used,

. . . to commit, or to facilitate the commission of, such violation," pursuant to 21 U.S.C. § 853(a)(1) and (2). (Doc. No. 3, at 5.) The Indictment further provided for the forfeiture of any real or personal property involved in the conspiracy to commit money laundering, "including but not limited to the proceeds of the violation and including but not limited to a money judgment in an amount to be determined" (Doc. No. 3, at 7), and for the forfeiture of substitute property in accordance with 21 U.S.C. § 853(p).

Bradley pleaded guilty to both counts. (Doc. No. 478.) The court sentenced him to serve seventeen years in prison and, after additional briefing, also ordered him to forfeit currency seized by police, several parcels of real property that he had used in the conspiracy, and up to a million dollars in cash (offset by the value of funds and property seized), on the grounds that Bradley obtained the real property with tainted funds or used it to facilitate his crimes, *see* 21 U.S.C. § 853(d), and that the gross proceeds of the drug-distribution and money-laundering schemes reached at least a million dollars, *see id.* § 853(a). The forfeiture order applied the million-dollar judgment jointly and severally to Bradley and "any other co-conspirator against whom a similar money judgment is taken." (Doc. No. 1005, at 1.) During the initial forfeiture proceedings, Bradley objected only to the forfeiture of one parcel of real property on which was located the house where his wife and minor children resided. He did not object to the money judgment or to joint and several liability.

Bradley appealed both the sentence and the order of forfeiture, raising, for the first time, an objection to joint and several liability based on the Supreme Court's decision in *Honeycutt v. United States*, 137 S. Ct. 1626 (2017). That decision, which was issued approximately two weeks before this court's forfeiture order, clarified that 21 U.S.C. § 853 bars joint and several liability for forfeiture judgments. *Id.* at 1632. In reviewing the appeal, the Sixth Circuit affirmed the

prison sentence but vacated the forfeiture order in its entirety in light of *Honeycutt. United States v. Bradley*, 897 F.3d 779, 784 (6th Cir. 2018).[1]

Following issuance of the Mandate, this court conducted a status conference to permit the parties to discuss how to proceed following remand. There, the parties indicated both that they were having discussions about the possibility of resolving the forfeiture issue by a agreement and that the defendant intended to file a motion to dismiss the forfeiture allegations. (Doc. No. 1123.)

In accordance with the briefing schedule to which the parties agreed during the status conference, the defendant filed his present Motion to Dismiss the Forfeiture Allegations, along with a supporting Memorandum of Law. (Doc. No. 1125.) The government has filed its Response in Opposition to the Motion (Doc. No. 1128), and the defendant, with the court's permission, filed a Reply (Doc. No. 1134). The court has benefited substantially from the thorough and excellent briefing on the issues, for which both parties are commended.

## II. The Parties' Positions

In his motion, Bradley asks the court to dismiss the forfeiture allegations set forth in the Indictment altogether and to deny the government's request for a money judgment. (Doc. No. 1125, at 1.) In support of his motion, he makes two broad arguments: (1) that the Sixth Amendment bars the courts—as opposed to juries—from making factual findings to support criminal forfeiture; and (2) that a money judgment is not actually authorized by the forfeiture statute.

---

[1] All co-defendants have now pleaded guilty and been sentenced, and none received a forfeiture money judgment of any kind. In effect, therefore, rather than actually imposing joint and several liability, the forfeiture order made Bradley solely liable for all gross proceeds of the criminal scheme. Such liability would also run afoul of *Honeycutt*, which, in accordance with the language of the statute, authorizes forfeiture only of property or proceeds the defendant actually "'obtained, directly or indirectly, as the result of' certain drug crimes." *Honeycutt*, 137 S. Ct. at 1630 (quoting 21 U.S.C. § 853(a)(1)).

In *Southern Union Co. v. United States*, 567 U.S. 343 (2012), the Supreme Court extended the rule established by *Apprendi v. New Jersey*, 530 U.S. 466 (2000), to hold that the courts are prohibited by Sixth Amendment considerations from imposing a criminal fine based on facts not contained in the jury's verdict or admitted by the defendant. Bradley asks this court to apply *Southern Union* to hold that the Sixth Amendment likewise bars forfeiture money judgments based on facts not contained in the jury's verdict or admitted by the defendant.

