UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 3:15-cr-00037-2 |
| | ) | |
| BENJAMIN BRADLEY, | ) | Judge Trauger |
| | ) | |
| Defendant. | ) | |

**RESPONSE IN OPPOSITION TO MOTION TO STAY**

On August 20, 2019, the Court issued a memorandum and order granting the government's motions for forfeiture. (DE# 1202, Mem. Granting Forfeiture; DE# 1203, Forfeiture Order.) Defendant Benjamin Bradley has now filed a motion seeking to stay that forfeiture order pending appeal. (DE# 1211, Motion.) The government respectfully submits this response in opposition.[1]

**Discussion**

Where, as here, a defendant appeals from an order of forfeiture, "the court may stay the order of forfeiture on terms appropriate to ensure that the property remains available pending appellate review." Fed. R. Crim. P. 32.2(d). In general, a stay pending appeal "'is not a matter of right,' but is rather 'an exercise of judicial discretion' that requires examining 'the circumstances of the particular case.'" *Ohio State Conference of N.A.A.C.P. v. Husted*, 769 F.3d 385, 387 (6th Cir. 2014) (quoting *Nken v. Holder*, 556 U.S. 418, 433 (2009) (further internal quotations omitted)). "'The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion.'" *Id.* (quoting *Nken*, 556 U.S. at 433-34).

---

[1] The Court is familiar with the background of this case, and set out the details of the forfeiture proceedings in its August 20, 2019 memorandum. (DE#1202, Mem. Granting Forfeiture, PageID#: 4925-31.) As such, the government will proceed directly to a discussion of the merits of the stay application.

"The law governing when a district court should exercise its discretion to stay a forfeiture order has not been extensively developed." *United States v. Silver*, 2018 WL 4440496, at *10 (S.D.N.Y. Sep. 17, 2018) (quotations omitted). In other contexts involving a motion for a stay pending appeal, the Sixth Circuit considers four factors: "'whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether the issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.'" *Husted*, 769 F.3d at 387 (quoting *Nken*, 556 U.S. at 434).

As Bradley notes, some district courts have adopted a slightly different four-factor test in the specific context of motions to stay forfeiture orders. (DE# 1211, Motion, PageID#: 5033-34.) Those courts generally consider the following factors: "(1) the likelihood of success on appeal; (2) whether the forfeited asset is likely to depreciate over time; (3) the forfeited asset's intrinsic value to defendant (i.e., the availability of substitutes); and (4) the expense of maintaining the forfeited property." *United States v. Peters*, 784 F. Supp. 2d 234, 235 (W.D.N.Y. 2011).

The government will assume arguendo that this latter four-factor test of *Peters* (rather than the more general four-factor test of *Husted* and *Nken*) applies here. Even under the *Peters* test, however, Bradley is not entitled to a stay.

First and foremost, Bradley has not shown a likelihood of success on appeal. Bradley identifies three issues on which he believes he is reasonably likely to succeed: (1) "whether the Sixth Amendment requires a jury finding to support a criminal forfeiture order"; (2) "whether 21 U.S.C. § 853 authorizes money judgments"; and (3) whether "'proceeds' as used in § 853(a) should be interpreted as *gross* rather than *net* proceeds." (DE# 1211, Motion, PageID#: 5034.) None of those issues presents a reasonable likelihood that the forfeiture order will be reversed.

2

As this Court has previously found, the first issue is controlled by Supreme Court precedent, in *Libretti v. United States*, 516 U.S. 29, 49 (1995). (*See* DE# 1154, Mem. Denying Motion to Dismiss, PageID#: 4611; DE# 1202, Mem. Granting Forfeiture, PageID#: 4929.) Supreme Court precedent is, of course, equally binding on the Sixth Circuit, thus foreclosing the possibility that Bradley's Sixth Amendment challenge will result in reversal in the Court of Appeals. (Although the Supreme Court could always choose to grant certiorari and overrule its prior precedent, that remote possibility cannot form a basis for a stay, as it would be true in every case.)

The second issue, regarding the availability of money judgments, fares no better. As this Court previously noted, "the Sixth Circuit has expressly held that § 853 authorizes money judgments." (DE# 1154, Mem. Denying Motion to Dismiss, PageID#: 4619-21 (citing, *inter alia*, *United States v. Hampton*, 732 F.3d 687, 691 (6th Cir. 2013).) This rule is uniform among the circuits. (*See* DE# 1128, Govt. Response, PageID#: 4549 (collecting cases).) Indeed, as Bradley previously acknowledged, the only cases in which courts have found money judgments to be unavailable under the statute were later reversed or disavowed on appeal. Moreover, it is highly unlikely that the Sixth Circuit will find that the Supreme Court's decision in *Honeycutt v. United States*, 137 S. Ct. 1626 (2017), requires modification of that binding rule. *See United States v. Elbeblawy*, 899 F.3d 925, 941 (11th Cir. 2018) ("[F]ar from *sub silentio* abolishing *in personam* judgments against conspirators, the [*Honeycutt*] Court presumed the continued existence of *in personam* proceedings when it stated that [§ 853] 'adopt[ed] an *in personam* aspect to criminal forfeiture.'" (quoting *Honeycutt*, 137 S. Ct. at 1635); *see also United States v. Ford*, 296 F. Supp. 3d 1251, 1256-58 (D. Or. 2017) (addressing the same argument at length and concluding, "[i]n sum, *Honeycutt* did not overrule the universally recognized rule among the federal courts of

