# EXHIBIT A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

L‌ANEL L‌OYD,

    Petitioner,

v.

UNITED STATES OF AMERICA,

    Respondent.

_____/

Criminal Case No. 15-20394-1

SENIOR U.S. DISTRICT JUDGE
ARTHUR J. TARNOW

U.S. MAGISTRATE JUDGE
R. STEVEN WHALEN

**ORDER GRANTING PETITIONER'S MOTION FOR COMPASSIONATE RELEASE [208]**

    Before the Court is Lanel Loyd's petition for compassionate release from prison due to his medical conditions, which places him at a higher risk of death or serious illness from COVID-19. On May 14, 2020, Loyd and the Government filed concurrent supplemental briefs [211] [212]. On May 18, 2020, the parties filed concurrent responses [213] [214]. The Court held oral argument on May 20, 2020. For the reasons stated below and on the record, the Court **GRANTS** Petitioner's motion.

## FACTUAL BACKGROUND

On February 1, 2018, Loyd pled guilty to Conspiracy to Possess With Intent to Distribute Controlled Substances in violation of 21 U.S.C. § 841(a)(1), 846. (ECF No. 46, PageID. 149). As this was Loyd's first federal felony conviction, he had a criminal history score of one at the time of sentencing. PreSentence Investigation Report ¶ 41; U.S.S.G. Ch. 5, Pt. A. On March 15, 2017, the Court sentenced Mr. Loyd to a mandatory minimum of 120 months (10 years) of imprisonment for Conspiracy to Possess with Intent to Distribute Controlled Substances (Heroin), violation of 21 U.S.C. §§ 841(b)(1)(A), 841(a)(1), and 846. (ECF No. 208). Mr. Loyd's projected release date is November 6, 2025. (ECF No. 211-2).

Mr. Loyd is incarcerated at Federal Correctional Institution Loretto in Pennsylvania. In April, 2020, the Bureau of Prisons ("BOP") officials at his prison told him that he was deemed an appropriate candidate for Home Confinement and encouraged him to apply. (ECF No. 211-2). After his family began to prepare for his release, they were later told by the BOP that, under a new guideline that required an inmate to serve at least 50% of his sentence before being place in home confinement, Loyd was no longer eligible. (ECF No. 211, PageID. 1394). Soon after, on May 7, 2020, Mr. Loyd's family sent a Letter [208] to the Court asking for his compassionate release due to his health condition that puts him at risk of serious

illness from COVID-19. After appointing counsel, the Court ordered briefing on Loyd's motion. (ECF No. 209).

## ANALYSIS

The compassionate release statute states the following in relevant part.

> **(A)** the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> > **(i)** extraordinary and compelling reasons warrant such a reduction.

18 U.S.C.A. § 3582.

There is no dispute that Loyd has exhausted his administrative remedies. The Court thus has three questions to answer: first, whether extraordinary and compelling reasons warrant a reduction in sentence, second, whether Defendant poses a danger to the community, and third, whether a sentence reduction is consistent with the § 3553(a) factors. *United States v. Amarrah*, No. 17-20464, 2020 WL 2220008, at *4 (E.D. Mich. May 7, 2020).

1. Extraordinary and Compelling Reasons for Release

In order to determine if extraordinary and compelling reasons exist to release Loyd, the Court must determine if a sentence reduction is "consistent with applicable policy statements issued by the [United States] Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). The applicable policy statement recites the following:

> **1. Extraordinary and Compelling Reasons.**--Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:
> **(A) Medical Condition of the Defendant.--**
> **(i)** The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
> **(ii)** The defendant is--
> > **(I)** suffering from a serious physical or medical condition,
> > **(II)** suffering from a serious functional or cognitive impairment, or
> > **(III)** experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or he is not expected to recover
> > [. . .]
>
> **(D) Other Reasons.**--As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. 1B1.13

Here, Loyd has presented "Other Reasons" in combination with his serious medical conditions, to warrant compassionate release. While the COVID-19

Page **4** of **12**

pandemic is devastating in every region it invades, prison populations are subject to heightened vulnerability. *See, e.g.*, Danielle Ivory, *"We Are Not a Hospital": A Prison Braces for the Coronavirus*, N.Y. TIMES (March 17, 2020), https://www.nytimes.com/2020/03/17/us/coronavirus-prisons-jails.html (citing densely populated living conditions, shortage of masks, soap, and hand sanitizer, and the inability to routinely disinfect surfaces and maintain safe distances between inmates and guards as reasons prisoners are at increased risk of infection); *See, e.g.*, Courtney Bublé, *Federal Prisons Pose 'Imminent Danger' in Spreading COVID-19, Union Says*, GOVERNMENT EXECUTIVE (April 6, 2020), https://www.govexec.com/oversight/2020/04/federal-prisons-pose-imminent-danger-spreading-covid-19-union-says/164390/ (detailing a prison workers' union complaint to OSHA complaining of "imminent danger" due to the BOP's failure to follow national safety guidelines).

