**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | |
| | ) | |
| **BENJAMIN EDWARD HENRY BRADLEY,** | ) | **Case No. 3:15-cr-00037-2** |
| | ) | **Judge Aleta A. Trauger** |
| **Defendant,** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **KAREEMA HAWKINS,** | ) | |
| | ) | |
| **Petitioner.** | ) | |

## MEMORANDUM and ORDER

Before the court is the government's Motion for Entry of a Final Order of Forfeiture as to Certain Assets (Doc. No. 1376), specifically including (1) currency in the amount of $46,300 seized from 15540 Prevost Street in Detroit, Michigan and $78,300 seized from 45669 Harmony Lane, Belleville, Michigan on March 12, 2015 ("Currency"); and (2) real property commonly known at 45669 Harmony Lane, Belleville, Michigan 48111 (the "Property" or "Harmony Lane Property"), as described more particularly in the government's motion.

In response, petitioner Kareema Hawkins filed (1) an Emergency Motion to Extend Time to State Claim (Doc. No. 1379); (2) a "Property Claim" (Doc. No. 1381), which was docketed a second time and denominated on the docket as a "Motion for Return of Property" (Doc. No. 1383); and (3) a *pro se* letter to the court further asserting a claim over the Harmony Lane Property, complaining about her attorney, and requesting the court's assistance in obtaining local counsel (Doc. No. 1384).

The court will grant without further discussion that portion of the government's motion requesting entry of a Final Order of Forfeiture as to the Currency, regarding which no objection has been lodged. The court will also grant Kareema Hawkins' Emergency Motion and consider her Property Claim. However, for the reasons set forth herein, the court will deny her claim and grant that portion of the government's motion seeking a Final Order of Forfeiture of the Harmony Lane Property as well.

## I. BACKGROUND

On June 22, 2017, this court granted the government's Motion for Entry of a Preliminary Order of Forfeiture (Doc. No. 858) and Motion for an Order of Forfeiture of at Least a $1,000,000 United States Currency Money Judgment (Doc. No. 861). (*See* Doc. Nos. 1004, 1005.) That ruling was reversed and vacated in its entirety on appeal. *United States v. Bradley*, 897 F.3d 779, 784, 786 (6th Cir. 2018).

On August 20, 2019, following additional proceedings, the court again granted the United States' Motion for Entry of a Preliminary Order of Forfeiture and its Motion for an Order of Forfeiture of at Least $1,000,000 United States Currency Money Judgment, expressly ruling that both the Currency and the Property (and three other parcels of real estate then titled to defendant Benjamin Bradley) were subject to forfeiture. *See United States v. Bradley* ("*Bradley II*"), No. 3:15-cr-00037-2, 2019 WL 3934684 (M.D. Tenn. Aug. 20, 2019); *see also* Preliminary Order of Forfeiture, Doc. No. 1203, at 2.

Notably, in reaching this finding, the court considered the government's evidence that it had located a recorded deed, reflecting the notarized signature of Benjamin Bradley, that purported to transfer the Property from Bradley to his then-wife, Kareema Hawkins, on April 23, 2015, six weeks after Bradley was indicted. *Bradley II*, 2019 WL 3934684, at *15. The government, however, established that Bradley had been arrested on March 12, 2015 and had remained in

custody continuously after that time, that the jail logs did not reflect a visit from Sonja Halton, the notary who supposedly notarized Bradley's signature on the deed, and that the notary had told the IRS Special Agent William DeSantis that she had not notarized the deed and, in fact, had never notarized a real estate document. In other words, the government presented strong evidence that the deed purporting to convey the Property to Hawkins in 2015 had been forged.

In any event, in *Bradley II*, this court expressly observed that, insofar as Kareema Hawkins believed that she had a legal claim to the Harmony Lane Property, she would have the ability to assert such a "claim to establish her entitlement to the [P]roperty by following the procedure set out in the accompanying Order." *Id.* at *17.

*Bradley II* was affirmed on appeal in all respects. *United States v. Bradley* ("*Bradley III*"), 969 F.3d 585 (6th Cir. 2020), *cert. denied*, 141 S. Ct. 2763 (2021). As particularly relevant here, the Sixth Circuit found "no clear error" infecting this court's determination that Bradley's home—the Property—was forfeitable, in light of the evidence that Bradley had

> purchased it off the books, paying about $100,000 in scrap gold and gold coins. He made those payments over 14 months, all during the conspiracy. During that time, his annual legitimate income was around $68,000. It's unlikely that Bradley purchased the property with legitimately obtained scrap gold worth more than his regular salary, all while supporting a wife and two children.