An apparently insurmountable barrier lies between this court and such a holding, however. In *Libretti v. United States*, 516 U.S. 29, 49 (1995), the Supreme Court held that "the right to a jury verdict on forfeitability does not fall within the Sixth Amendment's constitutional protection." Bradley attempts to circumvent that obstacle by arguing that *Libretti* has been misconstrued by every court that has considered it. He maintains that the quoted statement from *Libretti* is mere dictum and not part of, or necessary to, the Court's actual holding and, as dictum, is not binding on the lower courts. Thus, the argument proceeds, this court is free to apply *Southern Union* to this case.

In support of his contention that criminal forfeiture falls within the scope of *Apprendi*, Bradley argues that forfeiture is a mandatory criminal penalty rather than an "indeterminate and open-ended" scheme and, as such, that it falls within the scope of *Apprendi* and its progeny. Finally, Bradley contends that the historical record establishes that juries, for most of American history, decided forfeiture issues and that this remained the practice in the United States until 2000, when former Rule 31(e) of the Federal Rules of Civil Procedure was repealed and replaced by current Rule 32.2, which severely limits a defendant's right to a jury on the issue of forfeiture.

In the alternative to his constitutional argument, Bradley insists that the language of the forfeiture statute itself, 21 U.S.C. § 853, does not authorize money judgments; those courts

holding otherwise over the past two decades are simply wrong; and the "plain language" of *Honeycutt* "undercuts" prior decisions allowing money judgments. (Doc. No. 1125, at 21.) He points out that a number of district courts have held that money judgments are not authorized by the statutes. He concedes that each of those opinions has been reversed on appeal, but, he says, the appellate decisions offer "no persuasive reason" for their reversals. (*Id.* at 23.)

In response to the defendant's Sixth Amendment argument, the government asserts that (1) the Supreme Court's statement in *Libretti* that "the right to a jury verdict on forfeitability does not fall within the Sixth Circuit's constitutional protection," 516 U.S. at 48–49, was not dictum but part of the holding and that binding Sixth Circuit precedent has construed *Libretti* thus; (2) even if *Libretti* were not dispositive of the issue, the Sixth Circuit has also held that the Sixth Amendment right to a jury trial does not extend to criminal forfeiture; (3) the Supreme Court's holding in *Southern Union* is not a contrary decision that requires modification of the prior Sixth Circuit holdings; (4) every circuit court of appeals to consider the issue has reached the same conclusion: that the Sixth Amendment right to a jury does not extend to forfeiture; (5) even if the court were to conclude that forfeiture statutes fall within the rule of *Apprendi*, the court would have to consider the history of criminal forfeiture to show that the right to a jury trial applies in this context, and the defendant is simply incorrect in stating that history supports his position; and (6) extending *Apprendi* to criminal forfeiture would pose serious practical problems in the administration of criminal justice. Finally, the government argues that, even if the Sixth Amendment applied in this context, Bradley waived his right to a jury trial on this issue, and, even if the issue were adequately preserved, dismissal is not the appropriate remedy in this case.

Regarding the statutory argument, the government maintains that the defendant waived the issue by not raising it previously, such that it is not part of the remand. The government also

contends that, regardless of waiver, every court to consider the question has held that the applicable forfeiture statute, 21 U.S.C. § 853(p), authorizes forfeiture money judgments; Rule 32.2 reflects the same understanding; and *Honeycutt* does not change the analysis.

## III. Discussion

In vacating the court's forfeiture order in its entirety—not merely the money judgment aspect of it—and remanding, the Sixth Circuit made it clear that the parties would begin again with a clean slate:

> [The question of whether the Sixth Circuit prohibits the imposition of criminal forfeiture absent a supporting admission or jury verdict] is an unanswered question in this circuit. It prompts these questions: Does the Supreme Court's extension of *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2012), to fines in *Southern Union Co. v. United States*, 567 U.S. 343, 350 (2012), apply to criminal forfeitures? Is the Court's statement in *Libretti v. United States*, 516 U.S. 29, 48–49 (1995), that the Sixth Amendment does not provide a right to a jury trial over criminal forfeiture necessary to the disposition of that case? Do any of our precedents bear on the question? What do historical practices tell us about the original understanding of the judge's and jury's factfinding roles in criminal forfeiture proceedings? The parties may wish to address these questions on remand.

*United States v. Bradley*, 897 F.3d 779, 784 (6th Cir. 2018). In other words, the Sixth Circuit strongly suggested that this court's review is plenary, and the defendant has not waived review of any argument.

The government also appears to believe that the court's order of forfeiture of property and specific assets is unaffected by the remand and that only the question of the money judgment is at issue. Although the defendant's arguments primarily concern the money judgment, the Sixth Circuit vacated the entirety of the forfeiture order, thus putting every aspect of it back on the table.