3

appeals permitting *in personam* money judgments against criminal defendants"). Given the existence of binding Sixth Circuit precedent, the uniformity among the circuits, and the unlikelihood that the Court will read *Honeycutt* to require modification of the settled rule, Bradley has not shown a reasonable likelihood that the second issue will result in reversal.

The third issue, regarding the meaning of "proceedings," perhaps presents a slightly closer legal question, but ultimately one with no likelihood of resulting in reversal. As the Court found, a forfeiture money judgment of $1,000,000 would still be appropriate *even if* the Court were to interpret proceeds to mean "net profits" rather than "gross proceeds." (DE# 1202, Mem. Granting Forfeiture, PageID#: 4944 n.8.)

In sum, Bradley has not identified any issue that has a reasonable likelihood of resulting in reversal of the forfeiture order. That conclusion largely obviates any analysis of the other factors, since "the movant is always required to demonstrate more than the mere 'possibility' of success on the merits" in order to obtain a stay. *See Mich. Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991). "For example, even if a movant demonstrates irreparable harm that decidedly outweighs any potential harm to the [opposing party] if a stay is granted, he is still required to show, at a minimum, serious questions going to the merits." *Id.* at 153-544 (internal quotations omitted). Because Bradley has not done so here, his motion for a stay should be denied.

Even if the other three *Peters* factors were considered, they would not be sufficient to award a stay here. Although Bradley asserts that his family has adequately maintained the property on Harmony Lane, tax records show that they have failed to pay property taxes for the last several years. (*See* Ex. A, DeSantis Aff. (and supporting documentation).) According to the Wayne County Treasurer's Office, Hawkins (as the listed taxpayer) is now more than $23,000 in arrears.

4

(*Id.*) Moreover, under Michigan law, it is likely that the County may begin foreclosure proceedings soon, since Hawkins has not paid taxes for several years. (*Id.*)

To be sure, the order of forfeiture, combined with the previously recorded *lis pendens*, *should* prevent the county from selling it. But that is hardly guaranteed in practice, given that Hawkins has shown herself willing to engage in questionable transactions. The deed to Harmony Lane was quitclaimed to her under highly suspicious circumstances. (DE# 1202, Mem. Granting Forfeiture, PageID#: 4950-51.) And she previously listed the Harmony Lane property for sale, despite knowing that it was subject to forfeiture. Thus, it is entirely possible that the properties could be sold off, perhaps in an unofficial or off-the-books transaction, during the pendency of the appeal. Relatedly, the fact that Hawkins herself has sought to sell the Harmony Lane property undercuts any claim that it has intrinsic value, or that its sale would cause her and her children irreparable harm.

Finally, even if there were no concerns that any of the properties would be sold during the pendency of the appeal, that fact would still not eliminate the possibility of prejudice to the government. Property taxes, plus interest and fees, will continue to accrue during the appeal. The properties could also easily decline in value, such that the net equity would no longer be sufficient to make them worth forfeiting, as indeed happened with one of the properties for which forfeiture was originally granted. (*Id.* at PageID#: 4930.) Or the properties could be damaged or destroyed. (The government does not know whether Bradley and Hawkins maintain insurance on each of the relevant properties.) Under any of these circumstances, a further stay of the order would pose a real threat to the government's ability to collect the duly authorized forfeiture to which it is entitled.

## Conclusion

In sum, when the low likelihood of success on appeal is combined with the real possibility of prejudice to the government if a stay is granted, the government respectfully requests that Bradley's motion for a stay be denied.

Respectfully submitted,

DONALD Q. COCHRAN
United States Attorney for the
Middle District of Tennessee

*s/ Cecil W. VanDevender*
Cecil W. VanDevender
Assistant United States Attorney
110 9th Avenue South, Suite A-961
Nashville, Tennessee 37203
615-736-5151

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 3, 2019, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the attorneys of record for defendant Benjamin Bradley.

*s/ Cecil VanDevender*
CECIL VANDEVENDER

6

Case 3:15-cr-00037   Document 1213   Filed 10/03/19   Page 6 of 6 PageID #: 5052