Furthermore, the persuasive precedent for granting compassionate release under the current circumstances is overwhelming. *United States v Andre Williams*, Case No. 04-cr-95/MCR, at *7 (N.D. Fla. April 1, 2020) ("[A]n outbreak of COVID-19 in Williams' facility would likely have fatal consequences for him. Based on these facts, the Court finds that Williams' deterioration in physical health is sufficiently serious to satisfy the medical criteria for a reduction in sentence.");

*United States v. Teresa Ann Gonzalez*, No. 2:18-CR-0232-TOR-15, 2020 WL 1536155, at *3 (E.D. Wash. Mar. 31, 2020) ("Defendant is the most susceptible to the devastating effects of COVID-19. He is in the most susceptible age category (over 60 years of age) and him COPD and emphysema make him particularly vulnerable. 18 U.S.C. § 3582(c)(1)(A)(i) compassionate release granted."); *United States v. Campagna*, No. 16 Cr. 78-01 (LGS), 2020 WL 1489829, at *3 (S.D.N.Y. Mar. 27, 2020) ("Defendant's compromised immune system, taken in concert with the COVID-19 public health crisis, constitutes an extraordinary and compelling reason to modify to Defendant's sentence on the grounds that he is suffering from a serious medical condition that substantially diminishes his ability to provide self-care within the environment of the RCC."); *United States v. Muniz,* No. 4:09-CR-0199-1, 2020 WL 1540325 (S.D. Tex. Mar. 30, 2020), at *2 ("Because Defendant is at high-risk for severe illness from COVID-19 and because inmates in detention facilities are particularly vulnerable to infection, the Court finds that Defendant has demonstrated an extraordinary and compelling reason for compassionate release.").

Loyd argues that his underlying conditions warrant similar treatment. He seeks release due to three medical conditions: severe obesity, hypertension, and being immunocompromised from cortisone hip injections. The Center for Disease Control ("CDC") states that people with severe obesity, defined as a body mass

index ("BMI") of at least 40, have a higher risk of complications from COVID-19 due to breathing problems. *Groups at Higher Risk for Severe Illness*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-highim-risk.html (last visited May 21, 2020). Loyd came into prison with a BMI of 43. (ECF No. 216-3, PageId. 1503). It has fluctuated over time, but his latest medical report from May 8, 2020 states that his BMI is at 39.7. (ECF No. 216-1, PageId. 1496).

Second, Loyd suffers from hypertension, which he is currently being treated for. (ECF No. 216-2, PageId. 1499). The CDC states that people with hypertension are vulnerable because, a respiratory illness from COVID-19 could "make it harder for [a person's] heart to work, [which] can lead to a worsening of COVID-19 symptoms." *Groups at Higher Risk for Severe Illness*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-highim-risk.html (last visited May 21, 2020).

Third, Loyd suffers from severe right hip osteoarthritis, which causes pain and physical limitations. As part of his treatment, Loyd received a cortisone steroid hip injection last May, 2019, which gave him 2-3 months of pain relief. (ECF No. 216-1, PageId. 1496). The CDC states that people who have a prolonged use of treatments like these have weakened immune systems and are less able to fight a virus like

COVID-19. *Groups at Higher Risk for Severe Illness*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-highim-risk.html (last visited May 21, 2020).

In opposition the Government argues that these conditions are not severe enough because, Loyd's BMI is just under 40 at 39.7, has primary hypertension, rather than pulmonary hypertension, and has received bone injection, rather than an intravenous injection. The Government's arguments about medical minutiae, while noted by the Court, are dismissed as unpersuasive. Even if, assuming arguendo, Loyd's conditions do not independently and perfectly fit the definition of severity, as outlined by the CDC, all of his conditions compounded still place Loyd in a much more vulnerable position than a healthy person, if he were to get COVID-19. *See* Jennifer Lighter, *Obesity in Patients Younger Than 60 Years Is a Risk Factor for COVID-19 Hospital Admission,* INFECTIOUS DISEASES SOCIETY OF AMERICA (2020) (finding that COVID-19 patients who were younger than 60 with a BMI of at least 35 are twice as likely to be admitted to acute and critical care).