*Bradley III*, 969 F.3d at 590.

The Preliminary Order of Forfeiture accompanying *Bradley II* included the following language regarding third-party claims to the Property, derived from 21 U.S.C. § 853(n):

> 8. Any person, other than the above named defendant, asserting a legal interest in the Subject Property shall, within 30 days of the final publication of notice or receipt of notice, whichever is earlier, petition the court for a hearing without a jury to adjudicate the validity of his or her interest in the Subject Property and for an amendment of this Order of Forfeiture.
>
> . . . .

10. Any petition filed by a third party asserting an interest in the Subject Property shall be signed by the third-party petitioner under the penalty of perjury and shall set forth the nature and extent of the petitioner's right, title, or interest in the Subject Property, the time and circumstances of the petitioner's acquisition of the right, title, or interest in the Subject Property, and any additional facts supporting the petitioner's claim and the relief sought.

(Doc. No. 1203, at 3–4.)

In its Motion for Entry of Final Order of Forfeiture, the government states that it provided notice of the Preliminary Order of Forfeiture to Hawkins on November 10, 2021, as required by 21 U.S.C. § 853(n) and the Preliminary of Forfeiture. (Doc. No. 1376, at 2.) According to the February 9, 2022 Declaration of Paralegal Deborah Krause, submitted in support of the government's motion, Hawkins was provided direct notice of the forfeiture and of the intent of the United States to dispose of the Property by both certified and first-class United States mail, in accordance with the law and as specified in the Preliminary Order. (Doc. No. 1377 ¶ 4.) Said notice also would have informed Hawkins that she had thirty days from the date of receipt of such direct notice or thirty days from the end of publication, whichever is earlier, to petition the court for a hearing to adjudicate the validity of her alleged interest in the Property. (*Id.*) Krause further attests that the Notice of Forfeiture sent to Hawkins by first-class mail had not been returned and that tracking on the United States Postal Service's website of the Notice of Forfeiture sent to Hawkins by certified mail "indicates that as of December 3, 2021 the item was 'being returned to sender' as 'Unclaimed.'" (*Id.* ¶ 6; *see also* Doc. No. 1377-5.)

In her Emergency Motion, filed on February 23, 2022, Hawkins, through counsel, acknowledges that she received the notice of the forfeiture and of the government's intent to dispose of the Harmony Lane Property on or about December 20, 2021. (Doc. No. 1379, at 1.) Without explaining her delay in filing a claim, she asserts that: (1) "there was a conveyance" of the Property by Bradley to Hawkins in April 2015, apparently referring to the forged deed

referenced above; (2) Hawkins and Bradley were divorced in 2021, and Hawkins was awarded the Property in a Judgment of Divorce; (3) the Property is her primary residence, where she resides with her minor children; (4) she was never named as a defendant in this case and has never been accused of criminal conduct; (5) her delay in responding to the government's notice does not prejudice the government; and (6) because Hawkins and her children are "innocent owners," Hawkins is entitled to assert the "Innocent Owner Defense under 18 U.S. Code § 983 Section D." (*Id.* at 1–2.) Along with her Emergency Motion and Brief, Hawkins filed a so-called Brief in Support of Motion to Extend Time to State a Claim, which simply quotes verbatim portions of 18 U.S.C. § 983(d). That provision makes available the "innocent owner defense" in a *civil* forfeiture action, if certain criteria are met.[1]

Hawkins, through Tuddles, also filed a "Property Claim," asserting an interest in both the Harmony Lane Property and 14427 Curtis Street, Detroit, Michigan 48235 ("14427 Curtis"). Attached as an exhibit to her Property Claim is an excerpt of a divorce decree dated April 27, 2021 that purports to award "joint real estate" owned by the divorcing couple to Kareema Hawkins alone and lists the properties awarded to Hawkins in the divorce as including the Harmony Lane Property, 14427 Curtis, and 14425 Curtis Street, Detroit, Michigan 48235 ("14425 Curtis").[2]

---

[1] The Brief was purportedly filed by counsel for Hawkins, Antonio D. Tuddles. Tuddles is not admitted to practice in this court, never retained local counsel, and has presented no proof to this court that he is actually an attorney. The so-called "Brief" and other documents filed by Tuddles on behalf of Hawkins lead this court to doubt whether he is licensed to practice law anywhere.