### A. The Defendant's Constitutional Argument

The Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the

right to a speedy and public trial, by an impartial jury . . . ." This right, in conjunction with the Due Process Clause, requires that each element of a crime be proved to a jury beyond a reasonable doubt. *Alleyne v. United States*, 570 U.S. 99, 104 (2013). At the time *Libretti* was issued, the Supreme Court drew a distinction between elements of a criminal offense and mere sentencing factors. The former required a jury's determination; the latter did not:

> [The petitioner] would have us equate this statutory right to a jury determination of forfeitability with the familiar Sixth Amendment right to a jury determination of guilt or innocence. . . . Our cases have made abundantly clear that a defendant does not enjoy a constitutional right to a jury determination as to the appropriate sentence to be imposed.

*Libretti*, 516 U.S. at 48–49.

Fast forward a mere five years, and the landscape changed dramatically. In *Apprendi*, the Court held that any fact that "expose[s] the defendant to a greater punishment than that authorized by the jury's guilty verdict" is an "element" that must be submitted to a jury. 530 U.S. at 494. And in the years following *Apprendi*, the Supreme Court has extended that rule to the context of plea bargains, *Blakely v. Washington*, 542 U.S. 296 (2004); sentencing guidelines, *United States v. Booker*, 543 U.S. 220 (2005); criminal fines, *S. Union*, 567 U.S. at 350; mandatory minimums, *Alleyne*, 570 U.S. at 117; and capital punishment, *Hurst v. Florida*, 136 S. Ct. 616, 621 (2016); *Ring v. Arizona*, 536 U.S. 584, 589 (2002).

The Supreme Court has never expressly held that criminal forfeiture is a sentencing element that must be submitted to a jury. To the contrary, in fact. In *Libretti*, the Court addressed the defendant's challenge to "the adequacy of his waiver of a jury determination as to the forfeitability of his property under Federal Rule of Criminal Procedure 31(e)."[2] *Libretti*, 516 U.S. at 48. Libretti argued that this right had "both a constitutional and a statutory foundation, and

---

[2] Rule 31(e) was repealed and replaced by Rule 32.2 in 2000.

cannot be waived absent specific advice from the district court as to the nature and scope of his right and an express, written agreement to forgo the jury determination on forfeitability." *Id.* The Court rejected his argument, expressly finding that the jury right in that context was purely statutory rather than constitutional in origin:

> Federal Rule of Criminal Procedure 31(e) provides that, "[i]f the indictment or the information alleges that an interest or property is subject to criminal forfeiture, a special verdict shall be returned as to the extent of the interest or property subject to forfeiture, if any." Libretti would have us equate this statutory right to a jury determination of forfeitability with the familiar Sixth Amendment right to a jury determination of guilt or innocence. Without disparaging the importance of the right provided by Rule 31(e), our analysis of the nature of criminal forfeiture as an aspect of sentencing compels the conclusion that *the right to a jury verdict on forfeitability does not fall within the Sixth Amendment's constitutional protection*.

*Libretti*, 516 U.S. at 48–49 (emphasis added). As a direct result of that conclusion, the Court ultimately found that the procedures accompanying the waiver in that case were sufficient. *See id.* at 49 ("*Given that the right to a jury determination of forfeitability is merely statutory in origin*, we do not accept Libretti's suggestion that the plea agreement must make specific reference to Rule 31(e). Nor must the district court specifically advise a defendant that a plea of guilty will result in waiver of the Rule 31(e) right." (emphasis added)).

The defendant now argues that the *Libretti* Court's statement that criminal forfeiture does not implicate the Sixth Amendment right to a jury was mere dictum, neither necessary to the Court's holding nor binding on subsequent courts. The court disagrees. As the passage quoted above demonstrates, *Libretti*'s conclusion that the Sixth Amendment does not require forfeiture issues to be resolved by a jury was a holding by the Court and not mere dictum. In addition, and contrary to the defendant's assertion, Justice Souter's separate concurrence further substantiates that conclusion. There, Justice Souter stated that he "would not reach the question of a Sixth Amendment right to trial by jury on the scope of forfeiture," 516 U.S. at 52 (Souter, J.,

concurring in part and concurring in the judgment), thus signaling his understanding that the majority of the Court had indeed reached that question.[3]