The Government also attempts to dissuade the Court's concerns for Loyd's safety because FCI Lorretto has no reported cases of COVID-19. However, zero confirmed cases is likely more a result of a lack of testing than a lack of the virus' presence in the prison. If anything, the Court is more concerned that inmates and

staff members are interacting with one another as normal and blissfully unaware of the virus spreading throughout the prison. Another court in our district recently found the following about the conditions at FCI Loretto:

> [I]nmates currently "eat, sleep, and interact with each other in a confined space, making it easier for the virus to spread once introduced. Inmates are still being transferred between facilities. Although they are screened for symptoms, they are not tested for the virus, leaving potentially asymptomatic individuals to spread the virus to others. While inmates are being subjected to mandatory quarantine, they are still not provided basic protections from the virus in the facilities. Inmates must purchase their own soap. Hand sanitizer is contraband. In low security facilities, inmates are being quarantined with their own unit, as opposed to individual cells, preventing them from complying with social distancing recommendations

*United States v. Amarrah*, No. 17-20464, 2020 WL 2220008 (E.D. Mich. May 7, 2020). During the Court's hearing, Mr. Loyd corroborated that he is currently on lockdown in his unit in close quarters with approximately 80 other inmates. Considering the number of infected people Loyd is unknowingly in contact with, continuing to incarcerate him in under these conditions could be a lethal decision. The Court refuses to join FCI Loretto in its ignorance of a deadly virus hidden in plain sight. Therefore, extraordinary and compelling reasons exist for Loyd's immediate compassionate release.

2. Danger to the Community

Federal Sentencing Guideline 1B1.13 provides for compassionate release only when "[t]he defendant is not a danger to the safety of any other person or to the

community, as provided in 18 U.S.C. § 3142(g)." While in prison Mr. Loyd has committed himself to rehabilitation. He has completed a range of classes including Auto Mechanics, Parenting, and Weight Management. (ECF No. 211-2). He is also enrolled in a GED program and has completed a drug education class. (*Id.*). He has been employed throughout his incarceration, first in food services and now as an Orderly. (*Id.*). He has only had one incident on his disciplinary record from early in his incarceration for using another inmate's ticket to take a picture in the visiting room. (*Id.*).

Mr. Loyd also has close ties with his family and has stayed in constant contact with them; they have even come to visit him on several occasions. Mr. Loyd is married and is the father of four boys, the youngest of which is six years old. Defense counsel has submitted to the Court several letters from Loyd's family, including his wife, in-laws, and spiritual mentors. The sentiment of each letter is the same: Mr. Loyd is a dedicated father who has taken responsibility for his past wrongs and is eager to come home and positively impact all of those who look up to him. (ECF No. 211-9, 10, 11, 13, 14, 16, 17). The fact that the BOP classified him as a minimum risk of recidivism (the lowest level) and selected him for home confinement, which he would have received but for merely a function of time, gives the Court confidence

to safely release Loyd back into the community. Furthermore, upon his return to the community, Loyd will be on supervised release.

3. Section 3553(a) Factors

A district court contemplating a motion for compassionate release must consider the § 3553(a) sentencing factors. Those are as follows:

> **(a) Factors to be considered in imposing a sentence.**--The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider--
> **(1)** the nature and circumstances of the offense and the history and characteristics of the defendant;
> **(2)** the need for the sentence imposed--
> **(A)** to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> **(B)** to afford adequate deterrence to criminal conduct;
> **(C)** to protect the public from further crimes of the defendant; and
> **(D)** to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> **(3)** the kinds of sentences available;
> **(4)** the kinds of sentence and the sentencing range established for--
> **(A)** the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines--

18 U.S.C.A. § 3553.

The Court's consideration of these factors is explicated both in this opinion's analysis of U.S.S.G. 1B1.13 and on the record of the May 20, 2020 hearing. Loyd's crimes are serious, but the quality of his time in prison has shown tremendous growth in his ability to positively impact his family and community. Finally, Loyd's growth

and medical condition outweigh any marginal benefit he would receive from finishing his sentence in prison. A sentence reduction to time-served is therefore in line with the § 3553(a) factors.

## Conclusion

**IT IS ORDERED** that Petitioner's Motion for Compassion Release [208] is **GRANTED**.

**IT IS FURTHER ORDERED** that Loyd be **IMMEDIATELY RELEASED** to begin his 5-year term of **SUPERVISED RELEASE**, as outlined by the March 29, 2017 Judgment (ECF No. 170), including the following Special Condition:

> The defendant shall participate in a program approved by the probation department for substance abuse, which may include testing to determine if the defendant has reverted to the use of drugs or alcohol, if necessary.

**SO ORDERED**.

Dated: May 21, 2020

s/Arthur J. Tarnow
Arthur J. Tarnow
Senior United States District Judge