[2] The United States originally claimed forfeiture of both 14425 Curtis and 14427 Curtis. However, in May 2019 the government filed a Supplemental Memorandum in Support of its Motion for Forfeiture, expressly noting that it had released its *lis pendens* related to 14425 Curtis and no longer sought to its forfeiture. (Doc. No. 1176, at 2 n.2.) In its present Motion for Final Order of Forfeiture, the government only seeks the forfeiture of the Harmony Lane Property and does not request the forfeiture of 14427 Curtis. (*See* Doc. No. 1376.) In its Response to Hawkins' Emergency Motion, the government expressly clarifies that it "will not pursue a Final Order of Forfeiture as to [14427] Curtis, waives and abandons any interest the United States has in [14427]

As noted above, following the filing of the government's Response and the apparent disappearance of her attorney, Hawkins submitted a letter to the court complaining about her lawyer and requesting the court's assistance in retaining a Tennessee attorney.[3] (Doc. No. 1384.) In addition, Hawkins references the forged deed in the context of stating that she has been getting "nothing but bad advice since all this happened," including being told that, because she had a power of attorney for Bradley, she had the right to "sign the quit claim deed in his absence for transfer of the property." (*Id.* at 1.)

The United States filed a Response opposing Hawkins' Emergency Motion, arguing that Hawkins' claim should be denied as untimely and that, even if the court decides to entertain the late-filed petition, her claim should be denied, because: (1) the petition is unverified; and (2) Hawkins has no legal interest in the Harmony Lane Property.

## II.    LEGAL STANDARD

The criminal forfeiture statute authorizing the forfeiture of property belonging to Benjamin Bradley, 21 U.S.C. § 853, provides in relevant part:

> Any person convicted of a violation of this subchapter . . . punishable by imprisonment for more than one year *shall forfeit to the United States*, irrespective of any provision of State law . . . any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of such violation . . . .

*Id.* § 853(a)(1) (emphasis added). The term "property" in this section includes real property. *Id.* § 853(b)(1).

---

Curtis, and has no objection to Ms. Hawkins taking whatever action she deems necessary to address whatever interest she may have in the property with the Wayne County, Michigan, Treasurer's Office." (Doc. No. 1382, at 2.)

[3] The court has no power to appoint counsel for a third-party petitioner challenging a criminal forfeiture.

The statute provides that all right, title, and interest in property subject to forfeiture "vests in the United States upon the commission of the act giving rise to forfeiture under this section." *Id.* § 853(c). This means that, "[a]fter the commission of the criminal acts, title to the forfeitable property, by operation of the relation-back clause, actually belongs to the government." *United States v. Huntington Nat. Bank*, 682 F.3d 429, 433 (6th Cir. 2012) (quoting *United States v. Harris*, 246 F.3d 566, 575 (6th Cir. 2001)).

When property is ordered forfeited pursuant to 21 U.S.C. § 853, third parties, *i.e.*, persons other than the defendant, who claim to have a legal interest in the forfeited property may petition the court for a hearing to adjudicate the validity of their claimed interests. 21 U.S.C. § 853(n)(2). The third party's petition must be "signed by the petitioner under penalty of perjury," and it must "set forth the nature and extent of the petitioner's right, title, or interest in the property, the time and circumstances of the petitioner's acquisition of the right, title, or interest in the property, any additional facts supporting the petitioner's claim, and the relief sought." *Id.* § 853(n)(3).

Section 853(n)(6) provides two alternative methods by which "certain innocent third parties" may successfully establish their rights in forfeited property. *United States v. Galemmo*, 661 F. App'x 294, 296 (6th Cir. 2016). First, a third-party claimant may prevail by proving, by a preponderance of the evidence, that she

> has legal right, title, or interest in the property [that] was vested in [her] rather than the defendant or was superior to any right, title, or interest of the defendant *at the time of the commission of the acts which gave rise to the forfeiture of the property*[.]

*Id.* § 853(n)(6)(A) (emphasis added). Alternatively, a third-party claimant may prevail by proving, by a preponderance of the evidence, that she

> is a *bona fide* purchaser for value of the right, title or interest in the property and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture[.]

*Id.* § 853(n)(6)(B).