Every circuit court to consider this issue agrees that the Supreme Court decided this question as part of its holding in *Libretti*. For instance, the Ninth Circuit, in rejecting the same argument as that presented here, characterized *Libretti* as "clear[ly] and dispositive[ly] holding" that "there is no constitutional 'right to a jury verdict on forfeitability' in a criminal forfeiture proceeding." *United States v. Phillips*, 704 F.3d 754, 769 (9th Cir. 2012) (quoting *Libretti*, 516 U.S. at 49); *accord United States v. Day*, 700 F.3d 713, 733 (4th Cir. 2012) ("[T]he Supreme Court has expressly held that 'the right to a jury verdict on forfeitability does not fall within the Sixth Amendment's constitutional protection.'" (quoting *Libretti*, 516 U.S. at 49)). The Sixth Circuit has agreed. *See, e.g.*, *United States v. Hall*, 411 F.3d 651 (6th Cir. 2005) ("*Apprendi* did not affect *Libretti*'s holding that criminal forfeitures are part of the sentence alone and as such [t]here is no requirement under *Apprendi* . . . that the jury pass upon the extent of a forfeiture." (internal quotation marks and citation omitted)).

To be sure, the foundation upon which *Libretti* rests has become shaky, as it is no longer true that sentencing never implicates Sixth Amendment rights. Nonetheless, "[b]ecause *Libretti* has direct application in this case, we are bound by its holding even if it might appear 'to rest on reasons rejected in some other line of decisions.'" *United States v. Fruchter*, 411 F.3d 377, 380 (2d Cir. 2005) (quoting *Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 484 (1989)); *accord United States v. Leahy*, 438 F.3d 328, 332 (3d Cir. 2006) ("The *Leahy* defendants contend that *Libretti* has been undercut by *Blakely* and *Booker* to such an extent that its precedential value has been eroded. Even assuming that to be true, we nonetheless note that as

---

[3] Justice Souter joined in Parts I and II, but not Part III, in which the Court addressed the Sixth Amendment issue. Part III was joined by a majority of the Court, however.

a Court of Appeals, we are not free to ignore the Supreme Court's holding in *Libretti*, nor do we possess the authority to declare that the Supreme Court has implicitly overruled one of its own decisions.").

The circuit court opinions cited above predate *Southern Union*. However, regardless of whether, as Bradley argues, *Southern Union* strongly implies that criminal forfeiture falls within the ambit of the Sixth Amendment, the law is clear that only the Supreme Court can overturn a previous Supreme Court decision, and it typically does not reverse itself by implication. *See Bosse v. Oklahoma*, 137 S. Ct. 1, 2 (2016) (explaining that Supreme Court decisions "remain binding precedent until we see fit to reconsider them, regardless of whether subsequent cases have raised doubts about their continuing vitality" (internal quotation marks omitted)). Thus, every circuit court that has considered the contention has held that *Southern Union* did not overrule *Libretti*. *See, e.g.*, *United States v. Miller*, 645 F. App'x 211, 225 n.84 (3d Cir. 2016) ("In *Southern Union*, the Supreme Court applied *Apprendi* to the imposition of criminal fines, thereby requiring a jury determination before fines can be imposed. The Appellants urge us to view *Libretti* as effectively overruled, and ask us to now require a jury determination in the context of criminal forfeitures, just as *Southern Union* required it for criminal fines. This, we cannot do. *Libretti* has not been overruled, and we are obligated to follow its clear holding that 'the right to a jury verdict on forfeitability does not fall within the Sixth Amendment's constitutional protection.'" (quoting *Libretti*, 516 U.S. at 49)); *United States v. Sigillito*, 759 F.3d 913, 935 (8th Cir. 2014) (rejecting the defendant's argument that *Southern Union* and *Alleyne* implicitly overruled *Libretti*, stating: "[W]e are compelled to apply *Libretti* and its determination that the Sixth Amendment does not require a jury verdict on criminal forfeitures. . . . [T]he Supreme Court does not normally overturn, or so dramatically limit, earlier authority *sub*

*silentio*." (citation omitted)); *Day*, 700 F.3d at 733 ("We do not think the Supreme Court intended to overrule [*Libretti*], *sub silentio*, in *Southern Union*. We therefore hold that the rule of *Apprendi* does not apply to a sentence of forfeiture."); *Phillips*, 704 F.3d at 770 ("[E]very Circuit to consider the question has found that *Apprendi* and its progeny did not alter the rule in *Libretti*, and *Southern Union* does not change that determination.").