"Although § 853(n)(4) contemplates a hearing as part of an ancillary proceeding in criminal forfeiture, such a hearing is necessary only where there are facts in dispute that must be resolved, and a claim lacking merit as a matter of law may be dismissed without a hearing." *United States v. Alquzah*, 91 F. Supp. 3d 818, 825 (W.D.N.C. 2015) (citing Fed. R. Crim. P. 32.2(c)(1); other citations omitted).

Notably, the criminal forfeiture statute does not expressly countenance an "innocent owner defense." That defense is available under the statute governing *civil* forfeiture. *See* 18 U.S.C. § 983(d). And, even when it is available, it provides relief only to a person claiming an interest in forfeited property who acquired such interest "after the conduct giving rise to the forfeiture has taken place" and who establishes that she was a "bona fide purchaser . . . for value" *and* "did not know and was reasonably without cause to believe that the property was subject to forfeiture" at the time of the alleged purchase. 18 U.S.C. § 983(d)(3)(A).

Subsection 983(d)(3)(A) is subject to an exception:

An otherwise valid claim under subparagraph (A) shall not be denied on the ground that the claimant gave nothing of value in exchange for the property if—

(i) the property is the primary residence of the claimant;

(ii) depriving the claimant of the property would deprive the claimant of the means to maintain reasonable shelter in the community for the claimant and all dependents residing with the claimant;

(iii) *the property is not, and is not traceable to, the proceeds of any criminal offense*; and

(iv) the claimant acquired his or her interest in the property through marriage, divorce, or legal separation . . . .

*Id.* § 983(d)(3)(B).

## III.    DISCUSSION

Kareema Hawkins has not filed a verified petition asserting a claim to the Property. Rather,

she filed an Emergency Motion to extend the deadline for filing such a petition and a "Property Claim" that does not remotely comply with the statutory requirements set out in 21 U.S.C. § 853(n)(2). Specifically, the Property Claim is not signed by the petitioner at all, much less under penalty of perjury. In addition, it does not "set forth the nature and extent of the petitioner's right, title, or interest in the property, the time and circumstances of the petitioner's acquisition of the right, title, or interest in the property, [or] the relief sought." *Id.* § 853(n)(3). Instead, it is signed by her supposed attorney and states only that Hawkins states a claim to the Harmony Lane Property. (Doc. No. 1381, at 1.) The excerpt from the Judgment of Divorce attached to the Property Claim, however, suggests that Hawkins obtained title to the Property through divorce on April 27, 2021. (Doc. No. 1381, at 2.) In the accompanying Emergency Motion, Hawkins does not provide any explanation for the delay in filing her Property Claim, but she attempts to provide reasons why the court should consider it: the Property was conveyed to her in 2015; she resides at the Property with her minor children; she is not a defendant in this action and has not been accused of criminal conduct; the delay in filing will not prejudice the government; the government should not "unnecessarily punish [her and her children] by stripping them of a home"; and she is entitled to the benefit of the innocent owner defense under 18 U.S.C. § 983(d).[4] (Doc. No. 1379, at 2.)

The United States argues both that that Emergency Motion should be denied and that Hawkins' claim to the Property should be rejected because: (1) the Emergency Motion and Property Claim were filed sixty days after expiration of the filing deadline; (2) Hawkins has not submitted a petition under oath, which deprives her of statutory standing; (3) even assuming the petition had been properly filed, Hawkins has no legal interest in the Property.

---

[4] She also asserts that 14427 Curtis is an "income producing entity," overlooking the government's abandonment of any claim to that property.

The government is correct on all counts. Hawkins has not filed a sworn, properly supported petition or claim. Moreover, even if she had, and even if the court views all the disputed facts in the light most favorable to her, it is clear as a matter of law that she is not entitled to relief.

First, Hawkins cannot establish that she has a legal right, title, or interest in the Property that was vested in her, rather than the defendant, or was superior to any right, title, or interest of defendant Benjamin Bradley, Hawkins' former husband, *at the time of the commission of the acts giving rise to the forfeiture of the Property*. 21 U.S.C. § 853(n)(6)(A). Rather, it has already been conclusively established that Bradley purchased the Property over time between October 31, 2012 and February 3, 2014 with proceeds from the drug conspiracy in which defendant Bradley was involved. *United States v. Bradley*, No. 3:15-CR-00037-2, 2019 WL 3934684, at *15 (M.D. Tenn. Aug. 20, 2019), *aff'd*, 969 F.3d 585, 2020 WL 4579391 (6th Cir. 2020). Hawkins has no standing to challenge that determination.