In short, regardless of the allure of the defendant's position or this court's personal feelings on the matter, this court is bound by Supreme Court precedent to conclude that criminal forfeiture penalties are not within the scope of the Sixth Amendment. The Supreme Court, if called upon to do so, may reconsider its holding in *Libretti* and extend *Southern Union*'s holding to criminal forfeiture, but, until that time, this court's hands are tied.

### B.  The Statutory Authority for Money Judgment Forfeiture Awards

The defendant argues, in the alternative, that a money judgment is not authorized by the forfeiture statute. He argues that, like joint and several liability, which the Supreme Court invalidated in *Honeycutt*, money judgments represent an improper judicial expansion of the scope of an already harsh criminal statute that simply makes it easier for the government to confiscate the property of individuals convicted of a crime and to keep them in perpetual debt to the government, even following the service of any prison sentence.

Bradley's argument is premised primarily upon the fact that money judgments are not expressly authorized by § 853(p). Instead, money judgments are an invention by the courts, whose only justification for permitting them is that they are not expressly forbidden by the statute. *See, e.g.*, *United States v. Hampton*, 732 F.3d 687, 691–92 (6th Cir. 2013). According to Bradley, that is no longer good enough under *Honeycutt*, which reestablished that criminal statutes, including those authorizing forfeiture, are to be construed strictly and narrowly.

However compelling Bradley's argument may be, this court is again bound by precedent to reject it. First, as set forth below, the Sixth Circuit has expressly held that § 853 authorizes money judgments. Second, that authority was not overruled, expressly or otherwise, by *Honeycutt*.

### 1.     The Sixth Circuit's Application of Section 853

Under 21 U.S.C. § 853(a), any person convicted of a drug-related felony "shall forfeit to the United States . . . any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of such violation [and] any of the person's property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violation."

Section 853 also provides for the forfeiture of "substitute" property:

[I]f any property described in subsection (a), as a result of any act or omission of the defendant—

(A) cannot be located upon the exercise of due diligence;

(B) has been transferred or sold to, or deposited with, a third party;

(C) has been placed beyond the jurisdiction of the court;

(D) has been substantially diminished in value; or

(E) has been commingled with other property which cannot be divided without difficulty . . .

[then] the court shall order the forfeiture of any other property of the defendant, up to the value of any property described in subparagraphs (A) through (E) . . . as applicable.

*Id.* § 853(p).

To be entitled to forfeiture, the government must prove by a preponderance of the evidence that a nexus exists between the property at issue and the criminal offense. *See* Fed. R.

Crim. P. 32.2(b)(1)(A); *United States v. Jones*, 502 F.3d 388, 391–92 (6th Cir. 2007). "The court's determination may be based on evidence already in the record, including any written plea agreement, and on any additional evidence or information submitted by the parties and accepted by the court as relevant and reliable." Fed. R. Crim. P. 32.2(b)(1)(B).

The pertinent statutory text does not explicitly authorize forfeiture money judgments. *See* 21 U.S.C. § 853(b) (defining the term "property" as either (1) "real property, including things growing on, affixed to, and found in land" or (2) "tangible and intangible personal property, including rights, privileges, interests, claims, and securities"). Nonetheless, "a majority of circuits . . . has coalesced around the view that money judgments are permissible under section 853." *United States v. Young*, 330 F. Supp. 3d 424, 429–30 (D.D.C. 2018) (citations omitted). The Sixth Circuit is very clearly among these. *See, e.g.*, *United States v. Harrison*, No. 18-5176, 2018 WL 7435869, at *1–2 (6th Cir. Oct. 15, 2018) ("Where the government is unable to recover the actual property that is subject to forfeiture, the government can seek a money judgment against the defendant for an amount equal to the value of the property that constitutes the proceeds of the drug violation." (quoting *United States v. Bevelle*, 437 F. App'x 399, 407 (6th Cir. 2011) (citing 21 U.S.C. § 853(p))); *United States v. Hampton*, 732 F.3d 687, 691 (6th Cir. 2013) (citations omitted).

In *Hampton*, the defendant specifically claimed on appeal that the "district court was without authority to enter a forfeiture money judgment against a defendant who had no assets at the time of sentencing." 732 F.3d at 689. The Sixth Circuit recognized that the "forfeiture statutes at issue, including those incorporated from 21 U.S.C. § 853, do not expressly authorize personal money judgments as a form of forfeiture." *Hampton*, 732 F.3d at 692. Observing that "nothing suggests that money judgments are forbidden" and following the "unanimous and

growing consensus among the circuits," the court nonetheless held unequivocally that "in personam money judgments are authorized by the criminal forfeiture statutes." *Id.* (citations omitted). The court found this conclusion to be bolstered by the rule "distinguish[ing] forfeiture of specific assets from a forfeiture money judgment." *Id.* (citing Fed. R. Crim. P. 32.2(b)(1)(A) ("If the government seeks a personal money judgment, the court must determine the amount of money that the defendant will be ordered to pay.")).