In other words, this is not a situation in which a marital home was purchased by both partners to the marriage prior to the initiation of the drug conspiracy and titled to both as tenants by the entirety.[5] It is well established that Michigan is not a "community property" state and that, "[d]uring a marriage, either spouse may own property individually and may use or dispose of that property without interference from the other spouse." *In re Slotman*, No. 12-80232, 2013 WL 7823003, at *6 (Bankr. W.D. Mich. Dec. 5, 2013) (citing *Canjar v. Cole*, 770 N.W.2d 449, 453 (Mich. Ct. App. 2009)). Thus, under Michigan law, either party to a marriage has the "'right to hold and manage property held individually' whether that property was 'obtained before or after

---

[5] Under Michigan law, "[t]he creation of an estate by the entireties . . . requires a written instrument of conveyance, which will produce unity of person, time, title, interest, and possession." *Union Guardian Tr. Co. v. Vogt*, 248 N.W. 639, 640 (Mich. 1933) (citations omitted). No proof of such an estate has been presented.

marriage.'" *Id.* at \*6 (quoting *Canjar*, 770 N.W.2d at 452–53). In this instance, the Harmony Lane Property was obtained by Benjamin Bradley alone in early 2014, using proceeds of the drug conspiracy, during the marriage. Under the relation-back doctrine codified at 21 U.S.C. § 853(c), the government's interest in the Harmony Lane Property vested at the time of the purchase of the property. As a result, Hawkins cannot show that any legal right, title, or interest in the property *ever* vested in her, much less an interest superior to that of Bradley. 21 U.S.C. § 853(n)(6)(A). This would be true *even if* the forged 2015 deed that purported to convey the Property to Hawkins had been validly signed by Bradley himself.

Hawkins also cannot show that she is a *bona fide* purchaser *or* that, at the time of the conveyance of the Property to her in the divorce, she was "reasonably without cause to believe that the property was subject to forfeiture." *Id.* § 853(n)(6)(B). To the extent she is claiming that the Property constituted marital property that could be awarded to her in the divorce, the law does not support that position. While it is true that assets acquired by one spouse during a marriage are generally considered to be marital property, *Byington v. Byington*, 568 N.W.2d 141, 144, (Mich. Ct. App. 1997), an individual's right to marital property does not vest until the filing of a divorce action. *Slotman*, 2013 WL 7823003, at \*8. In this case, by the time the divorce proceeding between Hawkins and Bradley was filed, the government's interest in the Harmony Lane Property had long-since already vested, so the Property never became part of the marital estate and, consequently, was not available to be conveyed to Hawkins in the divorce.

Finally, for all of the same reasons, even if Hawkins could show that she is entitled to invoke the innocent owner defense under 18 U.S.C. § 983(d) in the context of criminal forfeiture proceedings governed by 21 U.S.C. § 853, she cannot show that she "did not know and was reasonably without cause to believe that the property was subject to forfeiture," 18 U.S.C. §

983(d)(3)(A), at the time of the divorce decree. She was indisputably on notice no later than sometime in 2017 that the Property was subject to forfeiture, as that is the date on which she first filed a Petition of Interest in the Property. (*See* Doc. No. 1055.) Moreover, as discussed above, she cannot establish that the Property "is not traceable to . . . the proceeds of any criminal offense." 18 U.S.C. § 983(d)(3)(B)(iii).

In sum, while the court is loath to deprive a family of its home, Kareema Hawkins has not established that she has a protectable interest in the Property.

## IV. CONCLUSION AND ORDER

For the reasons set forth herein, Hawkins' Emergency Motion to Extend Time to State a Claim (Doc. No. 1379) is **GRANTED**, but her claim is **DENIED**.

The government's Motion for Entry of a Final Order of Forfeiture (Doc. No. 1376) is **GRANTED**, and the court will enter a separate Final Order of Forfeiture.

Because it appears that Kareema Hawkins is no longer represented by Antonio Tuddles, the Clerk shall send notice of this order directly to Kareema Hawkins at 45669 Harmony Lane, Belleville, MI 48111.

It is so **ORDERED**.

ALETA A. TRAUGER
United States District Judge