The argument raised in *Hampton* is virtually indistinguishable from that presented here, and this court is bound by the holding in *Hampton* to conclude that the forfeiture statute permits money judgments. *See Hall v. Eichenlaub*, 559 F. Supp. 2d 777 (E.D. Mich. 2008) ("Absent a clear directive from the Supreme Court or a decision of the Court of Appeals sitting *en banc*, a panel of the Court of Appeals, or for that matter, a district court, is not at liberty to reverse the circuit's precedent." (citing *Brown v. Cassens Transp. Co.*, 492 F.3d 640, 646 (6th Cir. 2007)).

### 2. The Scope of **Honeycutt**

If an intervening decision of the Supreme Court directly reverses an opinion of the Sixth Circuit or implicitly reverses it through a case with indistinguishable facts, the district court would have an obligation to follow the intervening Supreme Court decision. *United States v. Wehunt*, 230 F. Supp. 3d 838, 846, (E.D. Tenn. 2017) (citing *In re Higgins*, 159 B.R. 212, 215–16 (S.D. Ohio 1993)). However, if the intervening decision neither expressly nor implicitly overrules the prior Sixth Circuit decision, this court must "be extremely careful in concluding that circuit precedent is no longer good law." *Id.* (citation omitted). A lower court should only deviate from clear circuit precedent if it is "powerfully convinced that the circuit will overrule itself at the next available opportunity." *Id.* That is, "*sub silentio* overruling of a Court of Appeals decision by a Supreme Court case resting on different facts is a rare occurrence," and

thus requires strong, objective evidence that the "higher court would repudiate [its holding] if given a chance to do so." *Id.* (citation omitted).

*Honeycutt* did not expressly overrule *Hampton*, nor does the defendant even argue that it implicitly overruled it. Instead, he argues that *Honeycutt* "undercuts" those prior decisions authorizing money judgments:

> Money judgments contradict *Honeycutt*'s teachings. *Honeycutt* strictly construed the 'procedural' provisions of 21 U.S.C. § 853. . . . Section 853(a) and (p) refer exclusively to forfeiture of "property" of the defendant, as defined in § 853(b). Subsection (b) encompasses all forms of real and personal property, tangible and intangible, but says nothing about the entry of a general "money judgment" against the defendant . . . .
>
> Honeycutt said forfeiture is "limit[ed] to" specific categories of property described in the statute. 137 S. Ct. at 1632. "These provisions, by their terms, limit forfeiture under § 853 to tainted property . . . ." *Id.*

(Doc. No. 1125, at 24.)

After carefully reviewing *Honeycutt*, the court is not persuaded that the Sixth Circuit would interpret it as invalidating *Hampton*. The holding in *Honeycutt* simply was not as broad as the defendant posits and has no application to the present case—beyond its invalidation of a joint and several forfeiture judgment. The issue in *Honeycutt* was just that—whether § 853 supported the imposition of joint and several liability for forfeiture purposes. *Honeycutt* does not espouse a broad rule barring *in personam* money judgments or require that a defendant still be in possession of his ill-gotten proceeds in order for the government to obtain a forfeiture judgment. *Honeycutt* simply cannot be construed as negating the by-now universally recognized rule among the federal courts of appeals permitting *in personam* money judgments against criminal defendants. *Accord United States v. Ford*, 296 F. Supp. 3d 1251, 1258 (D. Or. 2017) (rejecting identical argument based on *Honeycutt*).

Based on binding Sixth Circuit precedent that has not been expressly or implicitly

overruled by the Supreme Court, this court finds that money judgments are authorized by § 853.

**IV.     Conclusion**

The court is compelled by precedent to deny the defendant's Motion to Dismiss the Forfeiture Allegations. An appropriate order is filed herewith.

The court will enter a separate order scheduling an evidentiary hearing to adjudicate the appropriate amount of the money judgment to be issued. The parties will not be required to present evidence regarding forfeiture of the currency and the real property identified in the original forfeiture order, as the defendant did not expressly appeal the court's findings of fact regarding those items, nor were the factual findings affected by *Honeycutt*.

ALETA A. TRAUGER
United States District Judge